UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PSW, INC. d/b/a PSW BILLING
Plaintiffs,

v.

Civ. A. No. 04-347-T

VISA U.S.A, INC., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, and FIRST DATA MERCHANT SERVICES CORPORATION,
Defendants,

**DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S**
**MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant MasterCard International Incorporated ("MasterCard") hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Plaintiff's complaint. In support of this Motion, MasterCard relies on the Memorandum of Law filed herewith and the Motions and accompanying Memoranda of Law filed on behalf of defendants Visa U.S.A, Inc., First Financial Bank, and First Data Merchant Services Corporation. MasterCard hereby requests oral argument.

Joseph V. Cavanagh, Jr.
Staci L. Kolb

Joseph V. Cavanagh, Jr. #1139
Staci L, Kolb #5451
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 751-7542

ATTORNEYS FOR DEFENDANT
MASTERCARD INTERNATIONAL
INCORPORATED

12

# CERTIFICATION

I hereby certify that the 24th day of November, 2004, I forwarded a true copy of the within document via 1st class mail, postage prepaid, unless otherwise indicated, to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920
***Via Hand Delivery***

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Denise L. Plunkett, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

John Tarrintino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan PC
2300 Financial Plaza
Providence, RI 02903

Daniel Brookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Meyers
275 Battery Street
San Francisco, CA 94111
***Via Federal Express***

Brian Wallach, Esq.
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Cynthia Dragon

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, Inc. d/b/a PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A., Inc., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, AND FIRST DATA MERCHANT SERVICES CORPORATION,<br><br>Defendants. | Civ. A. No. 04-347-T (ECT) |

# DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ........ 1

II. THE PLEADINGS ........ 2

III. DESCRIPTION OF THIS MOTION ........ 2

IV. FACTS ........ 3

A. Background ........ 3

1. The MasterCard Payment Card System ........ 3

2. PSW ........ 3

3. MasterCard's Rules and Programs ........ 4

4. Chargebacks ........ 5

V. ISSUES ........ 5

VI. POINTS AND AUTHORITIES ........ 6

A. The Standard Governing Motions to Dismiss ........ 6

B. PSW Has Failed To State A Claim Under The Robinson-Patman Act ........ 7

C. PSW Has Failed to State a Claim For Relief Under the Sherman Act ........ 7

1. PSW Has Failed To Allege Facts Showing Harm To Competition ........ 8

2. PSW Has Failed To Allege Facts Showing Standing Or Antitrust Injury ........ 9

3. PSW Has Failed to Allege Facts Showing Concerted Action ........ 11

4. PSW's Has Failed To State A Claim Under The Sherman Act With Respect To Any Of The Purported Programs Challenged In The Complaint ........ 14

(a) "Member Service Providers" Program ........ 14

(b) MATCH File Program ........ 14

(c) Cross-Border Acquiring ........ 15

(d) "Exclusivity Policy" ........ 15

5. PSW Has Failed to State a Claim Under § 2 of the Sherman Act ........ 16

(a) Plaintiff Has Failed To State a Claim for Monopolization ........ 16

(b) PSW Has Failed to State a Claim for Attempted Monopolization ........ 18

(c) PSW has Failed to State a Claim for Conspiracy to Monopolize ........ 19

D. The Court Also Should Dismiss PSW's State Law Claims ........ 19

VII. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050 (1st Cir. 1995) ..............................7

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ..........................................................................6, 10, 11, 15

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)..................................8

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178 (3d Cir. 1997) ..........................................................................................................11

*Boateng v. InterAmerican University, Inc.*, 210 F.3d 56 (1st Cir. 2000)............................3

*Brunswick Corp. v. Pueblo Bowl- O-Mat, Inc.*, 429 U.S. 477 (1977) .....................1, 10, 15

*Cayman Explor. Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357 (10th Cir. 1989) ..........................................................................................................12

*Clamp-All Corp. v. Cast Iron Soil Pipe Institute*, 851 F.2d 478 (1st Cir. 1988) ...............12

*Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752 (1984) ..............................12

*Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147 (1st Cir. 1994) ............................................................................................................9

*DM Research Inc. v. College of American Pathologists*, 2 F. Supp. 2d 226 (D.R.I. 1998), *aff'd* 170 F.3d 53 (1st Cir. 1999).......................................................6, 12

*Eastern Food Services, Inc., v. Pontifical Catholic University Services Associate*, 357 F.3d 1 (1st Cir. 2004)........................................................................8

*Eastman Kodak Co., v. Image Technical Services, Inc.*, 504 U.S. 451 (1992)..................17

*Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11 (1st Cir. 2004).........................................11

*FTC v. Crescent Publ'g. Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) ..................13

*FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ............................13

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948)......................................................................7

*Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47 (1st Cir. 2002) ...............................19

*Goodloe v. National Wholesale Co.*, 2004-2 Trade Cas. (CCH) ¶ 74,518, 2004 U.S. Dist. LEXIS 13630 (N.D. Ill. July 19, 2004).................................................7

*Granite Partners, LP v. Bear Stearns & Co.*, 58 F. Supp. 2d 228 (S.D.N.Y. 1999) ...........2

*Greene v. Rhode Island*, 289 F. Supp. 2d 5 (D.R.I. 2003) .....3

*Gregory Marketing Corp. v. Wakefern Food Corp.*, 787 F.2d 92 (3d Cir. 1986) .....11

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) .....9

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .....3

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) .....10

*Lee v. Life Insurance Co. of N. America*, 829 F. Supp. 529 (D.R.I. 1993), *aff'd* 23 F.3d 14 (1st Cir. 1994) .....9, 16, 19

