**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

PSW, INC., d/b/a/ PSW BILLING,

Plaintiff,

v.

VISA U.S.A. INC., MASTERCARD INTERNATIONAL, INC., FIRST FINANCIAL BANK AND FIRST DATA MERCHANT SERVICES CORP.,

Defendants.

Case No. 1:04cv347(ECT)

**REPLY MEMORANDUM IN SUPPORT OF VISA U.S.A. INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

OF COUNSEL:
Randall W. Edwards
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Richard G. Parker
Nikhil M. Shanbhag
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Daniel H. Bookin
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Patricia A. Sullivan (#2120)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 274-9200
Facsimile: (888) 325-9067

47

TABLE OF AUTHORITIES

Page

**Cases**

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) .......... 2

*American Title Ins. Co. v. East W. Fin. Corp.*, 16 F.3d 449, 456 (1st Cir. 1994) .......... 4

*Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004) .......... 4

*Bomar Resources, Inc. v. Sierra Rutile Ltd.*, No. 90 Civ. 3773(JFK), 1991 U.S. Dist. LEXIS 396 at *25-26 (S.D.N.Y. Jan. 15, 1991) .......... 5

*DM Research, Inc. College of Am. Pathologists*, 2 F. Supp. 2d 226, 229 (D.R.I. 1998) .......... 2, 5

*Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 4 (1st Cir. 2004) .......... 1

*Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660, 662 (R.I. 1998) .......... 4

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) .......... 3

*Implement Service, Inc. v. Tecumseh Products Co.*, 726 F. Supp. 1171, 1182-83 (S.D. Ind. 1989) .......... 4

*In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997) .......... 3

*Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 867 (R.I. 1987) .......... 5

*Mesolella v. City of Providence*, 508 A.2d 661, 669-70 (R.I. 1986) .......... 5

*Phoenix Elec. Co. v. National Elec. Contractors Ass'n, Inc.*, 867 F. Supp. 925, 941-42 (D. Or. 1994) .......... 1

*Providence Teachers Union, Local 958 v. Blue Cross and Blue Shield*, 2001 R.I. Super. LEXIS 125 at *11-12 (Nov. 30, 2001) .......... 4

*R.I. Five v. Medical Assocs.*, 668 A.2d 1250 (R.I. 1996) .......... 4

*Solar Travel Corp. v. Nachtomi*, 2001 U.S. Dist. LEXIS 7549 at *37 (S.D.N.Y. June 8, 2001) .......... 5

*State Dep't of Corr. v. ADP Marshall, Inc.*, 2004 R.I. Super. LEXIS 66, C.A. No. PB99-4704 (Mar. 29, 2004) .......... 4

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 239 F. Supp. 180, 191 (D.R.I 2003) .......... 1, 5

TABLE OF AUTHORITIES

Page

*United States v. Visa U.S.A., Inc.*,
163 F. Supp. 2d 322, 382-87 (S.D.N.Y. 2001) .......... 3

*United States v. Visa U.S.A., Inc.*,
344 F.3d 229 (2d Cir. 2003) .......... 2, 3, 4

PSW's response to Visa's motion to dismiss ("PSW V. Br.") confirms that PSW is at most alleging "wrongs directed against the private interest of an individual business," *Eastern Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 4 (1st Cir. 2004), rather than "activities that interfere with competitive markets and their ability to provide adequate supplies of quality goods and services," *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 239 F. Supp. 2d 180, 191 (D.R.I. 2003). PSW applauds itself for filing a 163-paragraph complaint – as if turgidity rather than clarity were the hallmark of a well-pleaded complaint – but even the densest complaint cannot state a claim where none exists. PSW fails to defend its frivolous Robinson-Patman Act claim (Count III), leaving Sherman Act § 1 (Count I) and § 2 (Count II) claims, and a grab-bag of mutually contradictory state-law claims (Counts IV-XII). All are meritless.

