**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, Inc. d/b/a PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A., Inc., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, AND FIRST DATA MERCHANT SERVICES CORPORATION,<br><br>Defendants. | Civ. A. No. 04-347-T (ECT) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

49

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ........ 2, 3

*Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989) ........ 5

*CCBN.com, Inc. v. Thomson Financial, Inc.*, 270 F. Supp. 2d 146 (D. Mass. 2003) ........ 4

*DM Research, Inc. v. College of American Pathologists*, 2 F. Supp. 2d 226 (D.R.I. 1998), *aff'd* 170 F.3d 53 (1st Cir. 1999) ........ 2, 4, 5

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) ........ 4

*Plumley v. Southern Container, Inc.*, 303 F.3d 364 (1st Cir. 2002) ........ 2

*Reyn's Pasta Bella v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992 (N.D. Cal. 2003) ........ 5

*Serpa Corp. v. McWane Inc.*, 199 F.3d 6 (1st Cir. 1999) ........ 3

*United States v. Visa, U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), *cert. denied*, 125 S. Ct. 45 (2004) ........ 2, 5

*In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001) ........ 5

## STATE CASES

*Emery v. Visa*, 95 Cal. App. 4th 952 (2002) ........ 5

## I. Introduction

Apparently recognizing that it cannot state a viable claim under the Robinson-Patman Act, Plaintiff abandons this claim in its Opposition to MasterCard's Motion To Dismiss. Although Plaintiff attempts to salvage the rest of its claims, it fails to articulate a viable legal theory under which it can sue MasterCard based on the allegations of the Complaint. Plaintiff, thus, resorts to invoking Rule 8's requirement that it need only provide a "short and plain statement," essentially arguing that the sheer length of its 163-paragraph Complaint somehow immunizes it from dismissal. Plaintiff also relies heavily on its conclusory conspiracy and agency allegations in its Opposition, trying to use them to (improperly) lump together the defendants to deflect analysis of the sufficiency of its allegations with respect to each individual defendant.

Nowhere in its prolix pleading or Opposition, however, does Plaintiff allege (i) conduct by MasterCard (ii) that violates any law cited by Plaintiff (iii) and that resulted in cognizable harm to Plaintiff. Indeed, its failure to point to such allegations in its Opposition demonstrates that there is no plausible way -- short, plain or otherwise -- for Plaintiff to state a claim against MasterCard.

## II. Plaintiff's Antitrust Claims Must Be Dismissed As To MasterCard

Try as it might, Plaintiff cannot cobble together a viable antitrust theory against MasterCard, because it cannot allege that MasterCard has harmed competition in a relevant market in which Plaintiff participates. Under its own allegations, Plaintiff admits that it is a provider of intermediary processing services to Internet merchants (Compl. ¶ 19), and concedes that it was "not a direct consumer or competitor in the general purpose card market." (Pl. MC Opp. at 10 n.15.)

Nor is Plaintiff a competitor or consumer in the purported market for "network services for general purpose cards." It concedes that it *could not* compete with acquirers in this purported market because it needed to obtain processing services from an acquirer in order to provide services to its Website clients. (Compl. ¶¶ 20, 145.) And it cannot be a consumer of network services (Pl. MC Opp. at 9), since it alleges that it contracted with acquirers on behalf of, and as an "agent" for, its

clients. (Compl. ¶¶ 20-21.) Plaintiff does not have antitrust standing and has not suffered antitrust injury so as to state a viable Sherman Act claim against MasterCard.[1] *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 539 (1983) ("*AGC*"); MC Mem. at 10-11.

Plaintiff cannot avoid the impact of its allegations by resort to alleged collateral estoppel purportedly flowing from *United States v. Visa U.S.A, Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), *cert. denied*, 125 S. Ct. 45 (2004). Plaintiff has not moved for collateral estoppel, and may not summarily invoke the doctrine in a reply brief in order to save its Complaint.[2] Furthermore, any findings in *Visa* shed no light here as to whether this plaintiff has pleaded adequately antitrust injury and standing to assert the claims alleged here.

Plaintiff also has pleaded itself out of a claim based on alleged harm to competition in the purported "Adult Entertainment Website Processing Industry." First, this purported relevant market cannot be "a subset of the network services market," as Plaintiff claims, in light of Plaintiff's concession that MasterCard is not in the market for Adult Entertainment Website processing services. (Compl. ¶ 90; Pl. MC Opp. at 10.) Plaintiff nevertheless argues that MasterCard's rules caused higher prices and reduced output in the asserted general purpose card market, which, in turn, affected the asserted "Adult Entertainment Website Processing Market," so that acquirers could take over the latter, with resulting claimed harm to Plaintiff. (Pl. MC Opp. at 8; Compl. ¶¶ 84, 147.) This is exactly the kind of indirect and speculative claim that *AGC* precludes. *AGC*, 459 U.S. at 542-43. Moreover, Plaintiff again preempts its own theory by alleging that many of its Website clients cannot deal directly

