**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, INC., d/b/a PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A., INC., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, and FIRST DATA MERCHANT SERVICES CORPORATION<br><br>Defendants. | Case No. 04-347T |

**DEFENDANTS FIRST FINANCIAL BANK'S AND FIRST DATA MERCHANT SERVICES CORPORATION'S REPLY TO PLAINTIFF PSW'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

JOHN A. TARANTINO, #2586
PATRICIA K. ROCHA, #2793
VICTORIA M. ALMEIDA, #1755
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

PETER MOLL *(admitted pro hac vice)*
BRIAN WALLACH *(admitted pro hac vice)*
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Tel: (202) 383-6965
Fax: (202) 383-6610

50

Rather than identifying the legal bases for its numerous asserted claims, Plaintiff PSW's Objection to Defendants FFB's and FDMS's Motion to Dismiss largely regurgitates the Complaint's conclusory assertions of collective liability. In doing so, PSW confuses the Complaint's length with its duty to plead a cause of action that provides defendants with proper notice of their alleged wrongdoing. PSW still fails to identify the pertinent provisions of the Agreement that FFB and FDMS allegedly breached, still fails to identify any third parties that are the subject of the alleged tortious interference claims, and still does not provide FFB and FDMS with notice of the specific actions they took that could subject them to antitrust liability.

## I. PSW FAILS TO ADEQUATELY ALLEGE BREACH OF CONTRACT

The Complaint ***fails to identify a single operative provision of the contract that was breached***. *See Utility Metal Research, Inc. v. Generic Power Sys. Inc.*, No. 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *7 (E.D.N.Y. Nov. 18, 2004) ("Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to identify the contractual provision that defendant allegedly breached."). While PSW's Objection lists seven items that allegedly are at issue, (Obj. at 13-14), it fails to identify the provision of the contract that was allegedly violated by these actions. In fact, the contract expressly permitted all of these actions.[1] *See Town of Norwood v. New England Power Co.*, 202 F.3d 408, 417 (1st Cir. 2000) (dismissal appropriate if the alleged conduct does not violate the contract's unambiguous language). For example, the Merchant Agreement expressly allowed FFB and FDMS to establish a reserve account and maintain funds post-termination to cover future liabilities arising from PSW's conduct. Far from being wrongfully terminated, the Agreement expressly allowed FFB and FDMS to end the contractual relationship based on PSW's excessive chargebacks.

PSW's novel theory that FFB and FDMS somehow "breached" the Agreement's indemnity provision by virtue of allegedly violating the Sherman Act has no factual or legal

[1] Contrary to PSW's Objection, FFB and FDMS do not ask the Court to consider facts outside the Complaint. PSW does not contest that the Merchant Agreement with FFB and FDMS is properly considered to be part of the Complaint for the purposes of this Motion to Dismiss. (*See* FFB and FDMS Motion to Dismiss at 4-5).

bases. As notes above, the complained-of actions taken by FFB and FDMS were expressly permitted by the Agreement. Nor can PSW reconstruct the parties' contractual rights based on what it views as "commercially unreasonable." The Agreement's indemnity provision must be read within the context of the whole Agreement and cannot create a "breach" where a party's conduct was expressly authorized by the contract. *See Perreca v. Gluck*, 295 F.3d 215, 224 (2d Cir. 2002) (noting the "cardinal principle of contract construction that a document should be read to give effect to all its provisions and to render them consistent with each other.").

## II. FFB AND FDMS HAVE NOT BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Similar to its breach of contract claim, PSW attempts to allege a breach of the implied covenant of good faith and fair dealing based on its views of what is "commercially unreasonable." The ultimate question under this claim, however, is whether FFB's and FDMS's actions were free from arbitrary or unreasonable conduct under the Merchant Agreement. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 329 (D.R.I. 1999), *aff'd*, 217 F.3d 8 (1st Cir. 2000). The Merchant Agreement provided protections to FFB and FDMS from the significant financial risk arising from PSW's activities. Because FFB and FDMS acted pursuant to these protections, their actions were not arbitrary or unreasonable. *See Hord Corp. v. Polymer Research Corp. of Am.*, 275 F. Supp. 2d 229, 238 (D.R.I. 2003) ("Since plaintiff acted within the confines of the parties' contractual objectives, and thus by definition in good faith, plaintiff did not violate the implied covenant of good faith and fair dealing.").

