**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, INC., d/b/a PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A., INC., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, and FIRST DATA MERCHANT SERVICES CORPORATION<br><br>Defendants. | Case No. 04-347T |

**DEFENDANTS FIRST FINANCIAL BANK AND FIRST DATA MERCHANT SERVICES CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

JOHN A. TARANTINO (Bar. No. 2586)
PATRICIA K. ROCHA (Bar No. 2793)
VICTORIA M. ALMEIDA (Bar No. 1755)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza – 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

PETER MOLL (*admitted pro hac vice*)
BRIAN WALLACH (*admitted pro hac vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

With each successive filing, PSW's arguments have became less grounded in legal principles or properly pled facts and more dependent upon conclusory assertions of "commercial unreasonableness" or rantings about the "integrity of the free enterprise system." PSW's grievances have now become a moving target in which every operating rule of the Visa or MasterCard networks is subject to attack, regardless of how attenuated its connection to this dispute. All of this is part of a calculated and misguided effort to transform a simple, straightforward matter that is governed by a written contract into a massive and unwieldy antitrust or tort case. Those efforts should not be rewarded.[1]

## I. STANDARD OF REVIEW

Plaintiff's suggestion that it "is not legally obligated to allege any particular facts or elements in order to establish a claim for relief under the Federal Rules" (PSW Opposition ("Opp.") at 3) is simply wrong. While the court must accept well-pled allegations as true, *Morales-Villalobos v. Garcia-Llorens*, 316 F.3d 51, 53 (1st Cir. 2003), "the complaint must allege facts that establish ***all of the elements*** of the claim[s] asserted." *DM Research, Inc. v. Coll. of Am. Pathologists*, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) (emphasis added). Of particular pertinence to the case at bar, "[b]ald assertion, subjective characterizations and legal conclusions are insufficient" to state claim. *Id.*

## II. PLAINTIFF HAS NOT ADEQUATELY PLED ITS CLAIMS

Breach of Contract. A party seeking to bring a claim for breach of contract must, at a minimum, identify the contractual provisions allegedly violated. *See Utility Metal Research, Inc. v. Generic Power Sys. Inc.*, No. 02-CV-6205, 2004 U.S. LEXIS 23314, at *7 (E.D.N.Y. Nov. 18, 2004) ("Dismissal under Rule 12 (b)(6) is appropriate where a ***plaintiff fails to identify the contractual provision*** that defendant allegedly breached.") (emphasis added); *CompuSpa v. Int'l*

[1] PSW has also attempted to circumvent (if not ignore) the Court's ruling to permit only a thirty-page Opposition by converting at least ten pages of text into seventy-nine footnotes.

*Bus. Mach.*, 228 F. Supp. 2d 613, 620 (D. Md. 2002) (under New York law, "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue"). Despite this well-settled rule, PSW recites a litany of grievances (Amended Complaint ("Am. Compl.") ¶¶ 173-174, 185) without tying any of them to the particular provisions of the Merchant Agreement at issue in this case. Dismissal of the contract claim is warranted on that ground alone. *Montanez v. Solstar Corp.*, 46 F. Supp. 2d 101, 104 (D.P.R. 1999) (dismissing breach of contract claim because the plaintiffs "point to no clause of their contract with [the defendant] which is claimed to have been breached").

The reason that PSW scrupulously avoids any reference to specific provisions of the Merchant Agreement is because the contract expressly permitted FFB and FDMS to hold PSW responsible for all chargebacks, to establish a reserve account to cover exposure for those chargebacks as well as other obligations of PSW, to terminate the agreement based on excessive chargebacks, and to maintain the reserve account post-termination. This is the very conduct now at issue here. *See Town of Norwood v. New England Power Co.*, 202 F.3d 408, 417 (1st Cir. 2000) (dismissal appropriate if the alleged conduct does not violate the contract's unambiguous language).

