**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, Inc. d/b/a PSW BILLING,<br><br>Plaintiff<br><br>v.<br><br>VISA U.S.A., Inc., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, AND FIRST DATA MERCHANT SERVICES CORPORATION,<br><br>Defendants. | Civ. A. No. 04-347-T (ECT) |

**DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S OBJECTIONS TO THE HONORABLE LINCOLN D. ALMOND'S REPORT AND RECOMMENDATION**

Defendant MasterCard International Incorporated ("MasterCard") hereby objects, pursuant to Fed. R. Civ. P. 72(b) and DRI LR 72(d), to the Honorable Lincoln D. Almond's Report and Recommendation with respect to Counts Five, Seven, and Eight of Plaintiff's First Amended Complaint. In support of its Objections, MasterCard relies on the Memorandum of Law filed herewith. MasterCard hereby requests oral argument.

Dated: February 17, 2006

By: Joseph V. Cavanagh Jr. (mcd)
JOSEPH V. CAVANAGH, JR. (#1139)
STACY L. KOLB (#5451)
MARY C. DUNN (#6712)
BLISH & CAVANAGH LLP
30 Exchange Terrace
Providence, Rhode Island 02903

JAY N. FASTOW (*pro hac vice*)
BRUCE A. COLBATH (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

ATTORNEYS FOR DEFENDANT
MASTERCARD INTERNATIONAL INCORPORATED

CERTIFICATE OF SERVICE

I hereby certify that, on the 17th day of February, 2006, I caused a true copy of the within document to be forwarded by first class mail, postage prepaid, to the following parties:

Richard A. Sinapi, Esquire
V. Edward Formisano, Esquire
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, Rhode Island 02920

Jay N. Fastow, Esquire
Bruce A. Colbath, Esquire
Denise L. Plunkett, Esquire
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, New York 10153

John Tarantino, Esquire
Patricia K. Rocha, Esquire
Adler Pollock & Sheehan PC
2300 Financial Plaza
Providence, Rhode Island 02903

Daniel Bookin, Esquire
Randall W. Edwards, Esquire
O'Melveny & Myers
275 Battery Street
San Francisco, California 94111

Brian Wallach, Esquire
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004-2402

Patricia A. Sullivan, Esquire
Edwards & Angell, LLP
2800 Financial Plaza
Providence, Rhode Island 02903

[signature]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PSW, Inc. d/b/a PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A., Inc., MASTERCARD INTERNATIONAL INCORPORATED, FIRST FINANCIAL BANK, and FIRST DATA MERCHANT SERVICES CORPORATION,<br><br>Defendants. | Civ. A. No. 04-347-T (ECT) |

**DEFENDANT MASTERCARD INTERNATIONAL INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTIONS TO THE HONORABLE LINCOLN D. ALMOND'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ........ 1

II. THE PLEADINGS ........ 2

III. DESCRIPTION OF THE MOTION ........ 3

IV. FACTS AND PROCEDURAL HISTORY ........ 4

- A. The MasterCard Payment Card System ........ 4
- B. Chargebacks ........ 5
- C. Procedural History ........ 7

V. ISSUES ........ 7

VI. POINTS AND AUTHORITIES ........ 8

- A. The Standard Governing These Objections ........ 8
- B. Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Breach Of Contract Claim Against MasterCard ........ 9
- C. Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Claim Against MasterCard For Tortious Interference With PSW's Contracts With Its Website Clients ........ 13
- D. Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Claim Against MasterCard For Tortious Interference With The Merchant Agreement Between PSW And FFB ........ 14

VII. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alternative Energy, Inc. v. St. Paul Fire & Marine Insurance Co.*, 267 F.3d 30 (1st Cir. 2001) .......... 4, 5

*Cox v. Hainey*, 391 F.3d 25 (1st Cir. 2004) .......... 8

*DM Research Inc. v. College of American Pathologists*, 2 F. Supp. 2d 226 (D.R.I. 1998), *aff'd*, 170 F.3d 53 (1st Cir. 1999) .......... 8

*Demars v. General Dynamics Corp.*, 779 F.2d 95 (1st Cir. 1985) .......... 4

*Ferrostaal Inc. v. M/V Sea Baisen*, 02 Civ. 1900 (RJH), 2004 WL 2734745 (S.D.N.Y. Nov. 24, 2004) .......... 10

*FTC v. Crescent Publishing Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) .......... 6

*FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) .......... 6

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004) .......... 4

*Greene v. Rhode Island*, 289 F. Supp. 2d 5 (D.R.I. 2003) .......... 4

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) .......... 4

*Maung Ng We v. Merrill Lynch & Co.*, 99 Civ. 9687 (CSH), 2000 WL 1159835 (S.D.N.Y. August 15, 2000) .......... 10

