**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, INC., d/b/a/ PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A. INC., MASTERCARD INTERNATIONAL, INC., FIRST FINANCIAL BANK AND FIRST DATA MERCHANT SERVICES CORP.,<br><br>Defendants. | Case No. 1:04cv347(ECT)<br><br>**ORAL ARGUMENT REQUESTED** |

**VISA U.S.A. INC.'S**
**LIMITED OBJECTION TO**
**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant Visa U.S.A. Inc. ("Visa") respectfully objects to the Report and Recommendation of the Magistrate Judge solely with respect to the denial of Visa's Motion to Dismiss Counts 5, 7, and 8. In support of this Objection, Visa relies on the accompanying Memorandum of Law.

Respectfully submitted,

Patricia A. Sullivan #2120
EDWARDS ANGELL PALMER & DODGE, LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 274-9200
Facsimile: (888) 325-9067

*Attorney for Defendant Visa U.S.A., Inc.*

OF COUNSEL:

Daniel H. Bookin
Randall W. Edwards
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Richard G. Parker
Jonathan D. Hacker
Matthew R. Cosgrove
Nikhil M. Shanbhag
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendant Visa U.S.A., Inc.*

DATED: February 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2006, a true and correct copy of *Visa U.S.A., Inc.'s Limited Objection to Report and Recommendation of the Magistrate Judge* was sent via facsimile and first-class mail, postage prepaid to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707

David Paul Steiner, Esq.
David Steiner & Associates
1925 Century Park East, Suite 2350
Los Angeles, CA 90067

Jay Fastow, Esq.
Bruce Colbath, Esq.
Denise Plunkett, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Brian Wallach, Esq.
Howrey Simon Arnold & White
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Joseph V. Cavanagh, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765

John A. Tarantino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan, P.C.
2300 Financial Plaza
Providence, RI 02903

Patricia A. Sullivan #2120
*Attorney for Defendant Visa U.S.A., Inc.*



PRV_787921_1/PSULLIVAN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| PSW, INC., d/b/a/ PSW BILLING,<br><br>Plaintiff,<br><br>v.<br><br>VISA U.S.A. INC., MASTERCARD INTERNATIONAL, INC., FIRST FINANCIAL BANK AND FIRST DATA MERCHANT SERVICES CORP.,<br><br>Defendants. | Case No. 1:04 cv 347 (ECT)<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM IN SUPPORT OF VISA U.S.A. INC.'S LIMITED OBJECTION TO REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE


OF COUNSEL:
Randall W. Edwards
Nikhil M. Shanbhag
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Richard G. Parker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Daniel H. Bookin
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Patricia A. Sullivan (#2120)
EDWARDS ANGELL PALMER
& DODGE, LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 274-9200
Facsimile: (888) 325-9067

*Attorneys for Defendant Visa U.S.A. Inc.*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....... 1

II. PLEADINGS ....... 2

III. DESCRIPTION OF MOTION ....... 2

IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....... 3

A. The Visa Network System ....... 3

B. A Typical Visa Transaction ....... 5

C. Internet Transaction Fraud and "Chargebacks" ....... 6

D. Procedural History ....... 8

V. ISSUES ....... 9

VI. POINTS AND AUTHORITIES ....... 10

A. PSW Failed to State a Breach of Contract Claim ....... 10

1. Under Governing Federal Pleading Rules, PSW Failed to Make the Required Factual Allegations to Establish Any Claim of Agency ....... 11

2. Even If New York Pleading Standards Apply, They Do Not Permit Conclusory Allegations of Agency ....... 13

B. PSW Failed to State a Claim for Tortious Interference with Contract ....... 14

VII. CONCLUSION ....... 16

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Title Ins. Co. v. East W. Fin.*,
16 F.3d 449 (1st Cir. 1994) ..... 12

*Andresen v. Diorio*,
349 F.3d 8 (1st Cir. 2003) ..... 11

*Belliveau Bldg. Corp. v. O'Coin*,
763 A.2d 622 (R.I. 2000) ..... 15, 16

*Bomar Resources, Inc. v. Sierra Rutile Ltd.*,
No. 90 Civ. 3773 (JFK), 1991 U.S. Dist. LEXIS 396 (S.D.N.Y. Jan. 15, 1991) ..... 16

*Carruthers v. Flaum*,
365 F. Supp. 2d 448 (S.D.N.Y 2005) ..... 13

*Cassimatis v. Marchesini*,
274 A.D. 1002 (N.Y. App. Div., 2d Dept. 1948) ..... 13

*Cox v. Hainey*,
391 F.3d 25 (1st Cir. 2004) ..... 10

*Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*,
791 N.Y.S.2d 298 (N.Y. Sup. Ct. 2004) ..... 12