*Market Force Inc. v. Wauwatosa Realty Co.*, 906 F.2d 1167 (7th Cir. 1990) .....12

*Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791 F.2d 755 (9th Cir. 1996) .....18

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) .....12

*National Bancard Corp. v. Visa U.S.A., Inc.*, 596 F. Supp. 1231 (S.D. Fla. 1984), *aff'd,* 779 F.2d 592 (11th Cir. 1986) .....4

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) .....8

*Parmelee Transport Co. v. Keeshin*, 292 F.2d 794 (7th Cir. 1961) .....1

*Paycom Billing Serv., Inc. v. Payment Resources International*, 212 F. Supp. 2d 732 (W.D. Mich. 2002) .....5

*Reyn's Pasta Bella v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992 (N.D. Cal. 2003) .....3

*Santana Products, Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463 (M.D. Pa. 2003) .....17

*SAS of Puerto Rico v. Puerto Rico Telegraph Co.*, 48 F.3d 39 (1st Cir. 1995) .....10

*Serpa Corp. v. McWane Inc.*, 199 F.3d 6 (1st Cir. 1999) .....10

*SmileCare Dental Group v. Delta Dental Plan of Cal.*, 88 F.3d 780 (9th Cir. 1996) .....15

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .....8, 18

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57 (1st Cir. 2004) .....2

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 239 F. Supp. 2d 180 (D.R.I. 2003), *aff'd* 373 F.3d 57 (1st Cir. 2004) .....7

*Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381 (D. Md. 1990) .....17

*Town of Concord v. Boston Edison Co.*, 915 F.2d 17 (1st Cir. 1990) .....9, 17

*United States v. Aluminum Co. of America (Alcoa)*, 148 F.2d 416 (2d Cir. 1945) .....17

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) .....16

*United States v. Visa, U.S.A., Inc.*, 344 F.3d 229 (3d Cir. 2003) .....17

*Verizon Communs. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 124 S. Ct. 872 (2004) .....17, 18

**STATE CASES**

*Eri Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351 (R.I. 1997) .....8

**FEDERAL STATUTES**

15 U.S.C. §§ 1, 2 .....1, 2, 6, 14

15 U.S.C. § 13 .....1, 2, 7

15 U.S.C. § 45 *et seq* .....14

Fed. R. Civ. P. 12(b)(6) .....1, 2, 6

**STATE STATUTES**

Rhode Island Antitrust Act, R.I.G.L § 6-36-1, *et seq* .....2, 7

**MISCELLANEOUS**

*Taxpayer Beware: Schemes, Scams and Cons: Hearing Before the Comm. on Finance United States Senate*, 107th Cong. 31-33 (2001) .....13

*Citicorp Credit Services, Inc.*, 116 F.T.C. 87 (1993) (consent order) .....13

Defendant MasterCard International Incorporated ("MasterCard") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff's complaint ("Complaint" or "Compl.") in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## I. PRELIMINARY STATEMENT

PSW, Inc. ("PSW"), a purported "aggregator" for Adult Entertainment Website transactions, blames its demise on various rules and programs of MasterCard (and Visa) targeting excessive chargeback activity. PSW concedes that these rules and programs are designed to protect the integrity of MasterCard's system by minimizing fraudulent transactions. It also concedes that certain of the challenged policies actually facilitated PSW's participation in the MasterCard system. PSW nevertheless complains that MasterCard's rules did not adequately conform to PSW's "unique business on the Internet" -- which is concededly high-risk -- and thus assertedly restrained competition in violation of the Robinson-Patman Act, 15 U.S.C. § 13, and §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, as well as state law. In essence, PSW contends that MasterCard, Visa, and PSW's acquirers, First Financial Bank and First Data Merchant Services Corp. (together, "FFB"), or consumers, should be forced to bear the risks inherent in PSW's chosen business, rather than PSW. *See, e.g.*, Compl. ¶ 58.

PSW's use of antitrust catch-phrases and conclusory allegations cannot make an antitrust case out of the fact that it was a casualty of either a failed business strategy or the competitive process. To credit its attempt, one would have to ignore the basic principle that the antitrust laws were enacted for "the protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Parmelee Transp. Co. v. Keeshin*, 292 F.2d 794, 804

---

[1] MasterCard's motion and accompanying memorandum of law are submitted under D.R.I. Amended General Order #2002-01 (Jan. 31, 2003), permitting a maximum of 20 pages.

(7th Cir. 1961) ("[t]he antitrust laws were never meant to be a panacea for all wrongs"); *Granite Partners, LP v. Bear Stearns & Co.*, 58 F. Supp. 2d 228, 246 (S.D.N.Y. 1999).

## II. THE PLEADINGS

As best as can be discerned, the Complaint alleges that:

- MasterCard and Visa adopted "parallel" programs and policies to be followed by their member banks, including programs designed to combat excessive fraudulent transactions, which adoption plaintiff contends constitutes unlawful concerted action in violation of § 1 of the Sherman Act.
- MasterCard's adoption of the challenged programs and policies allegedly monopolized (and/or attempted or conspired to monopolize) the purported "general purpose card market," or the "network services market" or the "Adult Entertainment Website processing industry" (*see, e.g.*, Compl. ¶¶ 82, 153), in violation of § 2 of the Sherman Act.
- MasterCard priced its network services in a manner disfavoring PSW, in violation of the Robinson-Patman Act.
- MasterCard's claimed conduct violated the Rhode Island Antitrust Act, R.I.G.L. § 6-36-5, and constituted: breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, tortious interference with prospective economic advantage, conversion, embezzlement, and breach of contract. *Id.* ¶¶ 155-63.