1. *Sherman Act §§ 1 & 2 Claims.* Counts I and II must be dismissed because PSW fails to allege harm to competition and lacks antitrust standing. Visa Br. 10-17.[1]

a. Our opening brief showed how the complaint failed to allege facts that would establish that Visa's chargeback rules have increased prices or reduced output in a relevant market. PSW's opposition addresses that argument almost in passing, in just a single paragraph. PSW V. Br. 12-13. As that fleeting response confirms, PSW alleges at most that the chargeback rules effectively increased prices *only for those merchants who experienced high chargeback rates*. *Id.* at 12 (describing "harm to competition" as "fees, fines, 'recovery fees,' and penalties" imposed on merchants with high chargebacks). PSW must allege harm to competition in the "market as a whole," and PSW makes no effort to justify defining a market as "merchants with high chargeback rates." Rather, the market is either (1) all merchants, in which case PSW does not and could not allege a marketwide price increase from the chargeback program, or (2) Adult

[1] PSW's § 2 monopolization claims also fail because § 2 requires an allegation of conduct that tends to exclude rivals unreasonably and thereby injures the plaintiff. PSW does not even begin to explain how Visa's chargeback rules excluded Amex and Discover from the card services market. Further, thousands of competing rivals cannot create a single-firm "*mono*poly"; claims of unlawful concerted activity among rivals arise under § 1, not § 2. *See Phoenix Elec. Co. v. National Elec. Contractors Ass'n, Inc.*, 867 F. Supp. 925, 941-42 (D. Or. 1994).

entertainment merchants (and their aggregators), in which case PSW alleges only an effective price increase as to certain *smaller* buyers who allegedly cannot avoid excessive chargebacks. Compl. ¶ 81; PSW V. Br. 13 & n.23.[2] By definition this alleged price increase is not marketwide: by PSW's own account, larger buyers in the market have prospered during the chargeback program, and PSW nowhere alleges that consumers are paying higher prices as a result of the chargeback program – in fact PSW contends that the chargeback program keeps consumer prices *too low*. *See supra* note 2.[3]

Rather than respond adequately to our showing that the complaint fails to allege facts establishing that Visa's chargeback practices harm competition, PSW's opposition attacks practices that are not at issue in this case. First, PSW relies heavily on the decision in *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003) ("*Visa*"), but the exclusivity rule challenged in that case only precluded Visa member banks from dealing with Amex and Discover. The rule did *not* preclude Amex and Discover from dealing with PSW. PSW itself recognizes that these other existing networks *elected* not to deal with PSW, Compl. ¶ 42; nobody contends that the exclusivity rule forced that choice on them. Second, PSW alleges that Visa increased interchange fees, but those allegations refer only to Visa's market power, which is not at issue in this motion. Compl. ¶¶ 35-40. PSW's lengthy description of the chargeback "minefield" (*id.* ¶¶ 92-145) does not include a single reference to an injurious interchange fee.

---

[2] PSW does not allege that the chargeback rules harmed competition in the "third" market, *viz.*, the "general purpose card market" comprised of consumer cardholders. Indeed, PSW alleges the opposite: Visa harmed merchants such as PSW by *not* imposing fraud-related costs on consumer cardholders. Compl. ¶¶ 56, 74-75, 79.

[3] If Adult entertainment merchants and aggregators are a distinct card-service buying market, PSW makes no effort to explain how increased demand-side concentration within that market could cause a price increase in that market. The "invocation of [an] antitrust[] term of art" such as "harm to competition" is no "substitute for the necessary factual allegations" that would justify a finding of marketwide harm. *DM Research, Inc. v. Coll. of Am. Pathologists*, 2 F. Supp. 2d 226, 229 (D.R.I. 1998) (internal quotation marks omitted), *aff'd* 170 F.3d 53 (1st Cir. 1999). It is thus not enough for PSW simply to insist (PSW V. Br. 13 n.23) that this Court accept that marketwide prices could increase when more sellers (e.g., thousands of banks) are forced to compete for sales to fewer and fewer buyers. If there is a distinct Adult entertainment card-service market, it is unambiguously in Visa's economic interest to have *more* buyers seeking purchases in that market, not fewer. Economically senseless allegations do not suffice to state a federal antitrust claim. *See DM Research*, 2 F. Supp. 2d at 230 (dismissing complaint where conclusorily alleged conspiracy was plainly against defendants' economic interest); *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) ("Antitrust claims must make economic sense.").