---

[1] Indeed, Plaintiff acknowledges that it might be "technically defined as an 'indirect' purchaser." (Pl. MC Opp. at 16-17.) It attempts to bring itself within the exception to the indirect purchaser rule (*id.* at 16 n.28), but this argument fails because, as shown in MasterCard's moving papers, Plaintiff has failed to allege sufficient facts to show a conspiracy between MasterCard and FFB. MC Mem. at 12-13; *DM Research, Inc. v. College of Amer. Pathologists, 2 F. Supp. 2d 226, 228-29* (D.R.I. 1998) (Torres, J.), *aff'd* 170 F.3d 53 (1st Cir. 1999).

[2] *See, e.g., Plumley v. Southern Container, Inc.*, 303 F.3d 364, 373 (1st Cir. 2002) ("[A] party wishing to invoke the doctrine of collateral estoppel must establish (1) that the issue to be precluded is the same as that disputed in a prior proceeding, (2) that the issue was actually litigated in the earlier proceeding, (3) that the issue was determined by a valid and binding final judgment or order, and (4) that the determination of the issue in the prior proceeding was essential to the final judgment or order.") (citation omitted). Of course, no such finding-by-finding inquiry can be performed at this juncture; nor is it necessary, or even appropriate, in the context of deciding a motion to dismiss.

with an acquirer. (Compl. ¶¶ 81-82.) And, perhaps as a result, it alleges no facts showing that acquirers have taken over this claimed market, to the detriment of competition or otherwise.

By way of further example, Plaintiff's acknowledgment that it could not do business with American Express (Compl. ¶ 42) shows that MasterCard's purported "Exclusivity Rules" could not have harmed competition in the "Adult Entertainment Website Processing Market." And, in any event, as MasterCard already has shown, Plaintiff's trickle-down theory is too indirect and speculative to state an antitrust claim.[3] *See, e.g., Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 10-11 (1st Cir. 1999); MC Mem. at 9-11, 15-16.

Similarly, Plaintiff's assertions regarding MasterCard's Excessive Chargeback rules are self-defeating, because, according to Plaintiff, such rules will have the effect of consolidating the market into a few aggregators large enough to *avoid* triggering MasterCard's Excessive Chargeback rules. (*See* Compl. ¶ 81.) These allegations suggest that consumers (and the surviving competitors) will benefit from, rather than be injured by, such an eventuality. Plaintiff, thus, has alleged harm only to one competitor -- itself -- and not to competition as a whole. (*See* MC Mem. at 8-9.)

Plaintiff also has failed to refute MasterCard's showing that the Complaint does not allege facts showing that MasterCard, with an alleged market share of 26% (Compl. ¶ 33), has monopolized, attempted to monopolize, or conspired to monopolize any relevant market in which both Plaintiff and MasterCard are participants. (*See* MC Mem. at 17-19.) Because Plaintiff concedes that Website clients cannot deal directly with acquirers, Plaintiff's theory that MasterCard sought to drive entities such as Plaintiff out of the purported "Adult Entertainment Website Processing Market" assertedly to allow acquirers to take over must fail.[4]

---

[3] Plaintiff is notably silent as to whether or not it could have accepted Discover cards. Even if Plaintiff had alleged that Discover accepts "Adult Content Website Internet" transactions, Plaintiff has failed to explain how any asserted restraint on the issuance of Discover cards has caused any harm to the purported "Adult Entertainment Website Processing" market, let alone harm to Plaintiff that is not too speculative and indirect to state a claim.

[4] Plaintiff is flat wrong in arguing that the sufficiency of its allegations regarding MasterCard's alleged monopoly power and alleged intent to monopolize may not be determined on a motion to dismiss. (Pl. Opp.

## III. Plaintiff's Conclusory Conspiracy and Agency Allegations Do Not Save Its Antitrust or State Law Claims

Plaintiff's Opposition reveals that its claims, at their core, manifest nothing more than a commercial dispute over the terms of its contract with its acquirer -- grievances that have nothing to do with MasterCard. Indeed, Plaintiff contends that its acquirer, not MasterCard, "implemented or enforced the challenged practices which visited the harm on PSW." (Pl. MC Opp. at 5.)

Nevertheless, Plaintiff names all of the defendants in not only its antitrust claims, but also each of its state law claims, including even its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, embezzlement and conversion, which, on their face, arise solely out of the contract between Plaintiff and its acquirer. Moreover, undaunted by its inability to allege that MasterCard is a party to this contract, or even that it dealt directly with MasterCard, Plaintiff resorts to improperly lumping all of the defendants together as alleged "principal[s], agent[s], co-venturer[s], or co-conspirator[s]." (Pl. MC Opp. at 6.) Such conclusory labels do not suffice, as Plaintiff has failed to plead any particular conduct on the part of MasterCard that could give rise to liability under any of Plaintiff's antitrust or state law theories. *See DM Research,* 2 F. Supp. 2d at 228-29; *cf. Goren v. New Vision Int'l, Inc.,* 156 F.3d 721,730 (7th Cir. 1998) (lumping together of defendants insufficient to state a RICO claim).