PSW argues that the level of financial risk faced by FFB and FDMS (and hence, PSW) was unreasonable or constituted some form of penalty, punishment or forfeiture. (Obj. at 16). However, PSW admits that after the termination of the Merchant Agreement, FDMS faced potential fines in excess of $2 million arising from PSW's activities. (Compl. ¶ 142). Faced with this continuing potential exposure, holding a reserve account of $1.6 million after the contract's termination was not unreasonable. *See Pride Hyundai, Inc. v. Chrysler Fin. Co. L.L.C.*, 369 F.3d 603, 617-18 (1st Cir. 2004) (rejecting plaintiff's argument that defendant's

requirement that plaintiff increase funds in a reserve account to offset rising contingent liabilities was commercially unreasonable). Under these circumstances, PSW cannot alter the parties' express obligations under the Agreement through use of an implied covenant claim. *See Hord*, 275 F. Supp.2d at 238 ("An unambiguous contractual clause, agreed upon by both parties, cannot be rendered meaningless [by the implied covenant of good faith and fair dealing] because one party does not like its strict application.") (citations omitted).[2]

**III. NO COGNIZABLE CLAIM FOR TORTIOUS INTERFERENCE**

Apart from conceding that a party cannot tortiously interfere with its own contract (Obj. at 18 n.13), thereby warranting dismissal of Count 7 against FFB and FDMS, PSW re-alleges its largely unsupported tortious interference claims. PSW fails, however, to respond to the arguments made by FFB and FDMS in their Motion to Dismiss. For example, PSW still fails to identify the specific prospective business relationships that it lost. Vague allegations in the Objection, similar to those made in the Complaint, that the defendants' conduct damaged PSW's heretofore "excellent reputation in the industry" thereby "leading to the *reasonable inference* that it had a *reasonable probability* of continuing existing and acquiring future website clients" are speculative and do not satisfy this requirement. (Obj. at 18-19 (emphasis added)); *see Moran v. Norrell Health Care, Inc.*, No. PC 89-4262, 1993 R.I. Super. LEXIS 56, at *7 (R.I. Super. Ct. Sept. 15, 1993) ("[P]laintiff needs more than a hope at some prospective contract to state [a tortious interference] claim.").

Moreover, PSW's argument that a party's legal justification should not be considered on a motion to dismiss (Obj. at 18) is contradicted by this Court's decision in *Narragansett Indian Tribe v. Narragansett Elec. Co.*, No. 93-667T, Memorandum and Order (D.R.I. Jan. 12, 1995), which dismissed a tortious interference claim on a Rule 12(b)(6) motion where the complaint

---

[2] The Agreement expressly holds PSW responsible for all chargebacks and resulting fines and fees imposed on FFB and FDMS. (*See* FFB and FDMS Motion to Dismiss, Ex. A ¶¶ 11.3, 13.5, 14.1). As PSW claims that it "can often establish with reasonable certainty" the validity behind a chargeback request, (Compl. ¶ 48), its dispute should be with the customer making the chargeback request, not with the defendants exercising their express contractual rights.

itself established "a legitimate business interest" as justification for the defendant's actions. *Id.* at 3. Because PSW's Complaint itself establishes a legal justification for FFB's and FDMS's actions, a similar result is warranted here.

## IV. NO CLAIM FOR CONVERSION OR EMBEZZLEMENT

PSW's conversion and embezzlement claims have no merit. Aside from reciting their basic elements in the Objection, PSW provides ***no legal support*** for these claims. In their Motion to Dismiss, FFB and FDMS cited the *Traffix* case which holds that funds maintained in a reserve account expressly provided for in a contract cannot, as a matter of law, be converted. *See Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003). PSW's Objection ignores this authority.