Implied Covenant of Good Faith and Fair Dealing. The Merchant Agreement provided protections to FFB and FDMS from the significant financial risk arising from PSW's activities. Because FFB and FDMS acted pursuant to these protections, their actions were not arbitrary or unreasonable. *See Hord Corp. v. Polymer Research Corp. of Am.*, 275 F. Supp. 2d 229, 238 (D.R.I. 2003) ("Since plaintiff acted within the confines of the parties' contractual objectives, and thus by definition in good faith, plaintiff did not violate the implied covenant of good faith and fair dealing."). Faced with potential fines of $2 million, holding a reserve account in the amount of $1.6 million was not unreasonable. *See Pride Hyundai, Inc. v. Chrysler Fin. Co.*, 369 F.3d 603, 617 (1st Cir. 2004) (rejecting the argument that defendant's requirement that plaintiff increase funds in a reserve account to offset rising liabilities was commercially unreasonable).

Tortious Interference. PSW's Opposition still fails to identify the specific prospective business relationships that it lost. Vague allegations that the defendants' conduct damaged PSW's "excellent reputation in the industry" thereby "leading to the reasonable inference that it had a reasonable probability of continuing existing and acquiring future website clients" (Opp. at 29) are speculative and do not satisfy this requirement. *See Moran v. Norrell Health Care, Inc.*, No. PC 89-4262, 1993 R.I. Super. LEXIS 56, at *7 (R.I. Super. Ct. Sept. 15, 1993) ("[P]laintiff needs more than a hope at some prospective contract to state [a tortious interference] claim.").

PSW's argument that a party's legal justification should not be considered on a motion to dismiss (Opp. at 28) is inconsistent with this Court's decision in *Narragansett Indian Tribe v. Narragansett Elec. Co.*, No. 93-667T, Memorandum & Order (D.R.I. Jan. 12, 1995), which dismissed a tortious interference claim on a Rule 12(b)(6) motion where the complaint itself established "a legitimate business interest" as justification for defendant's actions. *Id.* at 3. Because PSW's Amended Complaint itself establishes the legal justification for FFB's and FDMS's actions, dismissal is appropriate.

Conversion/Embezzlement. Monies held in a reserve account provided for in a contract cannot, as a matter of law, be the subject of a conversion claim. *Traffix, Inc. v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003) (because agreement authorized reserve account, plaintiff did not have "ownership, possession or control" of funds, warranting dismissal of its conversion claim.) PSW attempts to distinguish *Traffix* by arguing that defendants were not "authorized to deposit funds in the reserve account to offset potential penalties." (Opp. at 30 n. 78). The plain language of the Merchant Agreement, however, provides that FFB and FDMS could establish a reserve account to cover "chargebacks, adjustments, fees, and other charges due from [PSW]" and that the reserve account could be used to satisfy any of "customer's obligations to [FFB and FDMS]." (Merchant Agreement, ¶22.2 at 22.4)."[2]

---

[2] The Merchant Agreement was attached to the initial brief of FFB and FDMS as Exhibit A.

In addition, under Rhode Island law, money can be the subject of an action for conversion only in the very limited circumstance where a defendant is under an obligation to deliver specific bills or coins to the plaintiff. *See DeChristofaro v. Machala*, 685 A.2d 258, 263 (R.I. 1996) (dismissing conversion claim where "contract placed no obligation upon defendant to keep intact *in specie* the money paid by plaintiffs"). Here, again, the Merchant Agreement specifically provided that the funds in the reserve account could be "commingled with other funds" of FFB and FDMS. (Merchant Agreement, ¶ 22.4). As a result, PSW cannot maintain an action for conversion.[3]