*National Bancard Corp. v. Visa U.S.A., Inc.*, 596 F. Supp. 1231 (S.D. Fla. 1984), *aff'd*, 779 F.2d 592 (11th Cir. 1986) .......... 4

*National Bancard Corp. v. Visa U.S.A., Inc.*, 779 F.2d 592 (11th Cir. 1986) .......... 4

*Papasan v. Allain*, 478 U.S. 265 (1986) .......... 8

*Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988) .......... 8

*Russell v. Enterprise Rent-A-Car Co.*, 160 F. Supp. 2d 239 (D.R.I. 2001) .......... 10

*Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1 (1st Cir. 1998) .......... 8

*Solar Travel Corp. v. Nachtomi*, No. 00 Civ. 3564 (AGS), 2001 U.S. Dist. LEXIS 7549 (S.D.N.Y. June 8, 2001) .......... 13

*United States v. Visa*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd* 344 F.3d 229 (2d Cir. 2003) .......... 5

*Walsh v. Maryland Bank, N.A.*, 806 F. Supp. 437 (S.D.N.Y. 1992) .......... 11

*Yucyco Ltd. v. Republic of Slovenia*, 984 F. Supp. 209 (S.D.N.Y. 1997) .......... 9

**STATE CASES**

*Belliveau Building Corp. v. O'Coin*, 763 A.2d 622 (R.I. 2000) .......... 14, 15

*Emery v. Visa International Svc. Association*, 95 Cal. App. 4th 952 (2002) .......... 11

*Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660 (R.I. 1998) .......... 11

*Huntington Pennysaver, Inc. v. Tire Supply Corp. of Long Island*, 298 N.Y.S.2d 824 (N.Y. Dist. Ct. Suffolk Cty. 1969) .......... 12

*Industrial Manufacturers, Inc. v. Bangor Mills, Inc.*, 283 A.D. 113 (N.Y. App. Div. 1953) .......... 12

*Lawrence v. Anheuser-Busch*, 523 A.2d 864 (R.I. 1987) .......... 10

*Lexow & Jenkins v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25 (N.Y. App. Div. 1986) .......... 10

*Meese v. Miller*, 79 A.D.2d 237 (N.Y. App. Div. 1981) .......... 10

*Mesolella v. City of Providence*, 508 A.2d 661 (R.I. 1986) .......... 13, 14, 15

*Meyer v. Goldman Sachs & Co.*, 234 A.D.2d 129 (N.Y. App. Div. 1996) .......... 10

*Parking Co. L.P. v. Rhode Island Airport Corp.*, Civ. A. P.B. 2004-4189, 2005 WL 419827 (R.I. Super. Ct. Feb. 18, 2005) .......... 13, 14, 15

*Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 156 A.D.2d 550 (N.Y. App. Div. 1989) .......... 9

*Renel Construction Inc. v. Brooklyn Cooperative Meat Distributing Center*, 59 A.D.2d 391 (N.Y. App. Div. 1977), *aff'd sub nom. Depot Constr. Co. v. City of New York*, 46 N.Y. 2d 859 (1979) .......... 12

*Sanders v. Gold Key Lease*, Index No. 129275/95, 1997 N.Y. Misc. LEXIS 627 (Sup. Ct. N.Y. Cty. April 8, 1997) .......... 11

*Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901 (R.I. 2002) .......... 15

*W. Mass. Blasting Corp. v. Metropolitan Prop. & Casualty Insurance Co.*, 783 A.2d 398 (R.I. 2001) .......... 13, 14

**FEDERAL STATUTES**

15 U.S.C. §§ 1, 2 .......... 2

15 U.S.C. § 45 .......... 7

28 U.S.C. § 636(b)(1)(B) .......... 7, 8

**STATE STATUTE**

Rhode Island Anti-Trust Act, R.I.G.L. § 6-36-5 .......... 2

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) .......... 4, 5, 7, 8, 9, 10

Fed. R. Civ. P. 72(b) .......... 1

**CONSENT ORDER**

*Citicorp Credit Services, Inc.*, 116 F.T.C. 87 (1993) .......... 7

**SECONDARY SOURCES**

*Taxpayer Beware: Schemes, Scams and Cons: Hearing Before the Comm. On Finance United States Senate*, 107th Cong. 31-33 (2001) .......... 6

Pursuant to Fed. R. Civ. P. 72(b) and DRI LR 72(d), Defendant MasterCard International Incorporated ("MasterCard") respectfully submits this memorandum of law in support of its Objections to the Honorable Lincoln D. Almond's Report and Recommendation ("Report").