*DM Research, Inc. v. College of Am. Pathologists*,
2 F. Supp. 2d 226 (D.R.I. 1998), *aff'd*, 170 F.3d 53 (1st Cir. 1999) ..... 10, 11

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) ..... 12

*Ferguson v. Marshall Contractors, Inc.*,
707 A.2d 660 (R.I. 1998) ..... 12

*Ferrostaal, Inc. v. M/V Sea Baisen*,
No. 02 Civ. 1900 (RJH) (DCF), 2004 WL 2734745 (S.D.N.Y. Nov. 30, 2004) ..... 12

*Huntington Pennysaver, Inc. v. Tire Supply Corp. of Long Island*,
298 N.Y.S.2d 824 (Dist. Ct. Suffolk County 1969) ..... 13

*In re Citicorp Credit Servs., Inc.*,
116 F.T.C. 87 (1993) ..... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Lawrence v. Anheuser-Busch, Inc.*,
523 A.2d 864 (R.I. 1987) ........ 12

*Massengale v. Transitron Elec. Corp.*,
385 F.2d 83 (1st Cir. 1967) ........ 12

*Mayer v. Gary Partners, Inc.*,
29 F.3d 330 (7th Cir. 1994) ........ 11

*Mesolella v. City of Providence*,
508 A.2d 661 (R.I. 1986) ........ 15

*Mort. Guarantee & Title Co. v. Commonwealth Mort. Co.*,
730 F. Supp. 469 (D.R.I. 1990) ........ 15

*Nat'l Bancard Corp. v. Visa U.S.A. Inc.*,
596 F. Supp. 1231 (S.D. Fla. 1984) ........ 4, 5

*Nat'l Bancard Corp. v. Visa U.S.A. Inc.*,
779 F.2d 592 (11th Cir. 1986) ........ 3, 4, 5, 6

*Reyn's Pasta Bella, LLC v. Visa U.S.A. Inc.*,
259 F. Supp. 2d 992 (N.D. Cal. 2003) ........ 3

*Santiago v. Canon U.S.A., Inc.*,
138 F.3d 1 (1st Cir. 1998) ........ 10

*Schwartz v. Soc'y of N.Y. Hosp.*,
199 A.D.2d 129 (N.Y. App. Div., 1st Dept. 1993) ........ 13

*Servicios Comerciales Andinos, S.A. v. GE Del Caribe*,
145 F.3d 463 (1st Cir. 1998) ........ 11

*Slotnick v. Staviskey*,
560 F.2d 31 (1st Cir. 1977) ........ 11

*Solar Travel Corp. v. Nachtomi*,
No. 00 Civ. 3564 (AGS), 2001 U.S. Dist. LEXIS 7549 (S.D.N.Y. June 8, 2001) ........ 16

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*,
239 F. Supp. 2d 180 (D.R.I. 2003) ........ 15, 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Visa U.S.A. Inc.*,
163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003) ..................... 3, 4, 6

**STATUTES**

15 U.S.C. § 13 ..................... 8

15 U.S.C. §§ 1 & 2 ..................... 2

28 U.S.C. § 636 ..................... 8

R.I. Gen. Laws § 6-36-5 ..................... 2

**OTHER AUTHORITIES**

P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 2103d (2d ed. 2000) ..................... 4

*Taxpayer Beware: Schemes, Scams and Cons: Hearing Before the Comm. on Finance of the United States Senate*, 107th Cong. 31-33, 109, 112 (2001) ..................... 7

**RULES**

D.R.I. Local Rule 72(a) ..................... 9

D.R.I. Local Rule 72(d) ..................... 1

Fed. R. Civ. P. 12(b)(6) ..................... 2, 10, 11

Fed. R. Civ. P. 72(b) ..................... 1, 2

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ..................... 1, 2, 8, 9, 15

## I. PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 72(b) and D.R.I. Local Rule 72(d), Visa U.S.A. Inc. submits a limited objection to Magistrate Judge Almond's Report and Recommendation regarding Visa's motion to dismiss PSW's Amended Complaint. The objection is limited to the recommendation with respect to Counts 5, 7, and 8.

The Magistrate Judge rightly recommended dismissal of PSW's antitrust claims, as well as PSW's *Bivens* claim under the First Amendment and several of its state-law claims. The Magistrate Judge recognized that, except to add the untenable *Bivens* claim, PSW's Amended Complaint reflected only minor changes to an original complaint that this Court previously had noted was confusing and conclusory. After a detailed examination of the factual allegations made by PSW, the Magistrate Judge concluded that PSW had not alleged facts that, if true, would reveal anticompetitive conduct by Visa. Visa requests that the Court accept the recommendation to dismiss these causes of action.