Plaintiff alleges no facts even suggesting that any of its antitrust claims falls under the "per se" rule; thus all such claims require a showing of harm to competition. *See Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004) (rule of reason standard).

## III. DESCRIPTION OF THIS MOTION

MasterCard moves to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. FACTS[2]

### A. Background

#### 1. The MasterCard Payment Card System

MasterCard is a membership corporation "whose members include more than 20,000 banks." Compl. ¶ 4; *see also Reyn's Pasta Bella v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992, 996 (N.D. Cal. 2003). Its member financial institutions ("member banks") act as "issuers," "acquirers," or both. Compl. ¶ 14. An "issuer" issues MasterCard-branded payment cards to cardholders. *Id.* An "acquirer" contracts with merchants from which it is willing to acquire transactions effected with MasterCard-branded payment cards. *Id.* In some cases, an "aggregator," such as PSW, acts as the intermediary between an acquirer and a number of merchants. *Id.* ¶ 19.

#### 2. PSW

PSW describes itself as a "billing processor for website clients" -- a substantial portion of which "deliver digital content for the 'Adult Entertainment Internet industry.'" *Id.* ¶¶ 19-21. PSW alleges that its clients, not PSW, supplied the digital content to consumers. *Id.* ¶¶ 21-22. PSW's alleged role was to "facilitate and process sales" for the website clients because they assertedly lacked the "technical expertise to process the transaction and to manage the risks of fraud that would be present in the absence of appropriate fraud screening employed by PSW." *Id.* ¶¶ 20, 23. Thus, according to PSW, when a consumer makes a purchase from one of its clients, PSW is the entity that accepts the MasterCard-branded card from the consumer, and interfaces

[2] The "facts" discussed herein are those alleged in the Complaint, and are deemed accepted as true solely for purposes of this motion. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The discussion also includes general background facts about the MasterCard system that have been found by courts, and are not inconsistent with PSW's factual allegations, to assist the Court by placing PSW's allegations in a factual context. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000); *Greene v. Rhode Island*, 289 F. Supp. 2d 5, 8 (D.R.I. 2003).

with the acquiring bank, which is the entity that submits transactions into the MasterCard or Visa payment system. *Id.* ¶¶ 19-23.

PSW alleges that out of thousands of U.S. MasterCard members, only five acquirers are "willing to acquire and/or provide general payment card processing services to Adult Entertainment Websites," in addition to "a limited number of Aggregator/merchants like PSW -- once over a dozen and now only three -- that provide credit processing services to these businesses." *Id.* ¶ 90. It further alleges that almost all "Adult Entertainment Websites . . . do not have the sophistication and/or means to process or qualify to process as a merchant for MasterCard or Visa. They must process through an Aggregator or not at all." *Id.* ¶ 82.

PSW concedes that its business involves a high risk of fraudulent transactions. *Id.* ¶¶ 50-53, 60. It also concedes that it could not accept American Express-branded payment cards "because card associations such as American Express have chosen not to accept transactions related to the 'Adult Entertainment Internet industry'" that PSW serviced. *Id.* ¶ 42. Although PSW contends that MasterCard has acted unlawfully to eliminate "aggregators," it acknowledges that a practice challenged in this respect, MasterCard's Member Service Providers program, actually allowed PSW to conduct business within the MasterCard payment system. *Id.* ¶ 83(a).

**3. MasterCard's Rules and Programs**

MasterCard has established a system of ancillary regulations that are necessary for its payment card system to function smoothly and efficiently. *Nat'l Bancard Corp. v. Visa U.S.A., Inc.*, 596 F. Supp. 1231, 1252 (S.D. Fla. 1984), *aff'd*, 779 F.2d 592 (11th Cir. 1986) ("*NaBanco*"). Among other things, these regulations allow issuing banks to compete for cardholders' business, and acquirers to compete for merchants' business. *NaBanco*, 596 F. Supp. at 1253. In a typical payment card transaction over the Internet (or by mail or telephone), there is no face-to-face contact between the merchant and cardholder, which, PSW concedes, increases the risk of fraud.

Compl. ¶ 47. MasterCard has adopted procedures, which, PSW also concedes, were designed to reduce that risk of fraud. *Id.* ¶¶ 59-60. But it complains that these procedures impacted its chosen business model. *Id.* ¶¶ 79-81.

**4. Chargebacks**

Chargebacks occur when a cardholder disputes a charge (*e.g.*, as unauthorized). The issuer may credit the amount of the chargeback to customer's account, and then may attempt to recover that amount through a "chargeback" to the acquirer. *See, e.g.*, *id.* ¶¶ 43-44. After the acquirer reimburses the cardholder's issuer for a disputed amount, it may recover that amount from the merchant, if the acquirer's contract with the merchant allows. *See Paycom Billing Serv., Inc. v. Payment Res. Int'l*, 212 F. Supp. 2d 732, 734 (W.D. Mich. 2002). In PSW's case, the acquirer would try to recover from PSW, which purportedly effected the transaction with the consumer as an agent of the website client. *See id.* ¶ 23.

A merchant may challenge a chargeback by providing, *e.g.*, information sufficient to verify the validity of the transaction. *See id.* ¶ 46. However, when a customer makes a purchase over the Internet or by telephone, there is no signed paper receipt, and there may not be any tangible goods that were to be delivered to the consumer (*e.g.*, when a consumer purchases the ability to view adult content on the Internet). *See id.* ¶¶ 47, 55. PSW alleges that it is, therefore, more difficult for Internet businesses to dispute a chargeback than it is for a "brick and mortar" business. *See id.* ¶¶ 46-47, 55. PSW concedes, however, that its business model did pose peculiar risks, including that of fraudulent transactions. *See id.* ¶¶ 50-51.