Third, PSW alleges a business loss occasioned by Visa's enforcement of its "cross border" rule, *id.* ¶ 105, but that loss did no more than set the allegedly injurious chargeback program into motion. PSW alleges no facts establishing that the "cross border" rule itself increased prices or reduced output in the market as a whole. Other card networks and foreign banks remained free to provide merchants such as PSW card services for foreign transactions.[4]

b. PSW also fails to explain why it has alleged facts establishing an injury that is sufficiently direct to confer antitrust standing. PSW repeatedly relies on the *Visa* court's conclusion that Visa's exclusivity rule harmed competition in the network services market, but PSW misapprehends the court's most critical point: the "victims" of the harm the rule assertedly caused in the network services markets included *Visa's own member banks*, who are the direct purchasers of network services from Visa and were "denied" the opportunity to purchase such services from Amex and Discover. *See Visa*, 344 F.3d at 240-41; *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 382-87 (S.D.N.Y. 2001). If some banks passed that injury on to merchant customers such as PSW, that merchant injury is plainly indirect and thus not actionable by the merchant. Likewise, if the chargeback rules unreasonably restrain competition in the network services market, it is the banks subjected to those rules who are injured in the first instance.

To escape its standing problem under the "indirect purchaser rule," *see Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), PSW invokes a "co-conspirator" exception some courts have recognized, which is said to apply when the directly injured middleman was conspiring with the ultimate supplier(s). PSW V. Br. 17-18 n.28. But Supreme Court precedent subsequent to *Illinois Brick* has clarified that "the only exceptions to the *Illinois Brick* doctrine are those stated in *Illinois Brick* itself – 'where the direct purchaser is owned or controlled by its customer,' 431 U.S. at 736 n.16 or . . . vice versa." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123

[4] The other rules mentioned in the complaint – the "MATCH list" and the "Registration Program," Compl. ¶ 83 – operated, from PSW's perspective, as components of the chargeback program: they allegedly deterred and/or mitigated the effects of chargebacks by helping to identify merchants with high chargeback rates, but they imposed no injury distinct from the chargeback program. Compl. ¶¶ 145-46.

F.3d 599, 606 (7th Cir. 1997) (citing *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990)). There is no allegation here that FFB is owned or controlled by Visa, and – as *Utilicorp* vividly illustrates – lower courts are not free to invent new exceptions to the categorical indirect purchaser rule.[5] Further, if the exception arises because the co-conspirators can be "viewed as one entity," PSW V. Br. 17-18 n.28, it truly makes no sense to apply it here, inasmuch as the *Visa* case on which PSW so heavily relies explicitly *rejected* the contention that Visa and its member banks could be treated as a "single entity" for antitrust purposes. *See Visa*, 344 F.3d at 242.

2. State-law Claims. a. PSW's contract-based claims are meritless. Visa has no contractual relationship with PSW. PSW's contract with FFB unambiguously states that it is between "the Customer [PSW] . . . First Financial Bank . . . and First Data Merchant Services Corporation," FFB Br., Exh. A, at 1, and unambiguous contracts must be interpreted according to their plain language. *Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004). PSW also alleges no consideration or mutuality of obligation between Visa and FFB. *Rhode Island Five v. Medical Assocs.*, 668 A.2d 1250 (R.I. 1996). The contract's incorporation of the Visa Operating Regulations does not make Visa a party to the contract. *Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660, 662 (R.I. 1998) (incorporation of one contract into another does not create duties as between the non-contracting parties).[6] Nor is Visa a party by virtue of any agency relationship with FFB. PSW invokes the legal term of art "agency" as a conclusory assertion, but it fails to allege the *facts* required to establish agency, *viz.*, that Visa had the right to control

---

[5] *Utilicorp* also answers PSW's contention that the indirect purchaser rule is inapplicable because Visa was allegedly "well aware" that FFB would pass through costs imposed by the chargeback program. PSW V. Br. 17 n.29. In *Utilicorp*, the middleman was *required by law* to pass through costs; nevertheless, the Court held that only the middleman could sue. 497 U.S. at 205; *see also* Visa Br. 16 n.10.