For example, Plaintiff has failed to plead sufficient facts to support its assertion that MasterCard is in a principal-agent relationship or conspiracy with FFB. The allegation that MasterCard and FFB have their own contractual relationship does not support a finding of a principal-agent relationship between them.[5] *Cf. Emery v. Visa*, 95 Cal. App. 4th 952, 960 (2002) (no agency relationship found between network and banks). And Plaintiff does not allege any facts showing that

---

at 18-19.) Courts routinely dismiss Section 2 cases on the pleadings when merited. *See, e.g., CCBN.com, Inc. v. Thompson Fin., Inc.,* 270 F. Supp. 2d 146, 157 (D. Mass. 2003).

[5] Plaintiff misrepresents the holdings of *Reyn's Pasta Bella v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992 (N.D. Cal. 2003) and *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Neither court "expressly found that in entering into Merchant Agreements ... Acquiring Banks such as FFB are actually 'contract[ing] with retailers on behalf of Visa or MasterCard to purchase payment card transactions.'" (Pl. MC Opp. at 5.) The plaintiff's factual allegations were assumed to be true for purposes of deciding the motions at issue.

the reason allegedly only 5 acquirers are willing to do business with "Adult Entertainment Websites" (Compl. ¶ 90) is due to any type of restrictive agreement between MasterCard and its member banks.[6]

In addition, Plaintiff disingenuously refers to "Defendants" collectively when describing the alleged events regarding SoftSell, even though MasterCard is not alleged to be involved in any way. (Pl. FFB Opp. at 13-17; Compl. ¶¶ 105-131.) Notwithstanding this artifice, Plaintiff's Opposition makes clear that the direct cause of the alleged harm it claims to have suffered was the purported directive that it stop processing for SoftSell -- an act that is not, and cannot be, imputed to MasterCard, based on Plaintiff's own allegations. (*Id.*) As a result, Plaintiff's claims, which are predicated on the demise of its business, must be dismissed as to MasterCard.

## IV. Conclusion

Notwithstanding the 163 paragraphs of its Complaint and the twistings and turnings of its Opposition, Plaintiff has failed to articulate a coherent theory, much less a short and plain one, as to how the alleged conduct of MasterCard caused cognizable harm to Plaintiff that may be remedied under either the antitrust laws or any of Plaintiff's state law theories. The Court should dismiss the Complaint in its entirety as to MasterCard with prejudice.

---

[6] Moreover, the *Visa* holding defeats, rather than aids, Plaintiff's argument. In defending its conclusory allegations of a conspiracy between MasterCard and Visa, Plaintiff cites *Visa* as if the theory of "duality" posited there had succeeded. However, the *Visa* court rejected this theory and expressly found that the challenged MasterCard-Visa dual governance structure "had pro-competitive effects," and did not violate Section 1 of the Sherman Act. *Visa,* 163 F. Supp. 2d at 376-79. Furthermore, to the extent Plaintiff's conspiracy allegations are premised on alleged "parallel" conduct, this Court has held that parallel conduct by itself does not constitute proof of a conspiracy. *DM Research,* 2 F. Supp. 2d at 229. Clinching the point, Plaintiff concedes that the allegedly parallel programs have an independent business justification, as they are intended to control fraudulent transactions. Compl. ¶¶ 59-60; *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1361 (10th Cir. 1989).

Dated: February 9, 2005

Respectfully submitted,

Joseph V. Cavanagh Jr /slh
Staci L. Kolb

JOSEPH V. CAVANAGH, JR. (#1139)
STACI L. KOLB (#5451)
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
tel: (401) 831-8900
fax: (401) 751-7542

WEIL, GOTSHAL & MANGES LLP
JAY N. FASTOW
BRUCE A. COLBATH
767 Fifth Avenue
New York, NY 10153
tel: (212) 310-8000
fax: (212) 310-8007

ATTORNEYS FOR DEFENDANT
MASTERCARD INTERNATIONAL
INCORPORATED

**CERTIFICATION**

I hereby certify that the 9th day of February, 2005, I forwarded a true copy of the within document via 1st class mail, postage prepaid, unless otherwise indicated, to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Denise L. Plunkett, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

John Tarrintino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan PC
2300 Financial Plaza
Providence, RI 02903

Daniel Brookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Meyers
275 Battery Street
San Francisco, CA 94111

Brian Wallach, Esq.
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402

Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Cynthia Dragon