## V. PSW FAILS TO ALLEGE ANY INVOLVEMENT OF FFB AND FDMS IN AN ANTITRUST CONSPIRACY

PSW has not identified any actions of FFB and FDMS that violate the antitrust laws. Instead, the Objection seeks to base antitrust claims against these defendants solely on the actions of MasterCard and Visa. (Obj. at 10-12). PSW's argument fails for several reasons.

First, PSW fails to allege facts sufficient to show FFB's and FDMS's involvement in an antitrust conspiracy. To state an antitrust claim against FFB and FDMS, PSW must plead facts showing that these defendants shared "a conscious commitment to a common scheme designed to achieve an unlawful objective" with MasterCard and/or Visa. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Bald allegations that FFB is both a "principal and agent" of Visa and MasterCard (Obj. at 11) do not satisfy this requirement. Contrary to PSW's argument that FFB's culpability "arise[s] merely out of its membership in the Visa and MasterCard association joint ventures," (Obj. at 11), membership in an association will not automatically involve all association members in an antitrust conspiracy. *See AD/SAT v. AP*, 181 F.3d 216, 234 (2d Cir. 1999). PSW must show "that association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *Id.*

PSW does not satisfy this requirement. The Complaint alleges no involvement by FFB and FDMS in the operative decisions of MasterCard and/or Visa. To the contrary, PSW alleges that MasterCard and Visa each promulgated their own Association Rules. (Compl. ¶¶ 28, 65-69). FFB's recognition of those rules in its merchant contracts does not show the existence of a conspiracy between it and MasterCard or Visa. *See Toscano v. PGA*, 258 F.3d 978, 984 (9th Cir. 2001) (no antitrust conspiracy where "defendants merely agreed to . . . provide a service under conditions set by [another] party"). In fact, the actions of FFB and FDMS as permitted in the Merchant Agreement were attempts to mitigate their financial risk arising from PSW's activities. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (conduct consistent with plausible business explanations "does not give rise to an inference of conspiracy").

Finally, PSW's collateral estoppel discussion is misplaced in the consideration of a motion to dismiss, which solely concerns the adequacy of the Complaint. Nor do the issues in *United States v. Visa U.S.A., Inc.*, 163 F. Supp.2d 332 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003) have any relevance to this action.[3] In any event, FFB and FDMS were not defendants in *Visa* and hence are not bound by this decision. *See* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4449, at 330 (2d ed. 2002) ("The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound.").

---

[3] *Visa* does not apply, where as here, the Complaint contains no allegation that PSW sought to join, or was prevented from joining other card networks as a result of exclusionary rules at issue in the *Visa* case. Indeed, on the contrary, PSW specifically pled that American Express will not accept transactions from the "Adult Entertainment Internet Industry." (Compl. ¶ 42).

Dated: February 10, 2005

DEFENDANTS, FIRST FINANCIAL BANK AND
FIRST DATA MERCHANT SERVICES
CORPORATION
By their Attorneys,

JOHN A. TARANTINO, #2586
PATRICIA K. ROCHA, #2793
VICTORIA M. ALMEIDA, #1755
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

-and-

PETER MOLL *(admitted pro hac vice)*
BRIAN WALLACH *(admitted pro hac vice)*
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Tel: (202) 383-6965
Fax: (202) 383-6610

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2005, a true copy of the within was served via first class mail, postage prepaid, on the following counsel of record:

*Counsel for Plaintiff:*
Richard A. Sinapi, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

*Counsel for MasterCard International:*
Joseph V. Cavanagh, Esq.
Blish & Cavanagh LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

*Counsel for VISA, U.S.A., Inc.:*
Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Daniel Brookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Myers
275 Battery Street
San Francisco, CA 94111

Debra Hunn
________________________

*323891_1.doc*