Antitrust Claims. PSW fails to distinguish the holding of *Paycom Billing Servs., Inc. v. MasterCard Int'l, Inc.*, No. 03-cv-6150, 2005 WL 711658, at *4 (E.D.N.Y. Mar. 29, 2005), in which the court held that the very same MasterCard rules at issue here do not give rise to antitrust claims for an "aggregator" such as PSW. That PSW makes conclusory allegations of a conspiracy between MasterCard and Visa on the matters at issue cannot save its antitrust claims. "[P]arallel behavior, by itself, does not constitute a conspiracy." *DM Research*, 2 F. Supp. 2d at 229; *Champ-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F. 2d 478, 484 (1st Cir. 1988). Indeed, PSW's own pleading establishes that the conduct of MasterCard and Visa was not even "parallel." (*See e.g.,* Am. Compl. ¶ 73) (discussing different fees for chargebacks imposed by Visa and MasterCard). Similarly unavailing is PSW's attempt to piggyback on the decision in *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 238-240 (2d Cir. 2003). The exclusionary rules at issue in that case do not preclude PSW from processing American Express or Discover transactions. *See Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 542-45 (1983) (affirming dismissal of antitrust claims on pleadings due to indirectness and speculativeness of alleged injury). American Express's refusal to deal with PSW has nothing to do with any conduct of the defendants in this case. (Am. Compl. ¶ 50). Moreover, that

---

[3] For the same reasons, PSW cannot maintain a claim for embezzlement. *See State v. Olivera*, 432 A. 2d 664, 666 (conversion is an element of embezzlement).

chargebacks may have been passed on from FFB to PSW does not support an antitrust claim, as PSW suggests (Opp. at 13 n. 31). Any "pass on" would have been pursuant to the contract between FFB and PSW, not as a result of any agreement between FFB and MasterCard or Visa.

PSW's conclusory allegations of an identity of interest between the defendants is also unavailing. *See Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.*, 126 F. Supp. 2d 40, 47 (D. Mass. 2001) (refusing to infer a conspiracy between defendants based on one defendant's decision to follow a policy unilaterally adopted by the other defendant four years earlier). Nor is FFB's membership in the MasterCard or Visa networks sufficient, standing alone, to satisfy this requirement. *See AD/SAT v. AP*, 181 F.3d 216, 234 (2d Cir. 1999) ("Membership in [an] association will not automatically involve all members in the [antitrust conspiracy.");[4] *see also Toscano v. Prof'l Golfers' Assoc.*, 258 F.3d 978, 984 (9th Cir. 2001) (no antitrust conspiracy where "defendants merely agreed to . . . provide a service under conditions set by [another] party").

Bivens Claim. PSW's addition of a *Bivens* claim, which delayed a ruling on the adequacy of the pleadings for over six months, is devoid of merit. A *Bivens* action cannot lie against private corporations. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), *Sarro v. Cornell Corrs., Inc.*, 248 F. Supp. 2d 52, 64 (D.R.I. 2003). Even if binding precedent did not preclude maintenance of a *Bivens* claim, PSW offers nothing more than "vague and conclusory allegations of official participation in civil rights violations" that are "not sufficient to withstand a motion to dismiss." *See Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1256-57 (9th Cir. 1997).

---

[4] PSW's reliance on *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp.2d 992, 996 (Opp. at 5 n.6) to assert antitrust liability against FFB and FDMS is entirely misplaced. That case did not even address the question of whether an acquiring bank (who does not even sit on the Visa or MasterCard board) could be held liable under the antitrust laws for merely complying with rules unilaterally imposed by a network.

Respectfully submitted,

Dated: July 21, 2005

JOHN A. TARANTINO (Bar. No. 2586)
PATRICIA K. ROCHA (Bar No. 2793)
VICTORIA M. ALMEIDA (Bar No. 1755)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza – 8th Floor
2300 Financial Plaza
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

PETER E. MOLL (*admitted pro hac vice*)
BRIAN WALLACH (*admitted pro hac vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

**Counsel for Defendants First Financial Bank and First Data Merchant Services**

*339747_1.doc*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2005, a true copy of the within was served via first class mail, postage prepaid, on the following counsel of record:

*Counsel for Plaintiff:*
Richard A. Sinapi, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

David Paul Steiner, Esq.
1925 Century Park East, Suite 2350
Los Angeles, CA 90067

*Counsel for MasterCard International:*
Joseph V. Cavanagh, Esq.
Blish & Cavanagh LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Denise L. Plunkett, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

*Counsel for VISA, U.S.A., Inc.:*
Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Daniel Bookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Myers
275 Battery Street
San Francisco, CA 94111

Debra Humm