## I. PRELIMINARY STATEMENT

After defendants had filed motions to dismiss the original complaint, and a pre-motion conference with the Court at which defects in the original complaint were detailed, plaintiff PSW, Inc. ("PSW") filed a First Amended Complaint ("FAC") on April 6, 2005. In its revised pleading, PSW continued to assert the same federal and state antitrust claims and common law claims that it had asserted in the original complaint (except that it withdrew its claim under the Robinson-Patman Act), and added a claim under the First Amendment. Each of the defendants moved to dismiss the FAC, and these motions were referred to Magistrate Judge Lincoln D. Almond ("Magistrate Judge Almond") for a report and recommendation.

In his Report, Magistrate Judge Almond correctly recommended dismissal of eight of PSW's eleven claims, including all of the antitrust claims, the First Amendment claim, and the claims for breach of the covenant of good faith and fair dealing, tortious interference with prospective economic advantage, conversion, and embezzlement. MasterCard requests that the Court to adopt the Report's recommendations with respect to these claims.

MasterCard, however, respectfully objects to the Report's recommendations that the Court should deny MasterCard's motion to dismiss as to PSW's remaining common law claims. Specifically, the Report recommended that the Court hold that:

(1) PSW has sufficiently alleged a claim against MasterCard for breach of PSW's contract with First Financial Bank ("FFB") (Report at 24-25);

(2) PSW has sufficiently alleged a claim that MasterCard has tortiously interfered with PSW's contracts with its website clients (Report at 27); and

(3) PSW has sufficiently alleged a claim that MasterCard has tortiously interfered with PSW's contract with FFB (Report at 28).

As shown below and in its moving papers, dismissal of these three claims as to MasterCard is appropriate.

First, while PSW makes conclusory assertions that MasterCard and PSW are in privity by virtue of an alleged principal-agent relationship between MasterCard and FFB, it has failed to state, as it must, both *facts* showing such a "principal-agent" relationship, and facts showing any intent that MasterCard should be bound to the contract between PSW and FFB as a result of that relationship. Thus, it has failed to state a claim that MasterCard has breached that contract.

Second, PSW has failed to plead facts showing (1) an intentional act of interference by MasterCard with PSW's purported contracts with its website clients or with FFB, (2) that any such act was unjustified, or (3) that any such act caused harm to PSW. As a result, PSW's tortious interference claims against MasterCard also should be dismissed.

Thus, the Court should dismiss the entire FAC as to MasterCard with prejudice.

## II. <u>THE PLEADINGS</u>

As best as can be discerned, the FAC claims:

- In Counts One through Three, that the programs and policies adopted by MasterCard and Visa to combat excessive fraudulent transactions constituted violations of § 1 and § 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as well as the Rhode Island Anti-Trust Act, R.I.G.L. § 6-36-5. FAC ¶¶ 155-164.
    - Magistrate Judge Almond recommended dismissal of Counts One through Three of the FAC. Report at 11-22.
- In Count Four, that MasterCard's alleged "screening" of Adult Entertainment Websites, and its purported denial of "access to network services [to PSW]" for

websites that MasterCard assertedly deems unacceptable, violated PSW's rights under the First Amendment to the United States Constitution. FAC ¶¶ 165-172.

- Magistrate Judge Almond recommended dismissal of Count Four of the FAC. Report at 22-23.

- In Count Five, that MasterCard breached the contract between FFB and PSW (the "Merchant Agreement"). FAC ¶¶ 173-175.

  - Despite having "serious doubts as to the ultimate merits of this Count" as against MasterCard, Magistrate Judge Almond recommended that Count Five of the FAC not be dismissed. Report at 23-25.

- In Count Six, that MasterCard's breached the covenant of good faith and fair dealing in regard to the Merchant Agreement. FAC ¶ 176.

  - Magistrate Judge Almond recommended dismissal of Count Six of the FAC. Report at 25-27.

- In Counts Seven through Nine, that MasterCard tortiously interfered with PSW's alleged contracts with website clients, with the Merchant Agreement, and with prospective clients. FAC ¶¶ 187-89.

  - Magistrate Judge Almond recommended that Count Seven of the FAC (relating to PSW's website clients) not be dismissed as to MasterCard. Report at 28-29. Magistrate Judge Almond recommended that Count Eight of the FAC (relating to the Merchant Agreement) not be dismissed as to MasterCard if MasterCard is deemed not to be in privity with PSW. Report at 29. Magistrate Judge Almond recommended dismissal of Count Nine of the FAC (relating to prospective clients). Report at 29-30.

- In Counts Ten and Eleven, that MasterCard's claimed conduct constituted conversion and embezzlement. FAC ¶¶ 190-191.

  - Magistrate Judge Almond recommended dismissal of Counts Ten and Eleven of the FAC. Report at 30-31.

## III. <u>DESCRIPTION OF THE MOTION</u>

MasterCard's objections to Magistrate Judge Almond's Report relate only to Counts Five, Seven, and Eight. MasterCard submits that adoption of the remainder of the Report is warranted, and respectfully suggests that the FAC be dismissed in its entirety for failure to

state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). At this juncture, this dismissal should be with prejudice. *See Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 8-9 (D. Mass. 2004) (dismissing claim with prejudice where allegations of complaint established that plaintiff could not prove all elements of the claim); *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99-100 (1st Cir. 1985) (affirming denial of leave to amend due to futility of amendment).