Visa objects to the recommendation only with respect to the breach of contract or tortious interference claims against it (Counts 5, 7, and 8). Even though the Magistrate Judge recommended denying the motion with respect to those three common-law claims, *see* Rep. & Rec. at 23-25 & 28-29, he expressed considerable skepticism that even those claims ultimately would be viable. For the breach of contract claim, the Magistrate Judge erroneously looked to New York law for the pleading standard and accepted merely conclusory ***legal*** assertions that Visa and co-defendant FFB had a principal-agent relationship – rather than allegations of ***facts*** that would demonstrate such a relationship – such that Visa could be held liable for breach of a contract signed by FFB. With respect to the tortious interference claim, the Magistrate Judge's analysis did not address a key requirement for such a claim under Rhode Island law – that the

alleged interference be improper or wrongful. PSW cannot satisfy this element because of the Magistrate Judge's conclusion that Visa's alleged acts were not anticompetitive or unlawful.

Accordingly, Visa requests the Court to reject the Magistrate Judge's recommendation regarding Counts 5, 7, and 8 and instead to dismiss PSW's Amended Complaint in its entirety.

## II. PLEADINGS

PSW's Amended Complaint alleged that certain Visa rules and practices violate the Sherman Act, 15 U.S.C. §§ 1 & 2, and the Rhode Island Antitrust Law, R.I. Gen. Laws § 6-36-5. PSW also alleged that Visa's enforcement of its rules constituted breach of contract and the implied covenant of good faith and fair dealing, as well as tortious interference with contractual relations and prospective economic advantage, conversion, and embezzlement. PSW also contended that Visa's actions violated restrictions imposed on Government actors by the First Amendment. Visa's moved to dismiss all the causes of action for failure to allege facts sufficient to state a claim. The Magistrate Judge recommended dismissal of all claims against Visa except for the claims for breach of contract and tortious interference with contractual relations.

## III. DESCRIPTION OF MOTION

Pursuant to Federal Rule of Civil Procedure 72(b), Visa makes a limited objection to a portion of the Magistrate Judge's Report and Recommendation regarding Visa's motion to dismiss PSW's Amended Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Specifically, Visa objects to the Magistrate Judge's recommendation to deny Visa's motion with respect to Counts 5, 7, and 8. Visa agrees with the Magistrate Judge's recommendation to dismiss Counts 1-4, 6, and 9-11, and Visa requests the Court to accept the recommendation with respect to those causes of action.

## IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Visa Network System[1]

Visa is a joint venture established by financial institutions (mostly banks) to develop and promote an internationally recognized credit or "payment" card. Visa itself neither issues payment cards to consumers nor contracts with merchants to "accept" Visa cards. Both ends of the transaction are handled by individual Visa members. The Visa network facilitates such transactions by providing its members with a system for approving and processing charges involving millions of merchants and cardholders and thousands of banks every day. Visa has approximately 14,000 members in the United States. Individual banks may issue cards to consumers, or they may "acquire" merchants to accept Visa cards, or they may do both. Am. Compl. ¶ 13; *United States v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 333 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003).

There are two other major general payment card networks: American Express ("Amex") and Discover. In contrast to Visa and MasterCard, Amex and Discover are wholly integrated for-profit enterprises, referred to as "closed loop" systems. *Visa*, 163 F. Supp. 2d at 333. Discover and Amex issue their own cards to consumers and process merchant transactions themselves. *Id.*

The courts uniformly have recognized that the Visa system embodies a classic pro-competitive joint venture: a group of banks have joined together in a limited fashion to offer

---

1 Although PSW's Amended Complaint includes many inaccurate statements and characterizations of Visa's system, for purposes of this motion, the alleged facts are treated as true. The basic operation of Visa's system is also elaborated in numerous published judicial opinions. *See, e.g.*, *Nat'l Bancard Corp. v. Visa U.S.A. Inc.*, 779 F.2d 592, 594-96 (11th Cir. 1986) ("*NaBanco*"); *Reyn's Pasta Bella, LLC v. Visa U.S.A. Inc.*, 259 F. Supp. 2d 992, 996-97 (N.D. Cal. 2003); *United States v. Visa U.S.A. Inc.*, 163 F. Supp. 2d 322, 331-34 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003).