## V. ISSUES

1. Whether plaintiff's Robinson-Patman Act claim should be dismissed as a matter of law because the Act does not apply to the sale of services, but only to that of tangible "commodities."

2. Whether plaintiff's Sherman Act claims (§§ 1 and 2) should be dismissed because plaintiff has failed to allege facts supporting the requisite elements of (i) injury to competition, or (ii) antitrust injury and/or standing.

3. Whether plaintiff's § 1 claim and § 2 conspiracy claim additionally should be dismissed as a matter of law because plaintiff has failed to allege any facts showing concerted conduct between MasterCard and either Visa or FFB.

4. Whether plaintiff's § 2 claim should be dismissed as to MasterCard because plaintiff has failed to allege facts showing that MasterCard has monopolized, attempted to monopolize, or conspired to monopolize any relevant market. In addition, whether plaintiff's monopoly leveraging theory fails because plaintiff has failed to allege a dangerous probability that MasterCard could attain market power in an alleged adjacent market.

5. Whether plaintiff's state law claims should be dismissed for failure to state a claim.

## VI. POINTS AND AUTHORITIES

### A. The Standard Governing Motions to Dismiss

Dismissal of a claim under Rule 12(b)(6) is warranted if the Complaint lacks a cognizable legal theory or alleges insufficient facts to support such a theory. *DM Research Inc. v. College of American Pathologists*, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) (Torres, J.), *aff'd* 170 F.3d 53 (1st Cir. 1999). In deciding such a motion, a court must take the complaint's well-pled factual allegations as true, viewing them in the light most favorable to the non-moving party (*see, e.g., id.),* but it should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("*AGC*"). Nor is a court bound to accept conclusory allegations or legal conclusions couched as factual allegations. *See id.*, 459 U.S. at 528 n.17 ("Certainly in a case of this magnitude, a district court

must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

B. <u>PSW Has Failed To State A Claim Under The Robinson-Patman Act</u>

To state a claim under the Robinson-Patman Act, plaintiff must plead facts showing, *inter alia*, that a seller discriminated in price between different "purchasers" of "commodities." 15 U.S.C. § 13(a) (2004); *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050, 1059 (1st Cir. 1995). Services consistently have been held not to be commodities. *See* 15 U.S.C. § 13 (2004); *Goodloe v. Nat'l Wholesale Co.*, 2004-2 Trade Cas. (CCH) ¶ 74,518, 2004 U.S. Dist. LEXIS 13630 at *28-*29 (N.D. Ill. July 19, 2004) ("credit card processing services, and order processing services are not 'commodities' for purposes of the Robinson-Patman Act").

PSW, however, bases this claim solely on an assertion that MasterCard disfavored PSW in its pricing of "network services." *See, e.g.*, Compl. ¶ 33 (MasterCard provides "network services"); *id.* ¶ 83(e) (discriminatory fees for interchange services); *id.* ¶ 154 ("discriminatory" Excessive Chargeback Program). Additionally, since PSW admits that it obtains payment card services from an acquirer; it is not a "purchaser" from MasterCard. *See* 15 U.S.C. § 13(a); *FTC v. Morton Salt Co.*, 334 U.S. 37, 45 (1948) ("same seller" requirement). Consequently, PSW has failed to state a claim under the Robinson-Patman Act.

C. <u>PSW Has Failed to State a Claim For Relief Under the Sherman Act</u>

PSW's claim under §§ 1 and 2 of the Sherman Act fail because the Complaint does not allege facts showing (i) injury to competition (as opposed to plaintiff alone) or (ii) that PSW has the requisite standing or antitrust injury.[3]

[3] PSW also alleges that MasterCard's conduct violates the Rhode Island Anti-Trust Act, R.I.G.L § 6-36-5. If this Court dismisses the Sherman Act claims, it also should dismiss the state antitrust claims, because "[t]he provisions of the Rhode Island Antitrust Act mirror those of §§ 1-2 of the Sherman Act . . . and are construed in the same manner as the federal statutes." *Stop & Shop*

### 1. PSW Has Failed To Allege Facts Showing Harm To Competition

The antitrust laws were enacted for "the protection of competition, not competitors." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990). Accordingly, PSW must allege facts showing that the claimed restraint harmed competition overall in the alleged relevant market; allegations that the challenged conduct injured PSW are insufficient. *See, e.g., NYNEX Corp. v. Discon, Inc.* 525 U.S. 128, 139 (1998) (under § 1, an "allegation of harm to [a competitor] does not automatically show injury to competition"); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (a violation of § 2 requires facts alleging defendant's ability to "lessen or destroy competition in the [relevant] market").

The Complaint fails this test. It asserts harm only to PSW's "unique" business (Compl. ¶¶ 83-84, 90), and fails to allege facts showing harm to competition as a whole in any relevant market. *See Eastern Food Servs., Inc., v. Pontifical Catholic Univ. Servs. Assoc.*, 357 F.3d 1, 4 (1st Cir. 2004) ("antitrust claims are concerned not with wrongs directed against the private interest of an individual business but with conduct that stifles competition").