[6] The allegation that Visa "retained the right to require termination or modification of the Agreement," Compl. ¶ 96, does not establish that Visa is a party to the contract, but that Visa possesses a right as third party beneficiary to require one of the parties (FFB) to terminate the Agreement. *See State Dep't of Corr. v. ADP Marshall, Inc.*, C.A. No. PB99-4704, 2004 R.I. Super. LEXIS 66 (Mar. 29, 2004); *Providence Teachers Union, Local 958 v. Blue Cross & Blue Shield*, C.A. No. PC00-4135, 2001 R.I. Super. LEXIS 125 at *11-12 (Nov. 30, 2001). A third party beneficiary of a contract cannot be liable for breach of contract. *Implement Serv., Inc. v. Tecumseh Products Co.*, 726 F. Supp. 1171, 1182-83 (S.D. Ind. 1989).

FFB's actions or that FFB would act primarily for the benefit of Visa rather than itself. *See American Title Ins. Co. v. East W. Fin.*, 16 F.3d 449, 456 (1st Cir. 1994); *Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 867 (R.I. 1987). Conclusory legal epithets unsupported by factual allegations will not survive a motion to dismiss. *DM Research*, 2 F. Supp. 2d at 229.

b. PSW's tortious interference claims fail to allege any legally "improper" conduct by Visa. Insofar as PSW fails to allege that Visa's chargeback rules harm competition, they are necessarily pro-competitive because they are ancillary to an efficient joint venture, and thus are not impermissible under state commercial tort law. *See Stop & Shop*, 239 F. Supp. 2d at 195.[7]

c. Finally, PSW ignores its failure to allege conversion of a "chattel." Visa Br. 20. PSW alleges no identifiable res because money regularly flowed in and out of PSW's Merchant Account, Compl. ¶ 76, 80, 107, 108, 120, 131, 138, and Visa's alleged power to penalize FFB for not releasing funds does not give Visa the day-to-day control of FFB required for agency. Nor does PSW allege that Visa, by failing to compel *FFB* to release the money to PSW, converted money to *Visa's own* use, as required to hold Visa liable for conversion.

## CONCLUSION

For the foregoing reasons, and for the reasons previously stated, the motion to dismiss should be granted.

Respectfully submitted,

Dated: February 9, 2005

By: [signature]

Daniel H. Bookin
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700

[7] As to contracts with website clients, PSW's tortious interference claims fail to allege any specific contracts or imminent contracts with which Visa intentionally interfered. *See Solar Travel Corp. v. Nachtomi*, No. 00 Civ. 3564 (AGS), 2001 U.S. Dist. LEXIS 7549 at *37 (S.D.N.Y. June 8, 2001); *Bomar Resources, Inc. v. Sierra Rutile Ltd.*, No. 90 Civ. 3773(JFK), 1991 U.S. Dist. LEXIS 396 at *25-26 (S.D.N.Y. Jan. 15, 1991). Absent specification of a particular relationship, a plaintiff cannot plausibly allege that the defendant knew of and intended to interfere with that relationship. *Mesolella v. City of Providence*, 508 A.2d 661, 669-70 (R.I. 1986).

Facsimile: (415) 984-8701

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Patricia A. Sullivan (#2120)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 274-9200
Facsimile: (888) 325-9067

Of Counsel:

Randall W. Edwards
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700

Richard G. Parker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Nikhil M. Shanbhag
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Facsimile: (415) 984-8701

*Attorneys for Visa U.S.A. Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2005, a true and correct copy of the Reply Memorandum In Support of Visa U.S.A. Inc.'s Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted was sent via facsimile and first-class mail, postage prepaid to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707

Jay Fastow, Esq.
Bruce Colbath, Esq.
Denise Plunkett, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Joseph V. Cavanagh, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765

David Paul Steiner, Esq.
David Steiner & Associates
1925 Century Park East, Suite 2350
Los Angeles, CA 90067

Brian Wallach, Esq.
Howrey Simon Arnold & White
1299 Pennsylvania Avenue, NW
Washington, DC 30004

John A. Tarantino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan, P.C.
2300 Financial Plaza
Providence, RI 02903

Patricia A. Sullivan #2120
*Attorney for Defendant Visa U.S.A., Inc.*