## IV. FACTS AND PROCEDURAL HISTORY[1]

### A. The MasterCard Payment Card System

MasterCard is a membership corporation "whose members include more than 20,000 banks." FAC ¶ 4. Its member financial institutions ("member banks") act as "issuers," "acquirers," or both. *Id.* ¶ 13. An "issuer" issues MasterCard-branded payment cards to cardholders. *Id.* An "acquirer" contracts with merchants from which it acquires transactions effected with MasterCard-branded payment cards. *Id.* Through, *inter alia*, its By-Laws and Rules, MasterCard has established contractual relationships with its member banks, including a system of ancillary regulations that are necessary for its payment card system to function smoothly and efficiently. *Cf. Nat'l Bancard Corp. v. Visa U.S.A., Inc.*, 596 F. Supp. 1231, 1252 (S.D. Fla. 1984) ("*NaBanco I*"), *aff'd*, 779 F.2d 592 (11th Cir. 1986) ("*NaBanco II*").

MasterCard typically does not deal directly with cardholders or merchants. Each issuer establishes contractual relationships with its cardholders and determines the terms and conditions of those relationships. *See NaBanco II*, 779 F.2d at 594 ("In a typical four-party

---

[1] The "facts" discussed herein are those alleged in the Amended Complaint, which are deemed accepted as true solely for purposes of this motion to dismiss. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The discussion also includes general background facts about the MasterCard system, that have been found by courts and are consistent with PSW's factual allegations, to assist the Court by placing PSW's allegations in factual context. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Greene v. Rhode Island*, 289 F. Supp. 2d 5, 8 (D.R.I. 2003).

transaction, a consumer is issued a bank credit card by a card-issuing Bank, Bank X."); *United States v. Visa*, 163 F. Supp. 2d 322, 331 (S.D.N.Y. 2001) ("Visa and MasterCard members issue credit, charge, and debit cards with the Visa and MasterCard brands."), *aff'd* 344 F.3d 229 (2d Cir. 2003). Similarly, as plaintiff concedes, it is acquiring banks, not MasterCard, which contract with merchants and establish the terms and conditions of each such relationship. *See* FAC ¶¶ 34-36. In some cases, an "aggregator," such as PSW, acts as an intermediary between the acquirer or its agent and merchants. *Id.* ¶ 18-19.

According to PSW, its website clients require its services because they do not qualify for a merchant account with an acquiring bank or otherwise can not transact directly with an acquiring bank. *Id.* ¶¶ 19, 91. Thus, when a consumer made a purchase from one of its website clients, PSW accepted the MasterCard-branded card from the consumer. It then interfaced with its acquiring bank FFB (through its agent, FDMS), which, in turn, submitted the transactions to the MasterCard payment system. *Id.* ¶¶ 18-21.

PSW entered into the Merchant Agreement with FFB to participate in the MasterCard payment system. *See* FAC ¶¶ 34-36. The Merchant Agreement established the terms and conditions of the relationship between FFB and PSW. *Id.* ¶¶ 36-37. MasterCard is not a party to that contract. *Id.* ¶ 34.[2]

B. **Chargebacks**

The FAC attacks, *inter alia*, MasterCard's rules and regulations regarding the treatment of excessive chargeback activity experienced by an acquiring bank. *See* FAC ¶¶ 51-

---

[2] *See also* Exhibit A to Memorandum in Support of Defendants First Financial Bank and First Data Management Services Corporation's Motion To Dismiss The First Amended Complaint (PSW-FFB Merchant Agreement), appended hereto as Ex. A. In the Rule 12(b)(6) context, a court may consider "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint." *Alternative Energy,* 267 F.3d at 33.

58, 85-91. Chargebacks typically occur when a cardholder disputes a charge (*e.g.*, as unauthorized) with its issuing bank, and the issuing bank "charges back" the disputed amount to the acquirer. *See, e.g.*, FAC ¶¶ 51-52. In connection with a chargeback transaction involving one of PSW's website clients, after the acquirer (FFB) reimburses the cardholder's issuer for a disputed amount, the acquirer recovers that amount from PSW. *See id.* ¶¶ 52, 70.

A merchant may challenge a chargeback by providing information sufficient to verify the validity of the transaction. *See id.* ¶ 55. However, when a cardholder makes a purchase over the Internet or by telephone, there is no signed paper receipt, and there may not be anything tangible that was to be delivered to the consumer (*e.g.*, when a consumer purchases the ability to view "adult" content on the Internet). *See id.* ¶¶ 20, 56. PSW alleges that it is therefore more difficult for Internet businesses to dispute a chargeback than it is for a "brick and mortar" business. *See id.* ¶¶ 54-58.