an innovative product that none could offer on its own – bank-issued credit cards that can be used in virtually every consumer transaction in virtually every corner of the world. *See, e.g., id.* at 333-34. At the same time, individual member banks continue to compete with each other in terms of issuing credit cards to consumers, signing up merchants to process payment card transactions, and, of course, in other aspects of their businesses. *Id.* at 332-33. In short, the members of the Visa venture "work together . . . to achieve benefits for themselves they could not provide independently, including globally recognized brands and sophisticated computer networks for processing transactions." *Id.* at 332. That cooperation, in turn, facilitates vigorous competition: "The members of Visa and MasterCard compete with each other on practically every other dimension that directly impacts consumers, including pricing, fees and finance charges, product features and other services for cardholders and merchants." *Id.* at 332-33; *see* P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 2103d, at 38 (2d ed. 2000) (Visa is an "elaborate network-style venture" in which there is "robust competition" among the individual members). The ability of Visa's members to compete with each other, and with Amex, Discover, and members of the MasterCard network, to provide payment card services is made possible by the "plethora of ancillary regulations" that govern membership in the Visa joint venture. *Nat'l Bancard Corp. v. Visa U.S.A. Inc.*, 596 F. Supp. 1231, 1253 (S.D. Fla. 1984); *see Nat'l Bancard Corp. v. Visa U.S.A. Inc.*, 779 F.2d 592, 594-96 (11th Cir. 1986) ("*NaBanco*"), 779 F.2d at 602.

Visa operates on a not-for-profit basis. It does not charge merchants or cardholders fees, but receives funds from members as fees for its network services; any funds it receives in excess of the costs of those services are held for the benefit of merchants such as PSW, in the form of security accounts to pay merchants in the event of a bank default on a payment card transaction. Am. Compl. ¶ 12; *Visa*, 163 F. Supp. 2d at 332.

**B. A Typical Visa Transaction**

The typical payment-card transaction within the Visa network involves at least four entities: (1) a cardholder, who uses a payment card to purchase goods or services; (2) a merchant, which accepts the card as payment for the goods or services; (3) an "acquiring" member bank, which has contracted with the merchant to acquire payment card charges; and (4) an "issuing" member bank, which issued the card to the cardholder. Am. Compl. ¶ 38; *NaBanco*, 779 F.2d at 594. Thus, the merchant does not contract with Visa but with the Visa member bank. Am. Compl. ¶¶ 28, 34. The bank competes with other Visa and MasterCard banks, and with Amex and Discover, for the business of acquiring the merchant's payment-card transactions. As any payment-card user knows from experience, some merchants contract for payment card services with Visa banks, MasterCard banks, Amex and Discover, while others contract with only one or two payment-card service providers and thus only "accept" certain payment cards for purchases.

A typical Visa payment card transaction begins with a purchase of goods or services by a consumer who holds a payment card issued by a member bank (the "issuing" bank). Am. Compl. ¶ 38. The merchant will accept the Visa-branded bank card for payment if the merchant has already contracted with a Visa bank for the bank to "acquire" the merchant's payment card transactions. The merchant submits a request for payment of the card charge to its "acquiring bank." *Id.* The acquiring bank reimburses the merchant the face amount of the charge, minus a small discount (the "merchant discount fee") as part of the price for providing payment card services.[2] *Id.* The acquiring bank then submits, through the Visa system, a request

---

[2] In general, merchants are willing to pay a price for payment card services because such cards allow them to make sales to customers on credit without bearing the risk that the customer will default on the payment; if a cardholder defaults, the issuing bank remains responsible for the cardholder's purchases. *Nat'l Bancard*, 596 F. Supp. at 1260.

for payment on the card charge to the cardholder's issuing bank. The issuing bank reimburses the acquiring bank the face amount of the charge, minus a fee (the "interchange fee") slightly smaller than the merchant discount fee. *Visa*, 163 F. Supp. 2d at 332; *NaBanco*, 779 F.2d at 594. The issuing bank, finally, bills the cardholder and receives payment for the face amount of the charge. Am. Compl. ¶ 38.

As part of its Merchant Agreement contract with the acquiring bank, a merchant must establish a "Merchant Account" with the bank. *Id.* ¶ 36. The merchant deposits card charges to its Merchant Account and receives reimbursements from the acquiring bank for such charges through that account. Because of their relatively small size, many adult entertainment websites handle payment-card transactions through an "aggregator" such as PSW, which essentially combines the charges of numerous Internet merchants and presents a potential acquiring bank with a sufficiently large number of transactions to make the business commercially attractive to the bank. *Id.* ¶¶ 17-19. The aggregator serves as the merchant from the acquiring bank's perspective. *Id.* ¶ 21. PSW's acquiring bank was defendant First Financial Bank ("FFB").