To the extent PSW alleges that its business is in the purported market for "Adult Entertainment Website processing" services (Compl. ¶ 83), it must show harm to competition in that market.[4] PSW alleges that this purported relevant market is comprised of acquiring banks and "aggregator/merchants" willing to provide general payment card processing services to Adult Entertainment Websites. *Id.* ¶ 90. As a purportedly "smaller" participant in this alleged market,

---

*Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 239 F. Supp. 2d 180, 186 (D.R.I. 2003), *aff'd*, 373 F.3d 57 (1st Cir. 2004); *see also Eri Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1353 n.1 (R.I. 1997) (Rhode Island's antitrust laws are "construed in harmony with judicial interpretations of comparable federal antitrust statutes").

[4] To the extent PSW's antitrust claims are construed to allege anticompetitive effects in a claimed market for payment card services, MasterCard joins the general arguments set forth in § I.A of the memorandum in support of the motion to dismiss of Visa U.S.A., Inc.

PSW claims that MasterCard's excessive chargeback programs impacted it disproportionately, and ultimately forced it to cease operations. Whatever effect MasterCard's programs may have had on PSW's *individual* ability to "process transactions" for Adult Entertainment Websites, PSW's Complaint alleges no facts showing that these programs have harmed competition in that market as a whole.

The competitive process is harmed when conduct "obstructs the achievement of competition's basic goals -- lower prices, better products, and more efficient production methods." *Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1182 (1st Cir. 1994) (*quoting Town of Concord v. Boston Edison Co.*, 915 F.2d 17, 21-22 (1st Cir. 1990)); *accord Lee v. Life Ins. Co. of N. Am.*, 829 F. Supp. 529, 535 (D.R.I. 1993), *aff'd,* 23 F.3d 14 (1st Cir. 1994). The picture painted by the Complaint shows no such obstruction. To the contrary, PSW alleges that the effect of MasterCard's excessive chargeback programs will be to consolidate processing for Adult Entertainment Websites to those aggregators able to reap economies of scale, *i.e.,* "large enough to spread unavoidable 'friendly fraud' chargebacks against a sufficiently large volume" and thereby avoid triggering MasterCard's excessive chargeback policies and costs. *See* Compl. ¶ 81. By virtue of these conceded cost savings, these larger entities assertedly will remain able to transact business with the Adult Entertainment Websites. *See id.* While this test of economic efficiency may not assist PSW, it is not harmful to consumers.

**2. PSW Has Failed To Allege Facts Showing Standing Or Antitrust Injury**

The Supreme Court repeatedly has held that not every person who purports to have suffered an injury traceable to an alleged antitrust violation may assert a claim. *See, e.g., Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 n.14 (1972) ("Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.") (citations omitted). Thus, it has imposed standing and "antitrust injury" limitations on

private antitrust claims. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737-44 (1977); *Serpa Corp. v. McWane Inc.*, 199 F.3d 6, 9-12 (1st Cir. 1999) (barring claims by distributors whose injuries did not flow "from that which makes defendants' acts unlawful").

To determine whether a plaintiff has antitrust standing, courts consider the directness of the asserted injury, the nature of the damages theory, the risk of duplicative recoveries and the danger of complex apportionment. *AGC,* 459 U.S. at 542-45 (1983) (affirming dismissal of claims under Sherman Act §§ 1 and 2 for lack of standing due to the indirectness or speculativeness of the alleged injury, and noting the strong interest "in keeping the scope of complex antitrust trials within judicially manageable limits"); *see also Illinois Brick*, 431 U.S. at 737-44 (denying indirect purchasers standing for damages claim); *Serpa*, 199 F.3d at 10-11 ("a commercial intermediary, such as a distributor . . . , generally lacks standing because its antitrust injury is too remote); *SAS of Puerto Rico v. Puerto Rico Tel. Co.,* 48 F.3d 39, 45 (1st Cir. 1995) (denying standing where there was no antitrust injury and damages were speculative).

To have antitrust standing, a plaintiff also must show that it suffered "antitrust injury" – "loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Brunswick,* 429 U.S. at 489; *Serpa*, 199 F.3d at 10. To have antitrust injury, a plaintiff must be a participant in the relevant market. *See, e.g., AGC,* 459 U.S. at 539 (plaintiff did not suffer requisite antitrust injury if it was "neither a consumer nor a competitor in the market in which trade was restrained"); *Serpa*, 199 F.3d at 10 ("[c]ompetitors and consumers in the market where trade is allegedly restrained are presumptively the proper plaintiffs to allege antitrust injury").

PSW's claims are barred under these standards. In an effort to inject itself into a competitive relationship with MasterCard's acquiring members (but not with MasterCard itself),

PSW alleges that it competed with acquirers to provide payment processing services to merchants. Compl. ¶¶ 89, 147. It then concedes, however, that it needed to obtain payment processing services *from* an acquirer in order to provide its services to its Website clients. *See id.* ¶ 20. And, although PSW also contends that it competes with MasterCard acquirers for Adult Entertainment Website clients, it concedes that these Website clients lacked the capability to process credit card transactions with acquirers without the services provided by aggregators such as PSW. *See id.* ¶ 82.

These allegations show PSW to be too remotely situated to have standing to assert antitrust claims against MasterCard. *See Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182-84 (3d Cir. 1997) (plaintiff had not suffered antitrust injury and did not have antitrust standing because it was not a competitor in the market). Furthermore, by describing itself as an agent of its website clients (*e.g.*, Compl. ¶¶ 20-23), PSW's claims are derivative of any claims such clients may have, which also deprives PSW of antitrust standing. *See AGC*, 459 U.S. at 541 n.46 (plaintiffs with "merely derivative injuries" lack standing); *Gregory Marketing Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 95 (3d Cir. 1986) (denying antitrust standing to broker). Consequently, all of PSW's Sherman Act claims fail.