A substantial portion of PSW's website clients deliver "digital content for the 'Internet Adult Entertainment Industry.'" FAC ¶¶ 17-20. PSW acknowledges that this industry is prone to fraudulent business practices, that its business therefore involves a high risk of fraudulent transactions, and that it is "powerless to prevent" such "unavoidable" fraud. *Id.* ¶¶ 59-60, 67, 90-91, 113-114.[3]

Indeed, PSW admits that "card associations such as American Express have chosen not to accept transactions related to the Internet Adult Entertainment industry." *Id.* ¶ 50. In contrast, PSW states that the MasterCard system does accept such transactions, and that

---

[3] *See Taxpayer Beware: Schemes, Scams and Cons: Hearing Before the Comm. On Finance United States Senate,* 107th Cong. 31-33, app. at 109, 112 (2001) (statement of Hugh Stevenson, Associate Director of the FTC Bureau of Consumer Protection identifying unauthorized charges on "Internet Information and Adult Services" as one of the top ten Internet scams); *FTC v. Crescent Publ'g Group, Inc.,* 129 F. Supp. 2d 311 (S.D.N.Y. 2001); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000).

MasterCard uses the level of chargeback activity as an indicator of potential fraudulent activity. *See id.* ¶ 65. It is notable in this regard that the FTC, the principal federal agency charged with policing unfair and/or deceptive practices (*see* 15 U.S.C. § 45 *et seq.*), has indicated its view that excessive levels of chargebacks are a valid indicator of potential fraud, and recommended monitoring merchants' levels of chargeback activity for that purpose. *See, e.g., Citicorp Credit Servs., Inc.* 116 F.T.C. 87, 92 (1993) (consent order).

PSW also concedes that MasterCard, in an effort to reduce the risk of fraud inherent in internet and other non face-to-face transactions, has adopted procedures, applicable to acquiring banks, to address perceived excessive chargeback activity. FAC ¶¶ 46, 54-55, 64, 68. PSW complains, however, that these procedures adversely impact its chosen business model. *Id.* ¶¶ 87-91, 94.

C. **Procedural History**

PSW filed its original Complaint against Defendants on August 16, 2004. *See* Report at 5. On April 16, 2005, PSW filed its First Amended Complaint ("FAC"). As noted by Judge Almond, PSW made very few substantive changes in the factual allegations and legal theories from the Complaint to the FAC. *See id.* at 6. On May 20, 2005, Defendants moved to dismiss all claims in the FAC pursuant to Fed. R. Civ. P. 12(b)(6). On August 18, 2005, the motions were referred to Magistrate Judge Almond for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and DRI LR 72(a). Magistrate Judge Almond held a hearing on November 2, 2005, and, on February 3, 2006, filed his Report.

## V. <u>ISSUES</u>

1. Whether Magistrate Judge Almond erred in recommending that PSW has adequately alleged that MasterCard, a nonsignatory, has breached PSW's Merchant Agreement with FFB.

2. Whether Magistrate Judge Almond erred in recommending that PSW has adequately alleged a claim against MasterCard for tortious interference with PSW's contracts with its website clients.
3. Whether Magistrate Judge Almond erred in recommending that PSW has adequately alleged a claim against MasterCard for tortious interference with PSW's Merchant Agreement with FFB.

## VI. POINTS AND AUTHORITIES

### A. The Standard Governing These Objections

The Court reviews *de novo* objections to a Magistrate Judge's report and recommendation regarding a matter referred pursuant to 28 U.S.C. § 636(b)(1)(B). *Cox v. Hainey*, 391 F.3d 25, 28 (1st Cir. 2004). The scope of review is limited to matters presented to the Magistrate Judge and raised by the parties' objections. *See Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998); *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Since MasterCard's objections relate to its motion to dismiss, the substantive standard of review is that under Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) is warranted if the FAC lacks a cognizable legal theory or alleges insufficient facts to support such a theory. *DM Research Inc. v. College of American Pathologists*, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) (Torres, J.), *aff'd*, 170 F.3d 53 (1st Cir. 1999). Although in deciding a motion to dismiss, a court shall take the complaint's well-pled factual allegations as true, viewing them in the light most favorable to the non-moving party "[b]ald assertions, subjective characterizations and legal conclusions" are insufficient to withstand dismissal. *Id.*; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."). PSW's FAC fails this test.