### C. Internet Transaction Fraud and "Chargebacks"

Internet payment-card transactions involve a comparatively high rate of disputed consumer transactions, in part because of the known risk of fraud associated with such transactions. *Id.* ¶¶ 57, 59. Fraud of many types – by merchant, by cardholder, by third party – is a special problem on the Internet because there is no face-to-face transaction and no customer signature. PSW asserts that the most prevalent form of fraud on the Internet is "friendly fraud," which occurs when the cardholder simply denies that he made a charge that appears on his bill. *Id.* ¶ 60. In a traditional "brick and mortar" business, disputes can be resolved by reviewing a signed receipt. *Id.* ¶ 54. Not so for "card not present" transactions, including many Internet transactions. If such a merchant chooses to offer its customers the option of paying on credit,

and the customer later denies the charge, the Internet merchant may have difficulty proving that the customer did, in fact, make the transaction. *Id.* ¶¶ 56, 59. Payment-card transactions conducted by Internet merchants and other "card not present" merchants pose a significantly higher risk of fraud than do transactions conducted by "brick and mortar" merchants. *Id.* ¶ 59; *Taxpayer Beware: Schemes, Scams and Cons: Hearing Before the Comm. on Finance of the United States Senate*, 107th Cong. 31-33, 109, 112 (2001) (statement of Hugh Stevenson, Assoc. Director, Div. of Planning and Information, FTC Bureau of Consumer Protection) (describing high incidence of fraud in Internet adult entertainment industry). PSW acknowledges that disputed transactions impose costs on the Visa system, and that Visa can and should take measures to prevent such costs by reducing the number of disputed transactions. Am. Compl. ¶¶ 59-61.

"Chargebacks" are part of the process Visa has adopted to address disputed transactions. When a cardholder denies a charge and the merchant cannot verify the transaction with a customer signature, the issuing bank may "reverse" the transaction. *Id.* ¶ 51. In accordance with Visa's rules, the acquiring bank reimburses the issuing bank the amount of the transaction (less the interchange fee). The acquiring bank typically compels the merchant to reimburse the bank the amount of the transaction (it is a reimbursement since the acquiring bank already paid the merchant the transaction amount minus discount fee upon approval of the transaction), plus a fixed "fee" for the chargeback, under whatever terms and procedures are set forth in the Merchant Agreement between the acquiring bank and the merchant. *Id.* ¶ 52. Both the reimbursement and the fee are drawn directly from the merchant account. Because both Visa, *id.* ¶ 65, and the U.S. Government (*e.g.*, *In re Citicorp Credit Servs., Inc.*, 116 F.T.C. 87, 92 (1993)) consider the rate of chargebacks a reasonable proxy for the amount of fraud occurring in

a given merchant's transactions, Visa's efforts to mitigate and deter the costs of such fraud step up when a given merchant's chargeback rate increases. When the ratio of chargebacks to sales transactions exceeds a specified threshold, Visa imposes certain fees on the member bank that serves as the merchant's acquiring bank. Am. Compl. ¶ 70. The levels are set to identify only the most extreme problematic merchants: in a given month, only approximately 30-50 merchants out of the 5 million merchants in the Visa system – less than one-hundredth of one percent – experience chargeback problems severe enough to satisfy the excessive chargeback thresholds. PSW alleges that acquiring banks subjected to the fees triggered by such high chargeback levels often pass them on to the merchants involved in accordance with their Merchant Agreements. *Id.* ¶ 70. According to the complaint, Visa's chargeback rules have the effect of encouraging merchants to take steps to reduce the level of fraud, *id.* ¶ 68, thereby reducing the costs such fraud imposes on the system.

**D. Procedural History**

PSW filed its initial Complaint in this action on August 16, 2004. *See* Rep. & Rec. at 5. After this Court made critical comments about the complaint at the February 14, 2005 conference, PSW filed an Amended Complaint on April 16, 2005. But, as the Magistrate Judge recognized, the amendments made very few substantive changes in the factual allegations and legal theories. *See id.* at 6. The original Complaint included a count against all Defendants under the Robinson-Patman Act, 15 U.S.C. § 13, which was voluntarily withdrawn by PSW in favor of a new First Amendment *Bivens* claim against the Defendants – all of whom are private entities. *See id.* at 6-7. The remaining ten counts, however, were alleged in both the original Complaint and the Amended Complaint.

Defendants' motions to dismiss the Amended Complaint were referred to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local

Rule 72(a). After hearing argument on November 2, 2005, the Magistrate Judge filed his Report and Recommendation on February 3, 2006. The Magistrate Judge concluded that PSW had failed to allege facts sufficient to state a cause of action under U.S. or Rhode Island antitrust law (Counts 1-3). He therefore recommended dismissal of those claims, reasoning that, among other things, PSW had not alleged any anticompetitive harm from Visa's alleged conduct. The Magistrate Judge also recommended dismissal of the *Bivens* claim under the First Amendment (Count 4), as well as the state-law claims for breach of the implied covenant of good faith and fair dealing (Count 6), tortious interference with prospective economic advantage (Count 9), conversion (Count 10), and embezzlement (Count 11). Visa requests that the Court accept the recommendation with respect to dismissal of all those claims.