**3. PSW Has Failed to Allege Facts Showing Concerted Action**

To plead a claim under Section 1 of the Sherman Act, or a Section 2 conspiracy to monopolize claim, a plaintiff must state facts showing concerted action between two or more separate entities. *See also Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 17 (1st Cir. 2004) (affirming summary judgment where concerted action not shown). Unilateral conduct on the part of a single person or enterprise cannot violate § 1. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984).

To plead the concerted action requirement of § 1, a plaintiff must allege facts showing that defendant had "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). PSW concludes that the conduct of the Defendants herein includes various types of agreements assertedly violating § 1 of the Sherman Act. Compl. ¶ 91. However, it fails to detail any facts showing such concerted action. PSW's Complaint does not even purport to offer direct evidence of concerted conduct; rather, it bases its conspiracy claim solely on allegations of assertedly "consciously parallel" actions of MasterCard and Visa (*e.g., id.* ¶¶ 62-63) towards a purportedly "obviously joint goal" of eliminating "aggregators processing for Adult Entertainment Websites." *Id.* ¶ 84.

Such parallel conduct alone, however, is insufficient as a matter of law to constitute concerted action under the Sherman Act, "even when each firm rests its own [individual] decision upon its belief that competitors will do the same." *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 484 (1st Cir. 1988) (Breyer, J.); *accord DM Research,* 2 F. Supp. 2d at 229 ("[P]arallel behavior, by itself, does not constitute a conspiracy."). To allege an antitrust conspiracy based on asserted parallel conduct, plaintiff also must allege "plus factors" sufficient "to exclude the possibility of independent action," such as conduct that cannot be explained by any legitimate business justification. *See Monsanto,* 465 U.S. at 768; *Market Force Inc. v. Wauwatosa Realty Co.*, 906 F.2d 1167, 1172 (7th Cir. 1990) ("conscious parallelism by itself is not enough to support an antitrust conspiracy case"). Indeed, a conspiracy allegation based on parallel conduct fails if there is an independent business justification explaining the conduct. *Cayman Explor. Corp. v. United Gas Pipeline Co.,* 873 F.2d 1357, 1361 (10th Cir. 1989).

PSW concedes that the programs established by MasterCard and Visa had a legitimate and independent purpose -- to lessen fraudulent practices against cardholders.[5] Compl. ¶¶ 59-61. Moreover, far from showing a conspiracy to eliminate aggregators, PSW's allegations concede that MasterCard's Member Service Providers program permitted PSW to do business as an "aggregator," if it paid a small registration fee and complied with MasterCard's rules. *Id.* ¶ 83a.

Nor does the Complaint state a § 1 claim based upon any purported conspiracy between MasterCard and FFB to consolidate and/or eliminate aggregators from the alleged Adult Entertainment Website processing market. *See, e.g., id.* ¶ 147. As noted above, MasterCard's "Member Service Providers" program provided a mechanism by which "aggregators" could conduct business within the MasterCard system. PSW offers no factual allegations that MasterCard conspired either with any acquirer (including FFB) or any "aggregators" competing with PSW to injure competition. For example, PSW admits that the MasterCard system is comprised of, *inter alia*, "more than 20,000 member banks" (*id.* ¶ 4), but there is no allegation suggesting that the reason "few [a]cquiring [b]anks -- perhaps five in the United States -- [are] willing to acquire and/or provide general payment card processing services to Adult Entertainment Websites" (*id.* ¶ 90) is restrictive agreements between MasterCard and such acquiring banks. The lack of other acquirers willing to deal with PSW is more likely the result of an independent decision not to participate in the Adult Entertainment industry, as PSW states is the case with

---

[5] The FTC, the principal federal agency charged with policing unfair and/or deceptive practices (*see* 15 U.S.C. § 45 *et seq.*), has explained that excessive levels of chargebacks are a valid indicator of potential fraud and instructed card issuers to monitor merchants' levels of chargeback activity for that purpose. *See, e.g., Citicorp Credit Servs., Inc.* 116 F.T.C. 87, 92 (1993) (consent order); *see also Taxpayer Beware: Schemes, Scams and Cons*: *Hearing Before the Comm. on Finance United States Senate*, 107th Cong. 31-33, app. at 109, 112 (2001) (statement of Hugh Stevenson, Associate Director of the FTC Bureau of Consumer Protection identifying unauthorized charges on "Internet Information and Adult Services" as one of the top ten Internet scams); *FTC v. Crescent Publ'g. Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001); *FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000).

American Express. *Id.* ¶ 42. Indeed, PSW offers no reason why MasterCard would want to conspire to exclude aggregators since it alleges that the Adult Entertainment websites have to "process through an [a]ggregator or not at all" (*id.* ¶ 82), and, unlike American Express, MasterCard has not excluded transactions related to that industry.

**4. PSW's Has Failed To State A Claim Under The Sherman Act With Respect To Any Of The Purported Programs Challenged In The Complaint**

Although PSW's principal (albeit unsuccessful) challenge is to MasterCard's (and Visa's) purported excessive chargeback program, it also appears to challenge four additional purported programs under the Sherman Act. *See id.* ¶ 83. While PSW's failures to plead adequately facts showing injury to competition, antitrust injury, or standing (described above) are equally applicable to these challenges, its allegations that these programs violate §§ 1 and 2 of the Sherman Act also fail for the reasons detailed below.