### B. Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Breach Of Contract Claim Against MasterCard

Count Five of the FAC claims that all of the defendants breached the Merchant Agreement between PSW and FFB. However, PSW concedes that MasterCard is not a party to that agreement. FAC ¶ 34; *see also* Ex. A (Merchant Agreement). In his Report, Magistrate Judge Almond stated that, under New York law,[4] a breach of contract claim may be stated against a non-signatory only if it has "assumed or been assigned" the contract. *See* Report at 25 (citing *Yucyco Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215-16 (S.D.N.Y. 1997), *Perma Pave Contracting Corp. v. Paerdegat Boat & Racquet Club, Inc.*, 156 A.D.2d 550, 551 (N.Y. App. Div. 1989)).

The FAC states no facts showing that the Merchant Agreement was either assigned to or assumed by MasterCard. Magistrate Judge Almond suggested, however, that the "requisite privity" could also be established by a principal-agent relationship between FFB/FDMS and MasterCard (Report at 24-25), and recommended against dismissal of this Count solely on the basis of the allegations in paragraph 32 of the FAC, which state:

> In light of the nature of the relationship between the Defendants, along with the facts alleged in the Complaint generally, each of the Defendants herein are liable for the relevant acts and/or omissions of the other [sic], including but not limited to those expressly alleged herein, as either principal, agent, and/or co-venturer or co-conspirator.

However, to adequately allege an agency relationship for purposes of Rule 12(b)(6), plaintiff cannot simply rely on such legal conclusions. Indeed, elsewhere in his Report,

---

[4] The Merchant Agreement states that it shall be governed and construed under New York law (*see* Report at 23), and PSW argued in its papers before Judge Almond that whether a non-signatory such as MasterCard could be named as a defendant in a breach of contract action was a question of New York law. *See* Plaintiff's Combined Memorandum Of Law In Opposition To Visa U.S.A. Inc.'s, MasterCard International Incorporated's, First Financial Bank's, And First Data Merchant Services Corporation's Motions To Dismiss The First Amended Complaint, at 22 n. 57.

Magistrate Judge Almond recognized that FAC ¶ 32 "*alleges in a conclusory fashion* that each Defendant is liable for the acts and/or omissions of others." Report at 6 (emphasis added).

Rather, plaintiff must allege *facts* sufficient to show such agency -- *i.e.*, that the alleged principal manifested that the alleged agent act for it and subject to its control, that the latter accepted the undertaking, and that the parties to the alleged agency relationship agreed that the alleged principal would retain control. *See Russell v. Enterprise Rent-A-Car Co.*, 160 F. Supp. 2d 239, 252 (D.R.I. 2001) (setting out pleading requirements for an agency relationship under Rhode Island law); *accord Lawrence v. Anheuser-Busch*, 523 A.2d 864, 867 (R.I. 1987); *see also Meese v. Miller*, 79 A.D.2d 237, 241 (N.Y. App. Div. 1981) (same under New York law). As another District Court has stressed: "The burden is on the party alleging the existence of a principal-agent relationship to assert facts sufficient to withstand a motion to dismiss based on the agency relationship." *Ferrostaal Inc. v. M/V Sea Baisen*, 02 Civ. 1900 (RJH), 2004 WL 2734745, at *6 (S.D.N.Y. November 24, 2004).

Thus, in *Maung Ng We v. Merrill Lynch & Co.*, 99 Civ. 9687 (CSH), 2000 WL 1159835, at *5 (S.D.N.Y. August 15, 2000), in which the court rejected in the Rule 12(b)(6) context conclusory allegations of agency similar to those made by PSW here:

> [P]laintiffs' conclusory statements … do not allege an agency relationship sufficient to withstand dismissal under this standard. Plaintiffs must do more than state the legal conclusion that MLIB was the defendants' agent, it must plead facts that support a finding that such agency existed.

*See also Meyer v. Goldman Sachs & Co.*, 234 A.D.2d 129, 130 (N.Y. App. Div. 1996) (granting motion to dismiss where plaintiffs "failed to allege sufficient facts evincing that they had a relationship substantially approaching privity with defendant" and "failed to allege sufficient facts with respect to the existence of a principal and agent relationship"); *Lexow & Jenkins v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 26 (N.Y. App. Div. 1986) (granting motion to

dismiss; plaintiff cannot bring warranty action against manufacturer without privity of contract: "'[The] acts of a person assuming to be the representative of another are not competent to prove the agency in the absence of evidence tending to show the principal's knowledge of such acts or assent to them.'") (citations omitted); *Sanders v. Gold Key Lease*, Index No. 129275/95, 1997 N.Y. Misc. LEXIS 627 (Sup. Ct. N.Y. Cty. April 8, 1997) (granting motion to dismiss where "[n]o words or conduct was [pled] which manifested that the Chrysler defendants were willing for Gold Key to act as its agent, subject to its control, and that the latter consented so to act.").