The Magistrate Judge recommended that Visa's motion be denied, however, as to claims for breach of contract (Count 5) and tortious interference with PSW's contractual relations with FFB and with its website clients (Counts 7-8). Visa's objection to the recommendation is limited to those three claims.

## V. ISSUES

1. Did the Magistrate Judge err in recommending that PSW be permitted to pursue its breach of contract claim under New York law even though the claim depended on a legal assertion of agency rather than factual allegations establishing an agency relationship?

2. Did the Magistrate Judge err in recommending that PSW be permitted to pursue its claims for intentional interference with contractual relations even though PSW identified no basis to conclude that the alleged interference was improper, given that Visa's alleged conduct did not violate antitrust law and served a legitimate purpose?

## VI. POINTS AND AUTHORITIES

The district court's review of a magistrate judge's report and recommendation is limited to matters raised in the parties' objections to the report and recommendation. *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998). In this case, Visa agrees with and does not object to the recommendations for dismissal of most of the claims in the Amended Complaint (Counts 1-4, 6, and 8-11). Visa's objections are limited to the Magistrate Judge's recommendation that Visa's motion to dismiss be denied with respect to PSW's state-law claims for breach of contract and tortious interference with contractual relations. Visa believes that the Magistrate Judge committed legal errors in not dismissing these three claims. The district court's review of Visa's objections is *de novo*. *Cox v. Hainey*, 391 F.3d 25, 28 (1st Cir. 2004).

Visa's objections arise out of its motion to dismiss under Rule 12(b)(6). The basic standard governing a motion to dismiss under Rule 12(b)(6) is familiar: whether the plaintiff has stated a claim upon which relief could be granted, taking as true all the complaint's well-pled factual allegations and drawing all reasonable inferences in the plaintiff's favor. *DM Research, Inc. v. College of Am. Pathologists*, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) (Torres, J.), *aff'd*, 170 F.3d 53 (1st Cir. 1999). The plaintiff carries an important burden under that standard: "the complaint must allege ***facts*** that establish all of the elements of the claim[s] asserted. . . . Moreover, the factual allegations must be specific enough to justify dragging a defendant past the pleading threshold." *Id.* (internal citations omitted).

### A. PSW Failed to State a Breach of Contract Claim

The Magistrate Judge expressed "serious doubts as to the ultimate merits of [PSW's] claim" for breach of contract against Visa, Rep. & Rec. at 24, but he nonetheless recommended that PSW be allowed to proceed on that claim. Although the Magistrate Judge recognized that Visa was not a signatory to the Merchant Agreement between PSW and FFB, *id.* at 23-24, he

concluded that PSW had sufficiently pled the required privity by alleging an agency relationship between Visa and FFB under New York law. *Id.* at 25. The Magistrate Judge's conclusion is incorrect for two reasons. First, federal law governs the appropriate pleading standard, and under the federal pleading standard, a plaintiff cannot merely allege a ***legal*** conclusion such as agency, but instead must allege ***facts*** that, if true, would establish the existence of an agency relationship under the law. Second, even if New York pleading standards apply, PSW failed to plead sufficient facts to support a breach of contract claim against Visa under an agency theory.

#### 1. Under Governing Federal Pleading Rules, PSW Failed to Make the Required Factual Allegations to Establish Any Claim of Agency

The Magistrate Judge's reliance on the pleading requirements of New York law was incorrect. The First Circuit has unambiguously held that "under standard *Erie* doctrine, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." *Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir. 2003); *see also Mayer v. Gary Partners, Inc.*, 29 F.3d 330, 334 (7th Cir. 1994). Because pleading standards are considered procedural for *Erie* purposes, federal pleading requirements will determine whether PSW's allegations of "agency" are sufficient. *Servicios Comerciales Andinos, S.A. v. GE Del Caribe*, 145 F.3d 463, 479-80 (1st Cir. 1998).

The Magistrate Judge noted that the Amended Complaint alleged a principal-agent relationship, Rep. & Rec. at 24 (citing Am. Compl. ¶ 32), but it is well established that a complaint's mere recitation of legal epithets will not defeat a motion to dismiss under Rule 12(b)(6). *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977); *DM Research*, 2 F. Supp. 2d at 228 (Torres, J.) ("[T]he complaint must allege facts that establish all of the elements of the claim[s] asserted"). To the contrary, the plaintiff must allege ***facts*** to establish the elements of agency. *See also, e.g.*, *Ferrostaal, Inc. v. M/V Sea Baisen*, No. 02 Civ. 1900 (RJH) (DCF), 2004

WL 2734745, at *6 (S.D.N.Y. Nov. 30, 2004) (unpublished) ("'The burden is on the party alleging the existence of a principal-agent … relationship to assert facts sufficient to withstand a motion to dismiss based on the agency relationship.'").