**(a) "Member Service Providers" Program**

PSW alleges that MasterCard's "Member Service Providers" program was designed to eliminate aggregators from the industry. *Id.* ¶ 83(a). As discussed above, however, PSW's concedes that, rather than unlawfully excluding "aggregators," the "Member Service Providers" program actually provided a mechanism by which "aggregators" could do business within the MasterCard system upon payment of a small registration fee and compliance with applicable MasterCard rules. *See supra* § C.3. PSW has made no factual allegation as to how the "Member Service Providers" program is anticompetitive.

**(b) MATCH File Program**

PSW concedes that MasterCard's "MATCH file program" was designed to identify for its member banks entities whose merchant privileges have been terminated (and can no longer honor MasterCard-branded cards) or merchants that have generated excessive levels of chargebacks

(Compl. ¶¶ 83(b), 88), but contends that the program constitutes an illegal group boycott. PSW claims that, after it was terminated by its acquirer, it was unable to procure a new acquirer. *Id.* ¶ 146. However, PSW offers no facts suggesting that any decisions not to do business with it were the product of an agreement rather than unilateral decision-making by any (unidentified) acquirer(s) it may have approached. The failure to allege facts showing such an agreement warrants dismissal of that claim. *See SmileCare Dental Group v. Delta Dental Plan of Cal.*, 88 F.3d 780, 786 (9th Cir. 1996).

**(c) Cross-Border Acquiring**

PSW alleges that MasterCard's cross-border acquiring policy "directly and/or indirectly caused or contributed to PSW's demise" because it allegedly "limited the ability [of PSW] to seek more flexible [a]cquiring [b]anks offshore." Compl. ¶¶ 83(c), 84, 87. However, PSW has alleged no facts showing that the claimed policy unreasonably affected competition in general, given the thousands of other U.S. acquirers who could have chosen to do business with PSW if they chose. *See, e.g., Brunswick*, 429 U.S. at 488. Moreover, PSW alleges no facts that it suffered any injury from MasterCard's claimed policy; it has alleged no facts showing that: (i) it attempted, without success, to contract with any acquirer outside the United States; (ii) any foreign acquirer would have been willing to acquire U.S. transactions of Adult Entertainment Websites, which constitute a substantial portion of PSW's clientele; or (iii) that it would have received a better deal from a foreign acquirer than it obtained from U.S. acquirers. Thus, PSW's claimed harm is wholly speculative and insufficient to support a private antitrust claim. *See, e.g., AGC*, 459 U.S. at 542-45.

**(d) "Exclusivity Policy"**

PSW alleges that MasterCard established a policy prohibiting member banks from issuing American Express- or Discover-branded cards, thereby "restraining competition in the general

purpose card market and the network services market." Compl. ¶ 83(d). By PSW's own admission, however, American Express does not allow transactions from "Adult Entertainment Internet" merchants. *Id.* ¶ 42. And PSW makes no allegation that it cannot accept transactions made using Discover-branded cards. PSW has thus failed to allege that MasterCard's "Exclusivity Policy" limited in any way the number of networks with which it could have dealt.

Moreover, any antitrust claim premised on MasterCard's "Exclusivity Policy" fails the antitrust injury and standing tests discussed *supra* at pp. 9-11, and any alleged injury suffered by PSW is too speculative to pass muster under *AGC*. To show harm, PSW would have to show, among other things, that: absent the "exclusivity" rules, MasterCard member issuers would have entered into contracts to issue Discover-branded payment cards; this would have increased the total number of Discover-branded payment cards issued (even though there is no limitation on the number or type of Discover-branded cards that Discover can issue); persons with these incremental cards would have purchased goods and services from PSW's websites clients that they could not have purchased through alternative means (*e.g.*, with another payment card); and as a result, PSW would receive higher fees from its website clients for its provision of services on their behalf. This is precisely the type of indirect, speculative claim the standing and antitrust injury restrictions preclude.

### 5. PSW Has Failed to State a Claim Under § 2 of the Sherman Act

#### (a) Plaintiff Has Failed To State a Claim for Monopolization

To state a monopolization claim under § 2 of the Sherman Act, a plaintiff must plead facts showing: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *Lee*, 829 F. Supp. at 539.

PSW concedes that, in the "general purpose credit and charge card market" also labeled the "general purpose card market," MasterCard was the *second* largest payment card system, with its members assertedly accounting for only approximately 26% of the dollar volume in that market. Compl. ¶ 33. This admission precludes any conclusion that MasterCard has monopoly power in the asserted market. *United States v. Aluminum Co. of Am. (Alcoa)*, 148 F.2d 416, 424 (2d Cir. 1945) (Hand, J.) (90% of supply "is enough to constitute a monopoly; it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty-three per cent is not"); *accord Town of Concord*, 915 F.2d at 30. Nor may PSW cure this pleading defect by combining the market shares of MasterCard and Visa in an attempt to show monopoly power. *See, e.g., Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463, 519 (M.D. Pa. 2003) (allegations of "shared monopoly" not cognizable under § 2); *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 390 (D. Md. 1990) (same).[6]

In any event, PSW's monopolization claim appears only to posit that MasterCard used its alleged power in the "general purpose card market" to impose what PSW believes to be unfavorable pricing and business terms on downstream members (*e.g.*, aggregators and merchants) in the MasterCard system. However, the Supreme Court recently stressed, in a § 2 case, that "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Verizon Communs. Inc. v. Law Offices of Curtis V. Trinko, LLP,* 124 S. Ct. 872, 879 (2004).

---

[6] PSW's allegation of aggregate monopoly power seemingly arises from *United States v. Visa, U.S.A., Inc.*, 344 F.3d 229, 239-40 (3d Cir. 2003). However, that case involved § 1 of the Sherman Act, not § 2. *See Eastman Kodak Co., v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992) ("Monopoly power under § 2 requires, *of course*, something greater than market power under § 1.") (emphasis added).