Equally insufficient to support this claim is PSW's allegation that FFB, "as a member bank of MasterCard ... was therefore both a principal and an agent of [MasterCard]." FAC ¶ 24. Even apart from the implausible notion that entities could simultaneously be both principal and agent of each other, mere membership in a membership corporation is insufficient as a matter of law to plead an agency relationship, *viz.*, that MasterCard had manifested that FFB act for it and subject to its control, and that FFB had accepted the undertaking. *See, e.g.*, *Emery v. Visa Int'l Svc. Assn.*, 95 Cal. App. 4th 952, 960 (2002) (finding no agency relationship between card network and banks: "while [the network] does contract with member financial institutions, plaintiff points to no provision establishing an agency relationship. ... [The network] merely makes available a payment system to member financial institutions."); *Walsh v. Maryland Bank, N.A.*, 806 F. Supp. 437, 441-42 (S.D.N.Y. 1992) (holding that although "Maryland Bank and MasterCard International may have a licensing agreement," an agency relationship is not created thereby). Nor does the purported incorporation of the MasterCard rules into the Merchant Agreement (*see* FAC ¶ 28) establish the requisite relationship to create privity. *See Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660, 662 (R.I. 1998)

(incorporation of the terms of one contract into another does not create contractual duties between the non-contracting parties).

Furthermore, even if PSW had alleged facts sufficient to show a principal-agent relationship between MasterCard and FFB (which it has not), such a relationship would not, without more, subject MasterCard to a contract claim based on the conduct of its alleged agent. Rather, PSW must also allege facts showing that the claimed agency relationship bound MasterCard to the Merchant Agreement for the acts of FFB. *See Renel Constr. Inc. v. Brooklyn Cooperative Meat Distrib. Center*, 59 A.D.2d 391, 394 (N.Y. App. Div. 1977) (granting motion to dismiss contract claims; existence of agency relationship alone does not allow plaintiff to enforce the contract with the agent against the principal as if the contract were with the principal), *aff'd sub nom. Depot Constr. Co. v. City of New York*, 46 N.Y. 2d 859 (1979); *see also Huntington Pennysaver, Inc. v. Tire Supply Corp. of Long Island*, 298 N.Y.S.2d 824, 826 (N.Y. Dist. Ct. Suffolk Cty. 1969) ("if an agent…makes an authorized contract with a third party, the liability of the principal thereof *depends on the agreement* between the agent and the other party to the transaction") (citing Restatement of the Law of Agency 2d, §146) (emphasis added).[5] PSW's FAC contains no factual allegations sufficient to satisfy this requirement either.

Thus, the Court should dismiss PSW's breach of contract claim (Count Five) as to MasterCard.

---

[5] The Report cited two cases to assert that "an allegation that a principal agent relationship exists is sufficient to establish 'the requisite privity for [a] cause of action to survive the motion to dismiss.'" (Report at 25). However, in both of these cases the courts declined to hold the principals liable for the acts of their agents. *See Huntington Pennysaver*, 298 N.Y.S.2d at 829; *Indus. Mfrs., Inc. v. Bangor Mills, Inc.*, 283 A.D 113, 118 (N.Y. App. Div. 1953).

### C. Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Claim Against MasterCard For Tortious Interference With PSW's Contracts With Its Website Clients

As noted by Magistrate Judge Almond, to state a claim for tortious interference with contract, a plaintiff must allege facts showing "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *See* Report at 28, citing, *inter alia, Mesolella v. City of Providence*, 508 A.2d 661, 669 (R.I. 1986). Magistrate Judge Almond recommended that PSW has stated a claim for tortious interference by MasterCard with PSW's contracts with its website clients because "PSW has broadly alleged the existence of its contracts with its clients, that the Defendants were aware of those contracts, that they intentionally interfered and that their interference caused harm to Plaintiff, which suffered damages." *Id.*

However, PSW's allegations are simply conclusory assertions of tortious conduct. To properly state a tortious interference claim, a plaintiff must, *inter alia*, state *facts* "suggesting that [a defendant] acted with the intent to interfere with [a] contractual relationship" and thereby caused injury; mere allegations that the plaintiff was harmed by a defendant's actions simply do not suffice. *See W. Mass. Blasting Corp. v. Metro. Prop. & Cas. Ins. Co.*, 783 A.2d 398, 402 (R.I. 2001) (affirming dismissal under summary judgment standards; complaint failed to state *prima facie* case for tortious interference where it failed to allege facts showing intent to interfere). Plaintiff must allege specific contracts with which the defendant intentionally interfered. *See Solar Travel Corp. v. Nachtomi*, No. 00 Civ. 3564 (AGS), 2001 U.S. Dist. LEXIS 7549, at *37-*38 (S.D.N.Y. June 8, 2001) (tortious interference claim that does not allege specific contract must be dismissed). Plaintiff also must allege facts showing that defendants acted "without the benefit of any legally recognized privilege or other justification." *Parking*

*Co. L.P. v. Rhode Island Airport Corp.*, No. Civ. A. P.B. 2004-4189, 2005 WL 419827, at *5 (R.I. Super. Ct. Feb. 18, 2005) (citing *Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000)). Additionally, the interference alleged must be "improper." *See Mesolella*, 508 A.2d at 669 (citation omitted).