PSW failed to allege facts to establish any of the fundamental elements of agency. It did not allege a manifestation by Visa that FFB would act for it, that FFB accepted the undertaking, or that Visa controlled the undertaking. *Am. Title Ins. Co. v. East W. Fin.*, 16 F.3d 449, 456 (1st Cir. 1994); *Deep Blue Ventures, Inc. v. Manfra, Tordella & Brookes, Inc.*, 791 N.Y.S.2d 298, 302 (N.Y. Sup. Ct. 2004) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another, that the other shall act on his behalf and subject to his control, and consent by the other so to act."); *Lawrence v. Anheuser-Busch, Inc.*, 523 A.2d 864, 867 (R.I. 1987) (similar standards under Rhode Island law). PSW also makes no other factual allegations to show privity of contract, such as some mutuality of obligation between Visa and PSW. *Cf. Massengale v. Transitron Elec. Corp.*, 385 F.2d 83, 88 (1st Cir. 1967).

The mere allegation that FFB is a member of Visa, Am. Compl. ¶ 24, does not establish a principal-agent relationship between Visa and FFB. *E.g.*, *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (Visa does not have an agency relationship with its member banks). PSW's other allegations also are insufficient to establish any agency relationship. PSW alleged that FFB incorporated Visa's Operating Regulations into the Merchant Agreement, provided for Visa to receive benefits from the agreement, and allowed Visa to have approval rights with respect to certain aspects of the agreement. *See* Am. Compl. ¶¶ 24, 27-30. But even if true, those three factual allegations do nothing to create a principal-agent relationship under the law set forth above. *See also Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660, 662 (R.I. 1998)

(incorporation of one contract into another does not create duties as between the non-contracting parties).

### 2. Even If New York Pleading Standards Apply, They Do Not Permit Conclusory Allegations of Agency

Even if New York pleading standards apply, PSW's allegations fall short of what is required to state a claim for breach of contract against Visa. Like federal courts, New York courts repeatedly have found a legal assertion of agency to be insufficient when not supported by specific allegations of the factual elements that would establish the purported agency relationship. *Schwartz v. Soc'y of N.Y. Hosp.*, 199 A.D.2d 129, 130 (N.Y. App. Div., 1st Dept. 1993); *Cassimatis v. Marchesini*, 274 A.D. 1002, 1002 (N.Y. App. Div., 2d Dept. 1948). In *Schwartz*, for example, New York's Appellate Division found that "the unsupported statement that [the purported agent] was acting on . . . behalf [of the purported principal]" was insufficient to allege an agency relationship. 199 A.D.2d at 130.

In this case, the Magistrate Judge erroneously relied on a New York state decision, *Huntington Pennysaver*, for the proposition that "[a]n allegation that a principal-agent relationship exists is sufficient to establish 'the requisite privity for [a] cause of action to survive a motion to dismiss.'" Rep. & Rec. at 25, quoting *Huntington Pennysaver, Inc. v. Tire Supply Corp. of Long Island*, 298 N.Y.S.2d 824 (Dist. Ct. Suffolk County 1969). But the *Huntington Pennysaver* decision did not contain the quote and was a decision issued after a trial.

The language quoted by the Magistrate Judge actually came from a federal decision, but that decision also did not endorse mere recitation of the legal term "agency" as sufficient to allege an agency relationship that could establish privity for purposes of a breach of contract claim. *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 472 (S.D.N.Y. 2005). To the contrary, the complaint in *Carruthers* contained factual allegations that could establish a principal-agent

relationship and was not limited to mere invocation of the term "agency." The breach of contract claim in that case alleged that defendants did not deliver title to certain properties to the plaintiff, who had hoped to develop the properties for Indian gaming purposes. The complaint included allegations that certain real estate developers (the supposed principals) authorized other defendants to negotiate land and development deals with an Indian Nation and others related to the project; that they employed some of the other defendants to serve as a real estate agent company and a real estate broker to sell the land to the Nation; that they secretly controlled the shareholders, directors, and officers of the other defendants in a scheme to cause a mortgage foreclosure so the land could be transferred to other defendants; and that they provided necessary approvals for the other defendants to make the commitments to transfer the land. *Id.* at 459-61.[3] By contrast, PSW's conclusory allegations of agency are devoid of any facts that, even if true, would establish an agency relationship.

**B. PSW Failed to State a Claim for Tortious Interference with Contract**

Despite finding that Visa had not violated any antitrust law in dealing with PSW, the Magistrate Judge recommended that Visa's motion to dismiss be denied with respect to the claims of tortious interference with PSW's contractual relations with its website clients and tortious interference with the Merchant Agreement. Rep. & Rec. at 28-30. Applying the same analysis to both counts, the Magistrate Judge concluded that PSW had adequately pled the elements of tortious interference including "the existence of its contracts . . . , that the Defendants were aware of those contracts, that they intentionally interfered and that their interference caused harm to Plaintiff, which suffered damages." *Id.* at 28.