Moreover, the possession of monopoly power is unlawful only if coupled with anticompetitive exclusionary conduct. *Id.* No such anticompetitive conduct has been alleged by PSW. PSW candidly concedes that the online Adult Entertainment Industry presents a much higher incidence of fraudulent transactions than comparable "brick and mortar" merchants (Compl. ¶¶ 46-47, 50-51), and that the purpose of MasterCard's purported excessive chargeback program is to minimize those fraudulent practices against cardholders. *Id.* ¶¶ 59-61. This does not evince the "willful acquisition or maintenance" required for a § 2 claim under *Grinnell*.

**(b) PSW Has Failed to State a Claim for Attempted Monopolization**

To state a claim for attempted monopolization, a plaintiff must allege facts showing that the defendant had the specific intent to monopolize a market as well as a dangerous probability of success of monopolizing that market. *Verizon,* 124 S. Ct. at 883 n.4; *Spectrum Sports,* 506 U.S. at 459. Here, PSW apparently alleges that MasterCard attempted to monopolize the "Adult Entertainment Website processing" market. Because PSW does not allege that MasterCard was a participant in market, the Complaint fails to plead facts showing either that MasterCard had a specific intent to monopolize that market or a dangerous probability that it could monopolize that market. *See, e.g., Mercy-Peninsula Ambulance, Inc. v. County of San Mateo*, 791 F.2d 755, 759 (9th Cir. 1996) (dismissing § 2 complaint because county was not competitor in the health care provision market in which competition allegedly was restrained).

In addition, to the extent that PSW's attempted monopolization claim is premised upon MasterCard's alleged exercise of purported power in the "general purpose credit and debit card market" (or any other market) to monopolize the market for "processing for Adult Entertainment Website" clients, PSW asserts nothing more than a claim of "monopoly leveraging," which has been rejected as an independent theory of liability under § 2. *Verizon*, 124 S. Ct. at 883 n.4.

**(c) PSW has Failed to State a Claim for Conspiracy to Monopolize.**

A key element of a conspiracy to monopolize claim is a conspiratorial agreement. *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 67-68 (1st Cir. 2002); *Lee,* 829 F. Supp. at 540. As discussed earlier, the Complaint fails to identify any entity with whom MasterCard allegedly has conspired, much less any facts showing any anticompetitive agreement. *See supra* § C.3. Another essential element is the specific intent to monopolize a pertinent market. *See Fraser*, 284 F.3d at 67-68; *Lee*, 829 F. Supp. at 540-41 (dismissing for lack of specific intent to monopolize). PSW makes no such allegation; it merely alleges that concentration might result in the "Adult Entertainment Website processing" "market" -- an alleged market in which PSW does not even claim MasterCard participates, much less intends to monopolize. PSW's claim for conspiracy to monopolize should, therefore, be dismissed.

**D. <u>The Court Also Should Dismiss PSW's State Law Claims</u>**

Rather than repeat in their entirety similar arguments here, MasterCard joins in, and hereby incorporates by reference, the same general legal grounds set forth in Section II of defendant Visa's memorandum of law in support of its motion to dismiss, demonstrating that PSW's state law claims should be dismissed because, *inter alia*:

- PSW has failed to state a claim for breach of contract (Count 12) or for breach of the implied covenant of good faith and fair dealing (Count 5) because it has not alleged a valid contract between PSW and MasterCard, and because it has failed to allege facts sufficient to show that MasterCard breached any terms of any such purported contract;

- PSW has failed to state a claim for tortious interference with existing or prospective contractual relationships (Counts 6, 7, 8, and 9) because it has failed to allege that MasterCard specifically intended to interfere with PSW's current or prospective contracts, and did so through

"improper means," as opposed to through MasterCard's excessive chargeback rules and programs, which PSW concedes have a legitimate purpose;

- PSW has failed to state a claim for conversion (Count 10) against MasterCard because it has failed to allege (i) the conversion of any chattel or (ii) that MasterCard is obligated to return a specifically identifiable body of money (*i.e.* particular bills or coins) to PSW; and

- PSW has failed to state a claim for embezzlement (Count 11) against MasterCard because it has failed to allege that it maintained any account or otherwise entrusted funds to MasterCard (as opposed to its acquirer, FFB).

In addition, PSW has failed to state a claim for tortious interference with contractual relations (Count 6) or for tortious interference with prospective economic advantage (Count 8), with respect to PSW's purported current or prospective website clients, because it has failed to allege that MasterCard induced the breach by any website client of its contract with PSW -- as opposed to a breach by PSW.

## VII. CONCLUSION

The Court should dismiss the Complaint in its entirety as to MasterCard with prejudice.

Dated: November 24, 2004

Respectfully submitted,

JOSEPH V. CAVANAGH, JR. (#1139)
STACI L. KOLB (#5451)
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

ATTORNEYS FOR DEFENDANT
MASTERCARD INTERNATIONAL
INCORPORATED

# CERTIFICATION

I hereby certify that the 24th day of November, 2004, I forwarded a true copy of the within document via 1st class mail, postage prepaid, unless otherwise indicated, to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920
***Via Hand Delivery***

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Denise L. Plunkett, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

John Tarrintino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan PC
2300 Financial Plaza
Providence, RI 02903

Daniel Brookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Meyers
275 Battery Street
San Francisco, CA 94111
***Via Federal Express***

Brian Wallach, Esq.
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Cynthia Dragon