PSW does not allege any facts supporting any intentional act of interference by MasterCard directed at PSW's alleged (and not specifically identified) contracts with its website clients. PSW's few allegations regarding alleged interference with its contracts with its website clients concern only claimed conduct by others. *See* FAC ¶¶ 113-139. Indeed, Magistrate Judge Almond recognized the absence of such allegations regarding MasterCard by not specifically attributing *any* conduct to MasterCard in discussing the events that allegedly led to PSW's purported "business difficulties." *See* Report at 4-5.

Therefore, Count Seven should be dismissed as to MasterCard because PSW has not pled facts showing intentional interference by MasterCard with PSW's alleged contracts with its website clients, much less that such an act was unjustified or caused PSW injury.

D. **Magistrate Judge Almond Erred In His Recommendation That PSW Has Stated A Claim Against MasterCard For Tortious Interference With The Merchant Agreement Between PSW And FFB**

Count Eight of the FAC claims that MasterCard tortiously interfered with the FFB-PSW Merchant Agreement.[6] Again, to state such a tortious interference claim, PSW is required to allege, *inter alia,* facts "suggesting that [MasterCard] acted with the intent to interfere with [this] contractual relationship" (*W. Mass. Blasting*, 783 A.2d at 402), as well as facts showing that MasterCard acted "without the benefit of any legally recognized privilege or other

---

[6] Magistrate Judge Almond stated that this claim can only survive dismissal if MasterCard is "ultimately deemed to not be in privity of contract with PSW" and Count Five (for alleged breach of the Merchant Agreement) is therefore dismissed. *See* Report at 29.

justification." *Parking Co.*, *supra*, 2005 WL 419827, at *5; *see also Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 906-07 (R.I. 2002) (plaintiff was required to allege facts showing "an intent to do harm without justification"). As noted above, the interference alleged also must be "improper." *See Mesolella*, 508 A.2d at 669 (citation omitted).

The only conduct by MasterCard alleged by PSW in support of this claim is MasterCard's alleged exercise as to FFB of its contractual rights under its Rules, rights that are generally applicable as to all of its member acquiring banks. *See, e.g.,* FAC ¶¶ 37, 92. PSW does not allege any facts showing that MasterCard singled out PSW's acquiring bank (FFB) for enforcement of these rules, with the intent to interfere with their Merchant Agreement or otherwise. The alleged exercise of MasterCard's contractual rights as to FFB therefore cannot support a claim of tortious interference. *See Belliveau*, 763 A.2d at 627 (reversing trial court decision and holding that the trial judge was "clearly wrong" to hold that "the exercise of a contractual right can constitute tortious interference.")

Moreover, the FAC contains no factual allegations that even arguably show that MasterCard's alleged enforcement of its rules was not justified. In fact, PSW concedes the opposite: that PSW was aware that its business model created a risk of excessive chargeback activity and fraud (FAC ¶¶ 59, 113), and that MasterCard's rules were designed to reduce fraud in the MasterCard payment system to the benefit of consumers, merchants, and banks alike. FAC ¶ 68 (MasterCard has "implemented a variety of enforcement procedures for the … purpose of coercing [High Risk] merchants to take steps to reduce the level of … 'fraud' occurring in transactions processed through such merchants"); *see also id.* ¶¶ 60, 65, 89. Indeed, Magistrate Judge Almond noted that PSW admits that MasterCard has deemed Internet fraud "a serious

dilemma," and further concedes that PSW itself is "powerless to prevent" such "unavoidable" fraud involved in transactions with its website clients. Report at 3 n.1.

PSW therefore has failed adequately to allege a claim of tortious interference by MasterCard with its Merchant Agreement with FFB.

## VII. CONCLUSION

The Court should adopt the Report with respect to Counts One, Two, Three, Four, Six, Nine, Ten and Eleven of the First Amended Complaint. The Court should not adopt the Report with respect to Counts Five, Seven, and Eight of the First Amended Complaint, but, instead, should dismiss those claims as well. Thus, the Court should dismiss the First Amended Complaint in its entirety as to MasterCard, and should do so with prejudice.

Dated: February 17, 2006

Respectfully submitted,

Joseph V. Cavanagh Jr. (mcd)

JOSEPH V. CAVANAGH, JR. (#1139)
STACI L. KOLB (#5451)
MARY C. DUNN (#6712)
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903

JAY N. FASTOW *(pro hac vice)*
BRUCE A. COLBATH *(pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

ATTORNEYS FOR DEFENDANT
MASTERCARD INTERNATIONAL
INCORPORATED