---

[3] Even with those allegations, the Court cautioned that it was skeptical of the agency claims and threatened sanctions if discovery did not reveal facts to establish a true agency relationship. *Id.* at 475.

The Magistrate Judge incorrectly concluded that PSW pled facts sufficient to establish all the relevant elements of a tortious interference claim, both with respect to the Merchant Agreement and PSW's contracts with its website clients. Citing *Mortgage Guarantee & Title Co. v. Commonwealth Mortgage Co.*, 730 F. Supp. 469, 471-72 (D.R.I. 1990), and *Mesolella v. City of Providence*, 508 A.2d 661, 669 (R.I. 1986), the Magistrate Judge identified the elements of a tortious interference claim as "(1) the existence of a business relationship or expectancy, (2) knowledge by the [interfering party] of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." Rep. & Rec. at 28. But as both these authorities make clear, there is an additional element that the Magistrate Judge omitted, namely, that the interference alleged be "improper." *Mortgage Guarantee*, 730 F. Supp. at 471-72; *Mesolella*, 508 A.2d at 669; *see also Belliveau Bldg. Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I. 2000); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield*, 239 F. Supp. 2d 180, 194 (D.R.I. 2003).

In this case, the gravamen of PSW's tortious interference claims is that Visa's conduct was "improper" because it violated federal and state antitrust laws. But, as the Magistrate Judge correctly concluded, PSW failed to state a valid antitrust claim based on any of the challenged Visa rules, in part because PSW alleged no antitrust injury. Rep. & Rec. at 11-18. Likewise, PSW was unable to state a valid *Bivens* claim against Visa for alleged violations of the First Amendment. *Id.* at 22-23. Moreover, as recognized by PSW itself, Visa's chargeback rules were instituted to protect against the high risk of fraud and losses prevalent in PSW's chosen industry. Am. Compl. ¶¶ 65, 68, 69. And the reserve account is established pursuant to the PSW-FFB Merchant Agreement, which gives FFB the "sole discretion" to determine the reserve amount. *Id.* ¶ 83. Because Visa's rules and alleged conduct challenged by PSW are justified and

not unlawful, they cannot be an "improper" means of competing in the market – regardless of the label attached to it by PSW. *See Stop & Shop*, 239 F. Supp. 2d at 195 (defendant should not be held liable in tort for competing lawfully in market); *see also Belliveau*, 763 A.2d at 628 (discussing justification and privilege).

Visa has an additional objection with respect to the claim for tortious interference with PSW's contracts with its website clients. The Magistrate Judge's Report and Recommendation did not even address Visa's argument that PSW's claim was deficient because it failed to allege any specific client contracts with which Visa intentionally interfered. *See Solar Travel Corp. v. Nachtomi*, No. 00 Civ. 3564 (AGS), 2001 U.S. Dist. LEXIS 7549, at *37 (S.D.N.Y. June 8, 2001) (tortious interference claim that does not allege specific contract must be dismissed); *Bomar Resources, Inc. v. Sierra Rutile Ltd.*, No. 90 Civ. 3773 (JFK), 1991 U.S. Dist. LEXIS 396, at *25-26 (S.D.N.Y. Jan. 15, 1991). PSW's failure to identify specific contracts with respect to this claim provides an independent basis to dismiss Count 7.

## VII. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Visa in the amended complaint.

Respectfully submitted,

O'MELVENY & MYERS LLP and
EDWARDS ANGELL PALMER & DODGE, LLP

By: ______________________
Patricia A. Sullivan (#2120)
EDWARDS ANGELL PALMER & DODGE, LLP

*Attorneys for Visa U.S.A. Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2006, a true and correct copy of *Visa U.S.A., Inc.'s Memorandum of Law in Support of Limited Objection to Report and Recommendation of the Magistrate Judge* was sent via facsimile and first-class mail, postage prepaid to the following parties:

Richard A. Sinapi, Esq.
V. Edward Formisano, Esq.
Sinapi Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707

David Paul Steiner, Esq.
David Steiner & Associates
1925 Century Park East, Suite 2350
Los Angeles, CA 90067

Jay Fastow, Esq.
Bruce Colbath, Esq.
Denise Plunkett, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Brian Wallach, Esq.
Howrey Simon Arnold & White
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Joseph V. Cavanagh, Esq.
Blish & Cavanagh, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765

John A. Tarantino, Esq.
Patricia K. Rocha, Esq.
Adler Pollock & Sheehan, P.C.
2300 Financial Plaza
Providence, RI 02903

Patricia A. Sullivan #2120
*Attorney for Defendant Visa U.S.A., Inc.*