**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**Case No. 04-347T**

PSW, INC., d/b/a PSW BILLING,
Plaintiff,

v.

VISA U.S.A., INC., MASTERCARD INTERNATIONAL INCORPORATED,
Defendants,

and

FIRST FINANCIAL BANK, and FIRST DATA MERCHANT SERVICES CORPORATION
Defendants and Counterclaimants,

v.

PSW, INC., d/b/a PSW BILLING, and JOHN LOMBARDI,
Counterclaim Defendants

FIRST FINANCIAL BANK,
Cross-Claimant,

v.

MASTERCARD INTERNATIONAL INCORPORATED,
Cross-Claim Defendant.

**DEMAND FOR JURY TRIAL**

**ANSWER, COUNTERCLAIMS, AND CROSS-CLAIMS OF DEFENDANTS FIRST FINANCIAL BANK AND FIRST DATA MERCHANT SERVICES CORPORATION TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants First Financial Bank ("FFB") and First Data Merchant Services Corporation ("FDMS"), consistent with the Court's Order of February 28, 2006,[1] by its attorneys, answers plaintiff's First Amended Complaint in this action as follows:

1. FFB and FDMS admit that plaintiff purported to assert claims against FFB and FDMS under 15 U.S.C. §§ 1 and 2, the Rhode Island Antitrust Act, the First Amendment of the United States Constitution, and for breach of contract, breach of the covenant of good faith and fair dealing, interference with contractual relations and prospective economic advantage, conversion, and embezzlement, and that they seek the relief stated in paragraph 1 of the First Amended Complaint. FFB and FDMS deny the remaining allegations in paragraph 1 of the Amended Complaint.

2. Admitted.

3. FFB and FDMS admit that Visa is a Delaware corporation with a principal place of business located in San Francisco, California. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 of the First Amended Complaint.

4. FFB and FDMS admit that MasterCard is a Delaware corporation with a principal place of business located in Purchase, New York. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 of the First Amended Complaint.

5. FFB and FDMS admit that FFB is a Colorado corporation with its principal place of business located at 6200 South Quebec Street, Suite 240, Greenwood Village, Colorado. FFB

---

[1] By order entered February 28, 2006, this Court dismissed plaintiff's antitrust claims (counts 1, 2 and 3), First Amendment claim (count 4), and claims for breach of the covenant of good faith and fair dealing (count 6), interference with prospective economic advantage (count 9), conversion (count 10), and embezzlement (count 11). Accordingly, no response is necessary for those allegations in plaintiff's First Amended Complaint that relate solely to the dismissed claims. By answering any allegation that arguably pertains to a surviving claim, FFB and FDMS do not concede that such allegations are relevant to the plaintiff's case after the February 28, 2006 Order. Moreover, to the extent that an allegation is not answered and plaintiff contends that such allegation does, in fact, relate to a surviving cause of action, FFB and FDMS hereby specifically deny such allegation.

and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the First Amended Complaint.

6. FFB and FDMS admit that FDMS is a Florida corporation with its principal place of business located at 6200 South Quebec Street, Suite 240, Greenwood Village, Colorado and that FDMS does business in this judicial district and is registered to do business in Rhode Island. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 of the First Amended Complaint.

7. FFB and FDMS deny the allegations in paragraph 7 of the First Amended Complaint.

8. FFB and FDMS admit that the Court has subject matter jurisdiction.

9. FFB and FDMS admit that venue is proper in this judicial district, but deny the remaining allegations in paragraph 9 of the First Amended Complaint.

10. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 10 of the First Amended Complaint.

11. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 11 of the First Amended Complaint.

12. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the First Amended Complaint.

13. FFB and FDMS admit that member banks of MasterCard and Visa may be issuing banks, acquiring banks, or both, and that issuing banks issue payment cards to cardholders and acquiring banks acquire payment card transactions from merchants. FFB and FDMS deny the remaining allegations in paragraph 13 of the First Amended Complaint.

14. FFB and FDMS admit that the allegations in paragraph 14 depict how some credit card transactions may be processed through the MasterCard and Visa credit card networks, but deny the remaining allegations in paragraph 14 of the First Amended Complaint.

15. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 15 of the First Amended Complaint.

16. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 16 of the First Amended Complaint.

17. FFB and FDMS admit that PSW processed payment card transactions for website clients. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 of the First Amended Complaint.

18. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the First Amended Complaint.

19. FFB and FDMS admit that PSW processed MasterCard and Visa credit card transactions for its website clients and that PSW submitted such transactions for settlement to its acquiring bank. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of the First Amended Complaint.

20. FFB and FDMS admit that PSW processed credit card transactions for website clients whose business involved the delivery of digital content for the internet adult entertainment industry. FFB and FDMS lack knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 20 of the First Amended Complaint.

21. FFB and FDMS admit that PSW is contractually the merchant for purposes of settlement of credit card transactions under the merchant agreement. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the First Amended Complaint.

22. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 22 of the First Amended Complaint.

23. Admitted.

24. FFB and FDMS deny the allegations in paragraph 24 of the First Amended Complaint.

25. FFB and FDMS admit that FDMS performs authorization, processing, and settlement services for merchants participating in FFB's Visa and MasterCard bankcard programs, but deny the remaining allegations in paragraph 25 of the First Amended Complaint.

26. FFB and FDMS admit that FFB, as a member bank of Visa and MasterCard, has agreed to abide by the rules and regulations of MasterCard and Visa, but deny the remaining allegations in paragraph 26 of the First Amended Complaint.

27. FFB and FDMS deny the allegations in paragraph 27 of the First Amended Complaint.

28. FFB and FDMS admit that PSW agreed to comply with Visa and MasterCard rules pursuant to the Merchant Agreement, but deny the remaining allegations in paragraph 28 of the Merchant Agreement.

29. FFB and FDMS admit that paragraph 26.9 of the Merchant Agreement states that the Visa and MasterCard rules provide Visa and MasterCard with certain rights to require termination or modification of a merchant agreement with respect to transactions involving Visa and MasterCard cards and the Visa and MasterCard card systems. FFB and FDMS deny the remaining allegations in paragraph 29 of the First Amended Complaint.

30. FFB and FDMS deny the allegations in paragraph 30 of the First Amended Complaint.

31. FFB and FDMS deny the allegations in paragraph 31 of the First Amended Complaint.

32. FFB and FDMS deny the allegations in paragraph 32 of the First Amended Complaint.

33. FFB and FDMS deny the allegations in paragraph 33 of the First Amended Complaint.

34. FFB and FDMS deny the allegations in paragraph 34 of the First Amended Complaint.

35. FFB and FDMS admit that FDMS provides payment card processing services for merchants that have signed merchant agreements with FFB. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 35 of the First Amended Complaint.

36. FFB and FDMS deny the allegations in paragraph 36 of the First Amended Complaint, and state that the terms of the Merchant Agreement at issue speak for themselves.

37. FFB and FDMS admit that PSW agreed to comply with Visa and MasterCard rules pursuant to the Merchant Agreement, but deny the remaining allegations in paragraph 37 of the First Amended Complaint.

38. FFB and FDMS admit that when a cardholder makes a purchase with a MasterCard or Visa credit card, the acquiring bank pays an interchange fee and then settles the merchant's credit card transaction as more particularly described in the agreement between the merchant and the acquiring bank. FFB and FDMS deny the remaining allegations in paragraph 38 of the First Amended Complaint.

39. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 39 of the First Amended Complaint.

40. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 40 of the First Amended Complaint.

41. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 41 of the First Amended Complaint.

42. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 42 of the First Amended Complaint.

43. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 43 of the First Amended Complaint.

44. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 44 of the First Amended Complaint.

45. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 45 of the First Amended Complaint.

46. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 46 of the First Amended Complaint.

47. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 47 of the First Amended Complaint.

48. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 48 of the First Amended Complaint.

49. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 49 of the First Amended Complaint.

50. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 50 of the First Amended Complaint.

51. FFB and FDMS deny the allegations in paragraph 51 of the First Amended Complaint.

52. FFB and FDMS admit that a merchant may be required to reimburse the acquiring bank for the full amount of the reversed transaction in the event of a chargeback. FFB and FDMS further admit that a processing fee may also be required under certain circumstances. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 of the First Amended Complaint.

53. FFB and FDMS deny the allegations in paragraph 53 of the First Amended Complaint.

54. FFB and FDMS admit that cards are swiped and signed receipts may be provided in connection with Visa and MasterCard transactions at "brick and mortar" merchants. FFB and FDMS lack knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 54 of the Amended Complaint.

55. FFB and FDMS admit that in certain circumstances merchants may respond to chargebacks with signed receipts and data from a card swipe. FFB and FDMS lack knowledge or information sufficient to form a belief as to the remaining allegations paragraph 55 of the First Amended Complaint.

56. FFB and FDMS deny the allegations in paragraph 56 of the First Amended Complaint.

57. FFB and FDMS deny the allegations in paragraph 57 of the First Amended Complaint.

58. FFB and FDMS deny the allegations in paragraph 58 of the First Amended Complaint.

59. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the First Amended Complaint.

60. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the First Amended Complaint.

61. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the First Amended Complaint.

62. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the First Amended Complaint.

63. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the First Amended Complaint.

64. FFB and FDMS admit that there are firms that can be retained by merchants to screen internet payment card transactions in order to reduce the likelihood of fraud. FFB and FDMS deny the remaining allegations in paragraph 64 of the First Amended Complaint.

65. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the First Amended Complaint.

66. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the First Amended Complaint.

67. FFB and FDMS deny the allegations in paragraph 67 of the First Amended Complaint.

68. FFB and FDMS deny the allegations in paragraph 68 of the First Amended Complaint.

69. FFB and FDMS admit that the MasterCard and Visa chargeback monitoring programs establish chargeback ratio thresholds to measure whether a particular merchant has

experienced excessive chargeback levels in a given month. Because plaintiff's antitrust claims were dismissed by the Court in its February 28, 2006 Order, no response is necessary to the allegation in paragraph 69 that the MasterCard and Visa chargeback monitoring programs were parallel. FFB and FDMS lack knowledge or insufficient sufficient to form a belief as to the truth of the remaining allegations in paragraph 69 of the First Amended Complaint.

70. Because plaintiff's antitrust claims were dismissed by the Court in its February 28, 2006 Order, no response is necessary to the allegation in paragraph 70 that the MasterCard and Visa chargeback monitoring programs are parallel. FFB and FDMS admit that MasterCard and Visa may impose fines and penalties on an acquiring bank when one of the acquiring bank's merchants has a chargeback ratio that exceeds certain proscribed thresholds. FFB and FDMS admit that the Merchant Agreement requires PSW to reimburse FFB for any fines or penalties assessed by Visa or MasterCard as a result of PSW's excessive chargeback levels. FFB and FDMS lack knowledge or insufficient sufficient to form a belief as to the truth of the remaining allegations in paragraph 70 of the First Amended Complaint.

71. FFB and FDMS admit that the Visa and MasterCard rules give Visa and MasterCard certain rights to require termination or modification of a merchant agreement with respect to transactions involving Visa and MasterCard cards and the Visa and MasterCard card systems. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 71 of the First Amended Complaint.

72. Because plaintiff's antitrust claims were dismissed by the Court in its February 28, 2006 Order, no response is necessary to the allegation in paragraph 72 that the MasterCard and Visa chargeback monitoring programs are parallel. FFB and FDMS admit that a merchant that exceeds proscribed chargeback thresholds over a specified period of time may be deemed to be an excessive chargeback merchant. FFB and FDMS deny the remaining allegations in paragraph 72 of the First Amended Complaint.

73. FFB and FDMS admit that under MasterCard's Excessive Chargeback Program fines could range from $25 per chargeback and $25,000 per month to $100 per chargeback and

$100,000 per month, and that under Visa's High Risk Chargeback Monitoring Program fines could range from $100 to $150 per chargeback.

74. FFB and FDMS deny the allegations in paragraph 74 of the First Amended Complaint.

75. FFB and FDMS deny the allegations in paragraph 75 of the First Amended Complaint.

76. FFB and FDMS admit that chargebacks can lag behind sales. FFB and FDMS deny the remaining allegations in paragraph 76 of the First Amended Complaint.

77. FFB and FDMS deny the allegations in paragraph 77 of the First Amended Complaint.

78. FFB and FDMS admit that MasterCard may, in certain circumstances, count credits as chargebacks in assessing whether a merchant's chargeback levels are excessive. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 78 of the First Amended Complaint.

79. FFB and FDMS deny the allegations in paragraph 79 of the First Amended Complaint.

80. FFB and FDMS deny the allegations in paragraph 80 of the First Amended Complaint.

81. FFB and FDMS deny the allegations in paragraph 81 of the First Amended Complaint.

82. FFB and FDMS deny the allegations in paragraph 82 of the First Amended Complaint.

83. FFB and FDMS admit that FFB considers the potential imposition of fines and/or fees by MasterCard and Visa under their respective excessive chargeback programs as a potential loss for which funds should be retained in the reserve account. FFB and FDMS deny the remaining allegations in paragraph 83 of the First Amended Complaint.

84. FFB and FDMS deny the allegations in paragraph 84 of the First Amended Complaint.

85. FFB and FDMS deny the allegations in paragraph 85 of the First Amended Complaint.

86. FFB and FDMS deny the allegations in paragraph 86 of the First Amended Complaint.

87. FFB and FDMS deny the allegations in paragraph 87 of the First Amended Complaint.

88. FFB and FDMS deny the allegations in paragraph 88 of the First Amended Complaint.

89. FFB and FDMS deny the allegations in paragraph 89 of the First Amended Complaint.

90. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 90 of the First Amended Complaint.

91. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 91 of the First Amended Complaint.

92. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 92 of the First Amended Complaint.

93. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 93 of the First Amended Complaint.

94. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 94 of the First Amended Complaint.

95. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 95 of the First Amended Complaint.

96. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 96 of the First Amended Complaint.

97. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 97 of the First Amended Complaint.

98. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 98 of the First Amended Complaint.

99. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 99 of the First Amended Complaint.

100. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 100 of the First Amended Complaint.

101. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 101 of the First Amended Complaint.

102. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 102 of the First Amended Complaint.

103. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 103 of the First Amended Complaint.

104. FFB and FDMS admit that they entered into a Merchant Agreement with PSW on or about January 17, 2002. FFB and FDMS deny the remaining allegations in paragraph 104 of the First Amended Complaint.

105. FFB and FDMS admit the allegations in the first sentence of paragraph 105 of the First Amended Complaint, but deny the allegations in the second sentence of paragraph 105 of the First Amended Complaint.

106. FFB and FDMS admit that the Merchant Agreement provided for an excessive chargeback handling fee in the event that PSW's chargeback percentage of sales exceeded 2.5% annually, and state that the amount of that fee is specified in Schedule A to the Merchant Agreement. FFB and FDMS deny the remaining allegations in paragraph 106 of the First Amended Complaint.

107. FFB and FDMS admit that FFB reserved the right, in its sole discretion, to increase the reserve account based upon PSW's processing history and any anticipated risk of

loss. FFB and FDMS deny the remaining allegations in paragraph 107 of the First Amended Complaint.

108. Admitted.

109. FFB and FDMS admit that as a condition to receiving the services provided pursuant to the Merchant Agreement, PSW was required to enter into and maintain appropriate arrangements to receive risk control services from an entity that met certain minimum specifications set forth in the Special Addendum to the Merchant Agreement. FFB and FDMS deny the remaining allegations in paragraph 109 of the First Amended Complaint.

110. FFB and FDMS admit that PSW entered into a Shared Global Systems Remote Processing Agreement.

111. FFB and FDMS deny that SGS is a subsidiary or agent of FFB and/or FDMS, do not understand the phrase "closely associated," and, therefore, deny the remaining allegations in paragraph 111 of the First Amended Complaint.

112. FFB and FDMS admit that the SGS agreement provided for a VPN connection fee of $1000 and a minimum monthly fee of $7500, but deny the remaining allegations in paragraph 112.

113. FFB and FDMS deny the allegations in paragraph 113 of the First Amended Complaint.

114. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the First Amended Complaint.

115. FFB and FDMS deny the allegations in paragraph 115 of the First Amended Complaint.

116. FFB and FDMS deny the allegation in paragraph 116 of the First Amended Complaint.

117. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117 of the First Amended Complaint.

118. FFB and FDMS deny the allegations in paragraph 118 of the First Amended Complaint.

119. FFB and FDMS admit that PSW's Visa processing volume increased as a result of the SoftSell transactions.

120. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120 of the Amended Complaint.

121. FFB and FDMS admit that PSW used the merchant descriptor PSWHEALTH.COM as well as the merchant identification number 23599860012 for SoftSell transactions, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 121 of the First Amended Complaint.

122. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 of the First Amended Complaint.

123. FFB and FDMS deny the allegations in paragraph 123 of the First Amended Complaint.

124. FFB and FDMS admit that in May 2003 FDMS commenced an investigation regarding PSW's increased processing.

125. FFB and FDMS admit that SGS contacted PSW to obtain financial information concerning SoftSell, but deny the remaining allegations in paragraph 125 of the First Amended Complaint.

126. FFB and FDMS admit that the investigation determined that SoftSell previously had processed transactions through SGS while doing business as Commonwealth Benefits and had ceased processing due to excessive chargebacks and other problems.

127. FFB and FDMS admit that one of the reasons that the funds in the reserve account were inadequate was related to SoftSell's prior history of high chargeback volumes while processing as Commonwealth Benefits.

128. FFB and FDMS deny the allegations in paragraph 128 of the First Amended Complaint.

129. FFB and FDMS deny the allegations in paragraph 129 of the First Amended Complaint.

130. FFB and FDMS deny the allegations in paragraph 130 of the First Amended Complaint.

131. FFB and FDMS admit that PSW could not process for SoftSell under Visa rules and that FFB communicated that fact to PSW in a letter dated September 16, 2003, and that the terms of the letter speak for themselves. FFB and FDMS further admit that as an IPSP, PSW was not permitted to process for buyers' clubs, membership clubs, outbound telemarketers, or other related merchants.

132. FFB and FDMS deny the allegations in paragraph 132 of the First Amended Complaint.

133. FFB and FDMS deny the allegations in paragraph 133 of the First Amended Complaint.

134. FFB and FDMS admit that one of the criteria used by Visa to assess whether a merchant's chargeback levels were excessive was whether that merchant's chargeback to transaction ratio exceeded 2.5%. FFB and FDMS deny the remaining allegations in paragraph 134 of the First Amended Complaint.

135. FFB and FDMS deny the allegations in paragraph 135 of the First Amended Complaint.

136. FFB and FDMS deny the allegations in paragraph 136 of the First Amended Complaint.

137. FFB and FDMS admit that PSW processed 9943 Visa transactions, had 429 Visa chargebacks, and exceeded Visa chargeback thresholds for the month of June 2003, but deny the remaining allegations in paragraph 137 of the First Amended Complaint.

138. FFB and FDMS admit that in June 2003 PSW agreed to pay a fee to FFB and FDMS in connection with FFB/FDMS efforts to reduce a $425,000 IPSP fine from Visa. FFB

and FDMS further state that PSW never paid any such fee to FFB or FDMS. FFB and FDMS deny the remaining allegations contained in paragraph 138 of the First Amended Complaint.

139. FFB and FDMS admit that on July 24, 2003, FDMS sent a letter to PSW regarding increasing exposure to fines and chargebacks and that the terms of the letter speak for themselves. FFB and FDMS deny the remaining allegations contained in paragraph 139 of the First Amended Complaint.

140. FFB and FDMS deny the allegations in paragraph 140 of the First Amended complaint.

141. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141 of the First Amended Complaint.

142. FFB and FDMS deny the allegations in paragraph 142 of the First Amended Complaint.

143. FFB and FDMS deny the allegations in paragraph 143 of the First Amended Complaint.

144. FFB and FDMS admit that on August 19, 2003, FDMS sent a letter to PSW regarding increasing exposure to fines and chargebacks and that the terms of the letter speak for themselves. FFB and FDMS deny the remaining allegations contained in paragraph 144 of the First Amended Complaint.

145. FFB and FDMS lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 145 of the First Amended Complaint.

146. FFB and FDMS deny the allegations in paragraph 146 of the First Amended Complaint.

147. FFB and FDMS admit that PSW sent a letter to Visa and MasterCard in September 2003 threatening litigation and that the terms of that letter speak for themselves. FFB and FDMS deny the remaining allegations in paragraph 147 of the First Amended Complaint.

148. FFB and FDMS admit that on September 16, 2003, FDMS sent a letter to PSW notifying PSW of the termination effective September 26, 2003, and further state that the terms

of the letter speak for themselves. FFB and FDMS deny the remaining allegations in paragraph 148 of the First Amended Complaint.

149. FFB and FDMS deny the allegations in paragraph 149 of the First Amended Complaint.

150. FFB and FDMS deny the allegations in paragraph 150 of the First Amended Complaint.

151. FFB and FDMS admit that by letter dated October 3, 2003, FDMS advised PSW's counsel that it was not in a position to release funds from the reserve account because the current reserves were approximately $1,000,000 less than the total exposure relating to PSW. FFB and FDMS deny the remaining allegations in paragraph 151 of the First Amended Complaint.

152. FFB and FDMS admit that the letter referenced in paragraph 151 advised PSW that the estimated potential exposure for a MasterCard Aggregator Noncompliance Fine was $372,500, but deny the remaining allegations in paragraph 152 of the First Amended Complaint.

153. FFB and FDMS deny the allegations in paragraph 153 of the First Amended Complaint.

154. FFB and FDMS deny that FFB or FDMS committed any wrongful acts or omission, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 154 of the First Amended Complaint.

155. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 155 of the First Amended Complaint.

156. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 156 of the First Amended Complaint.

157. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 157 of the First Amended Complaint.

158. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 158 of the First Amended Complaint.

159. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 159 of the First Amended Complaint.

160. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 160 of the First Amended Complaint.

161. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 161 of the First Amended Complaint.

162. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 162 of the First Amended Complaint.

163. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 163 of the First Amended Complaint.

164. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 164 of the First Amended Complaint.

165. Pursuant to the Court's in its February 28, 2006 Order, no answer is necessary to the allegations in paragraph 165 of the First Amended Complaint.

166. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 166 of the First Amended Complaint.

167. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 167 of the First Amended Complaint.

168. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 168 of the First Amended Complaint.

169. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 169 of the First Amended Complaint.

170. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 170 of the First Amended Complaint.

171. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 171 of the First Amended Complaint.

172. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 172 of the First Amended Complaint.

173. FFB and FDMS deny the allegations in paragraph 173 of the First Amended Complaint.

174. FFB and FDMS deny the allegations in paragraph 174 of the First Amended Complaint.

175. FFB and FDMS deny the allegations in paragraph 175 of the First Amended Complaint.

176. Pursuant to the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 176 of the First Amended Complaint.

177. FFB and FDMS deny the allegations in paragraph 177 of the First Amended Complaint.

178. FFB and FDMS deny the allegations in paragraph 178 of the First Amended Complaint.

179. Pursuant the Court's February 28, 2006 Order, no answer is necessary to the allegations in paragraph 179 of the First Amended Complaint. To the extent the allegations in paragraph 179 relate to any of plaintiff's surviving claims, those allegations are denied.

180. FFB and FDMS incorporate their answers to paragraphs 1 through 179 of the First Amended Complaint.

181. Count 1 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 181 of the First Amended Complaint.

182. Count 2 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 182 of the First Amended Complaint.

183. Count 3 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 183 of the First Amended Complaint.

184. Count 4 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 184 of the First Amended Complaint.

185. FFB and FDMS deny the allegations in paragraph 185 of the First Amended Complaint.

186. Count 6 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 186 of the First Amended Complaint.

187. FFB and FDMS deny the allegations in paragraph 187 of the First Amended Complaint.

188. Count 8 of plaintiff's First Amended Complaint is not asserted against FFB or FDMS and, therefore, no response is necessary to the allegations in paragraph 188 of the First Amended Complaint.

189. Count 9 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 189 of the First Amended Complaint.

190. Count 10 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 190 of the First Amended Complaint.

191. Count 11 of plaintiff's First Amended Complaint was dismissed by the Court in its February 28, 2006 Order and, therefore, no response is necessary to the allegations in paragraph 191 of the First Amended Complaint.

192. FFB and FDMS deny that plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

FFB and FDMS assert the following defenses without in any way conceding that plaintiff does not have to prove each and every element of their claim.

### FIRST DEFENSE

The allegations of plaintiff's First Amended Complaint pertaining to Counts 1, 2, 3, 4, 6, 9, 10, and 11 were dismissed by the Court's February 28, 2006 Order.

### SECOND DEFENSE

The remaining allegations of the First Amended Complaint fail to state a claim for which relief may be granted.

### THIRD DEFENSE

Plaintiff's claims are subject to set-off in an amount to be proven at trial, which represents the damage to FFB and FDMS occasioned by plaintiff's breach of the Merchant Agreement.

### FOURTH DEFENSE

Plaintiff has failed to mitigate its alleged damages, if any.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

### SIXTH DEFENSE

Plaintiff was properly terminated pursuant to the terms of the Merchant Agreement.

### SEVENTH DEFENSE

FFB's and FDMS's actions were fully justified and privileged as a matter of law and, therefore, give rise to no claims against FFB or FDMS.

### EIGHTH DEFENSE

Plaintiff's damages, if any, were proximately caused, in whole or in part, by its own neglect, carelessness, comparative negligence, and/or fault.

**NINTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the contractual limitation of remedies and/or exclusion of damages set forth in paragraph 15.3 of the Merchant Agreement.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the contractual limitation of liability and/or damages set forth in paragraph 15.4 of the Merchant Agreement.

**ELEVENTH DEFENSE**

Plaintiff's claims for breach of contract or other obligations not contained in writing are barred, in whole or in part, by the pertinent Statute of Frauds.

**TWELFTH DEFENSE**

Plaintiff has waived any right to recover under any of the causes of actions purportedly alleged in the First Amended Complaint.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTEENTH DEFENSE**

FFB and FDMS adopt by reference any defense, not otherwise expressly set forth herein, that is pleaded by any other defendant in this action that may be applicable to FFB and/or FDMS.

## COUNTERCLAIMS

Counterclaimants First Financial Bank and First Data Merchant Services Corporation (collectively, "FFB/FDMS") assert the following counterclaims, pursuant to Rule 13(a) and (h) of the Federal Rules of Civil Procedure, against Counterclaim Defendants PSW and John Lombardi ("Lombardi"):

### THE PARTIES

1. Counterclaimant FFB is a Colorado corporation with its principal place of business located at 6200 South Quebec Street, Suite 240, Greenwood Village, Colorado.

2. Counterclaimant FDMS is a Florida corporation with its principal place of business located at 6200 South Quebec Street, Suite 240, Greenwood Village, Colorado.

3. Counterclaim Defendant PSW is a Rhode Island corporation with its principal place of business located at 806 Reservoir Avenue, Cranston, Rhode Island.

4. Counterclaim Defendant Lombardi is an adult citizen and resident of the State of Rhode Island. For all times relevant to these counterclaims, Lombardi has been and continues to be the sole owner of PSW.

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1332, 1367 and 2201. The parties are citizens of different states, the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs, and the counterclaims are so related to the claims in the First Amended Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue for this action is proper pursuant to 28 U.S.C. §§ 1391(a) and 1391(c). Both PSW and Lombardi reside in and are subject to personal jurisdiction in this judicial district, and a substantial part of the events and omissions giving rise to the claims asserted herein arose in this judicial district.

## FACTS

### A. The Parties and Their Contract

7. The relationship between PSW, on the one hand, and FFB and FDMS, on the other, is governed by the terms of the Merchant Services Bankcard Agreement (the "Merchant Agreement"), including the Special Addendum thereto. The Merchant Agreement became effective on January 17, 2002 and had a term of three years.

8. FFB is a member bank in the Visa and MasterCard credit card networks. Under the Merchant Agreement between PSW and FFB/FDMS, FFB served as PSW's acquiring bank for MasterCard and Visa credit card transactions and FDMS performed authorization, processing, and settlement services in connection with those transactions.

9. PSW provides billing services for adult entertainment website operators. PSW accessed the Visa and MasterCard credit networks through FFB and FDMS to process sales on behalf of its website clients.

10. Under the Merchant Agreement, PSW agreed to comply with all applicable Visa and MasterCard rules in connection with Visa and MasterCard card transactions.

### B. Chargebacks

11. A typical credit card transaction begins with a purchase of goods or services by a consumer who holds a credit card issued by a member bank (the "issuing bank"). A merchant will accept Visa or MasterCard credit cards for payment only if that merchant has contracted with a Visa or MasterCard member bank to "acquire" the merchant's transactions. The merchant submits a request for payment of the credit card charge to its acquiring bank. The acquiring bank reimburses the merchant the amount of the charge and also assesses a small fee on the merchant pursuant to the terms of the merchant's agreement with the acquiring bank. The acquiring bank then submits a request for payment on the charge amount to the cardholder's issuing bank. The issuing bank will reimburse the acquiring bank the face amount of the charge, minus an

interchange fee. The process concludes when the issuing bank bills the cardholder and receives payment for the face amount of the charge.

12. A chargeback is the procedure by which an issuing bank can reverse a prior transaction and recover its payment for a variety of reasons defined by MasterCard and Visa rules. For example, when a cardholder denies a charge and the merchant cannot verify the transaction with a customer signature, the issuing bank may reverse the transaction. The acquiring bank is then required to reimburse the issuing bank the amount of the transaction as a chargeback.

13. When a merchant's chargebacks exceed certain specified thresholds, Visa and MasterCard may impose fines or other fees on the acquiring bank.

14. On information and belief, a substantial percentage of website clients for which PSW processed credit card transactions were involved in the delivery of digital content or audio text for the internet adult entertainment industry. This business presents a substantially higher risk of chargebacks than traditional "brick-and-mortar" merchants.

15. Under the Merchant Agreement, PSW agreed to reimburse FFB/FDMS for all chargebacks. For instance, under paragraph 14.1 of the Merchant Agreement, PSW agreed to be responsible for all chargeback amounts relating to credit card transactions settled by FFB/FDMS where, among other things:

> (iii) regardless of any Authorization obtained (including without limitation, telephone and mail order transactions), [PSW] completed a transaction when the Cardholder did not sign the Sales draft; ...
>
> (xii) the Cardholder disputes the validity of the telephone or mail order Card transaction; [or]
>
> (xiii) the Card transaction is otherwise subject to Chargeback by the Card issuing bank or Cardholder in accordance with the [Visa and MasterCard] Rules or applicable law

16. In addition, pursuant to the Merchant Agreement, including but not limited to paragraph 13.5, PSW agreed to reimburse FFB and FDMS for any fines or other fees imposed on FFB and FDMS by MasterCard or Visa resulting from its chargebacks.

### C. MasterCard's and Visa's Excessive Chargeback Programs

17. Both Visa and MasterCard have instituted programs to monitor the chargeback levels of merchants and, when appropriate, impose fines on member acquiring banks (such as FFB) whenever their merchants experience excessive chargebacks.

18. Under Visa's High Risk Chargeback Monitoring Program ("HRCMP"), a merchant's chargeback levels will be deemed excessive if the number of chargebacks in a month is at least 50 and (1) the chargeback to transaction count ratio exceeds 2.5% or (2) the consumer dispute chargeback ("CDC") to transaction ratio exceeds 1%. Any acquirer with a merchant that experiences excessive Visa chargebacks is subject to fees ranging from $100 to $150 per chargeback. A merchant with excessive chargeback activity for more than 6 months may be disqualified from participation in the Visa credit card network.

19. Visa also monitors chargeback levels for international transactions through its Global Chargeback Monitoring Program (the "Global Program"). Under the Global Program, a merchant's international chargeback levels will be deemed excessive if the number of international chargebacks in a month is at least 100 and the international chargeback to international transaction count ratio exceeds 2.5%. Any acquirer with a merchant that experiences excessive international Visa chargebacks is subject to fees of $100 per international chargeback. A merchant with excessive international chargebacks for more than six months may be disqualified from accepting Visa for international transactions.

20. Like Visa, MasterCard monitors the chargeback levels of merchants. Under MasterCard's Excessive Chargeback Program, a merchant's chargeback level will be deemed excessive if the number of chargebacks in a month is at least 15 and (1) the chargeback to transaction count ratio exceeds 1% or (2) the chargeback to transaction dollar ratio exceeds 2.5%.

Any acquirer with a merchant that experiences excessive MasterCard chargebacks is subject to fees of $25 to $100 per chargeback (as well as a $5000 review fee). Unlike Visa, MasterCard does not assess chargeback fines on a monthly basis. Instead, MasterCard may assess such fines – at any time – based on a merchant's excessive chargebacks during the previous 12-month period.

**D. PSW's History of Excessive Chargebacks**

21. Throughout the course of its relationship with FFB/FDMS, PSW exceeded the chargeback thresholds established by MasterCard and Visa. These violations began shortly after the inception of the Merchant Agreement and became increasingly worse over time.

22. For instance, PSW had excessive chargebacks under MasterCard's Excessive Chargeback Program in at least 14 of the 20 months that PSW processed MasterCard transactions with FFB/FDMS, including each of the last 11 months of the contract. These excessive chargebacks exposed FFB to millions of dollars in potential liabilities.

23. PSW also frequently exceeded permissible chargeback thresholds in Visa's Global Chargeback Monitoring Program and Visa's High Risk Chargeback Monitoring program. These excessive chargebacks exposed FFB to millions of dollars in potential liabilities.

24. FFB was repeatedly charged fees and fines by MasterCard and Visa as a result of PSW's excessive chargebacks.

25. Pursuant to the Merchant Agreement, FFB debited the Reserve Account it established for PSW for fees and fines imposed by MasterCard and Visa.

26. On or about August 28, 2003, Visa notified FFB that PSW had exceeded the HRCMP thresholds for five months and that if PSW exceeded those thresholds for a sixth month, it might be referred for disqualification from Visa.

27. Two weeks later, on or about September 9, 2003, Visa advised FFB that PSW had exceeded the HRCMP thresholds for the month of August, thereby making PSW eligible for disqualification from Visa.

**E. Other Non-Compliance Issues**

28. PSW failed to comply with the Merchant Agreement and the Visa and MasterCard rules in many other ways as well.

29. For instance, despite repeated warnings from FFB/FDMS, PSW consistently failed to comply with Visa rules prohibiting the processing of card transactions for websites that depict "actual" or "suggested" illegal activities, such as child pornography. PSW's failure to comply with Visa's content regulations exposed FFB/FDMS to significant fines and possible loss of its charter with Visa.

30. In the late spring and summer of 2003, during the same time period that PSW's excessive chargeback levels reached new heights, PSW also engaged in other activities that dramatically increased FFB/FDMS's exposure to potential fines and other fees from MasterCard and Visa.

31. For example, in April 2003, PSW processed 187 transactions for 17 unregistered adult website merchants in direct violation of Visa's High Risk Internet Payment Services Provider ("HRIPSP") program.

**F. Termination of the Merchant Agreement**

32. Throughout the course of FFB/FDMS's relationship with PSW, FFB/FDMS made repeated efforts to assist PSW in becoming compliant with MasterCard and Visa rules.

33. While FFB/FDMS were engaged in these efforts, PSW sent a letter to Visa and MasterCard threatening a massive antitrust lawsuit against those associations.

34. Due to PSW's non-compliance and other activities, FFB/FDMS decided that they had no alternative but to terminate the relationship with PSW in order to protect themselves from the increasing financial risk posed by PSW's activities.

35. On September 16, 2003, FFB sent notice to PSW that it would be terminating PSW's account, effective September 26, 2003, pursuant to paragraphs 21.3(i) and 21.3(iv) of the Merchant Agreement.

36. Paragraph 21.3(i) provided FFB/FDMS with a right of termination, upon 10 days notice, for any "material adverse change in the business, financial condition, business procedures, products or services of [PSW]."

37. Paragraph 21.3(iv) provided FFB/FDMS with a right of immediate termination for "irregular Card sales by [PSW], excessive Chargebacks or any other circumstances which, in [FFB/FDMS's] sole discretion, may increase [FFB/FDMS's] exposure for [PSW's] chargebacks or otherwise present a financial or security risk to [FFB/FDMS]."

38. Following the termination, PSW continued to bear total responsibility for all chargebacks, fees, credits, and adjustments resulting from card transactions processed under the Merchant Agreement and all other amounts then due or which thereafter became due to FFB/FDMS under the Merchant Agreement, regardless of whether those amounts accrued before or after termination.

### G. Indemnification Rights of FFB/FDMS

39. Under the Merchant Agreement, PSW is also required to indemnify and hold FFB/FDMS harmless in certain specified situations.

40. Paragraph 24.1 provides that PSW shall "indemnify and hold harmless [FFB/FDMS] from and against all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from any breach of any warranty, covenant or agreement . . . or otherwise arising from [PSW's] provision of goods and services to Cardholders."

41. Paragraph 26.3 provides that PSW "shall be liable for and shall indemnify [FFB/FDMS] for any and all attorneys' fees, collection costs and other costs and expenses paid or incurred by [FFB/FDMS] in the enforcement hereof or in collecting any amount due from [PSW] to [FFB/FDMS] hereunder or resulting from any breach by [PSW] of any of the terms or conditions of this Agreement."

### H. Lombardi's Personal Guaranty

42. In order to secure an account with FFB, John Lombardi, the owner of PSW, executed a Personal Guaranty (the "Guaranty") on September 19, 2001.

43. Under the terms of the Guaranty, Lombardi "unconditionally guarantee[d] to [FFB/FDMS] the full and prompt payment of each and every present and future liability, debt and obligation" of PSW arising under the Merchant Agreement. Lombardi further agreed that the Guaranty was his "primary obligation" and that FFB/FDMS would have no obligation to seek payment from PSW prior to enforcing Lombardi's obligations under the Guaranty.

### I. Reserve Account

44. Pursuant to paragraph 22 of the Merchant Agreement, FFB/FDMS established a Reserve Account to protect FFB/FDMS from the financial risks arising from PSW's activities. In that regard, FFB/FDMS were entitled "to set off, recoup and to appropriate and to apply any and all such funds" in the Reserve Account against any of PSW's "obligations" to FFB/FDMS under the Merchant Agreement, "whether such obligations are liquidated, unliquidated, fixed, contingent, matured or unmatured."

45. At the time of termination, approximately $1.5 million in funds were held in the Reserve Account.

46. On or about August 1, 2004, MasterCard imposed $960,700 in fines and penalties on FFB/FDMS due to PSW's excessive chargeback activity. FFB debited that same amount ($960,700) from the Reserve Account on or about August 4, 2004.

## COUNT 1

**(Breach of Contract versus PSW)**

47. FFB/FDMS incorporate and re-allege the allegations of paragraphs 1 through 46 of the counterclaims as though fully set forth therein.

48. FFB/FDMS and PSW were parties to a valid contract, the Merchant Agreement, for all time periods relevant to this counterclaim.

49. FFB and FDMS each performed its obligations under the Merchant Agreement.

50. PSW violated numerous terms of the Merchant Agreement, including but not limited to, paragraphs 21.3(i) and 21.3(iv).

51. PSW also violated paragraph 4 of the Merchant Agreement by failing to comply with the Visa and MasterCard association rules, including but not limited to, rules pertaining to excessive chargebacks, url registrations, and website content.

52. Accordingly, FFB/FDMS terminated the Merchant Agreement on September 26, 2003.

53. Pursuant to paragraph 25 of the Merchant Agreement, FFB and FDMS are entitled to liquidated damages equal to 80% of the product of (i) the average net monthly fees, and (ii) the number of months, including a pro rata portion of a month, remaining in the initial term of the Merchant Agreement.

WHEREFORE, FFB/FDMS pray that:

(a) The Court enter judgment on this claim in favor of FFB/FDMS; and

(b) FFB/FDMS recover from PSW damages in such amount as may be proven at the time of trial;

(c) FFB/FDMS recover interest (including prejudgment interest) and all costs of suit; and

(d) FFB/FDMS be granted such other and further relief as this Court may deem appropriate.

**COUNT 2**

**(Declaratory Judgment versus PSW)**

54. FFB/FDMS incorporate and re-allege each and every allegation of paragraphs 1 through 46 of these counterclaims, as though fully set forth herein.

55. Based upon the foregoing facts, there presently exists an actual, justiciable controversy between FFB/FDMS and PSW concerning the nature and extent of the indemnification rights and obligations of the parties under the Merchant Agreement.

WHEREFORE, pursuant to 28 U.S.C. § 2201, FFB/FDMS pray that the Court enter a judgment declaring that PSW is obligated to indemnify FFB/FDMS under paragraphs 24.1 and/or 26.3 of the Merchant Agreement for any and all costs and expenses incurred by FFB/FDMS (including attorney's fees) in connection with this litigation.

**COUNT 3**

**(Alternative Declaratory Judgment versus PSW)**

56. FFB/FDMS incorporate and re-allege each and every allegation of paragraphs 1 through 46 of these counterclaims, as though fully set forth herein.

57. Based upon the foregoing facts, there presently exists an actual, justiciable controversy between FFB/FDMS and PSW concerning the nature and extent of the indemnification rights and obligations of the parties hereto under the Merchant Agreement.

WHEREFORE, in the event the Court denies the declaratory relief requested by FFB in Count 1 of its cross-claims against MasterCard set forth *infra* at page 34 – to wit, that MasterCard is not entitled to indemnification from FFB – FFB/FDMS prays that the Court enter a judgment, pursuant to 28 U.S.C. § 2201, declaring that:

(a) PSW is obligated to indemnify FFB/FDMS under paragraphs 24.1 and/or 26.3 of the Merchant Agreement for any amounts paid by FFB/FDMS to indemnify MasterCard in connection with this litigation; and

(b) PSW is obligated to indemnify FFB/FDMS under paragraphs 24.1 and/or 26.3 of the Merchant Agreement for any and all costs and expenses incurred by FFB/FDMS (including attorney's fees) in connection with this litigation.

**COUNT 4**

**(Declaratory Judgment versus John Lombardi)**

58. Pursuant to Rule 13(h) of the Federal Rules of Civil Procedure, Defendants FFB and FDMS assert the following claim against Counterclaim Defendant Lombardi for declaratory relief, money damages, and such other relief as the Court deems appropriate:

59. FFB/FDMS incorporate and re-allege each and every allegation of paragraphs 1 through 46 of these counterclaims, as though fully set forth herein.

60. Based upon the foregoing facts, there presently exists an actual, justiciable controversy between FFB/FDMS and Lombardi concerning the nature and extent of Lombardi's obligations to assume personal liability for PSW's obligations to FFB/FDMS under the Merchant Agreement.

WHEREFORE, pursuant to 28 U.S.C. § 2201, FFB/FDMS pray that the Court enter a judgment declaring that Lombardi is personally liable for any obligations that this Court determines to be due and owed by PSW to FFB/FDMS under the Merchant Agreement.

## CROSS-CLAIMS VERSUS MASTERCARD

Pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, Defendant First Financial Bank ("FFB") asserts the following cross-claims against Defendant MasterCard for declaratory relief, money damages, and such other relief as the Court deems appropriate:

### PARTIES

1. Cross-claimant FFB is a Colorado corporation with its principal place of business located at 6200 South Quebec Street, Suite 240, Greenwood Village, Colorado.

2. Cross-claim Defendant MasterCard is a Delaware corporate with its principal place of business located at 2000 Purchase Street, Purchase, New York.

### JURISDICTION AND VENUE

3. FFB and MasterCard are defendants in the above-entitled action and have submitted themselves to the jurisdiction and venue of this Court.

4. The Court has subject matter jurisdiction over these cross-claims under 28 U.S.C. §§ 1332, 1367 and 2201. The parties are citizens of different states, the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs, and the cross-claims are so related to the claims in the First Amended Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this action under 28 U.S.C. §§ 1391 (a) and 1391(c) because MasterCard is subject to personal jurisdiction in this judicial district and a substantial part of the events and omissions giving rise to the claims asserted herein arose in this judicial district.

### FACTS

#### A. The FFB/MasterCard Relationship and the Indemnity Provision

6. At all times material to this action, FFB, or its predecessors in interest, has been a financial institution member of MasterCard. In that capacity, FFB contracts with third parties to

participate in MasterCard's credit card network – i.e., to accept MasterCard as a form of payment for their goods or services. From on or about January 17, 2002 until September 26, 2003, FFB contracted with PSW, through the Merchant Agreement, to participate in MasterCard's credit card network.

7. The relationship between MasterCard and FFB is governed by the MasterCard Rules.

8. MasterCard Rule 1.1 provides MasterCard with indemnification rights against its member banks in certain limited circumstances. In pertinent part, Rule 1.1 states that member banks must indemnify and hold MasterCard harmless from any "claim, demand, obligation, loss, cost, liability and/or expense" (including attorney's fees) resulting from and/or arising in connection with:

> any ***act or omission of the member*** or ***any person associated with the member*** . . . with respect to, or relating to
>
> - any programs of the member and/or any person associated with the member;
> - the compliance or non-compliance with the Standards by the member and/or any person associated with the member; or
> - any other activity of the member and/or any person associated with the member that used and/or otherwise involved any of [MasterCard's] Marks or other assets.
>
> (emphasis added)

9. Rule 1.1 does not require member banks to indemnify MasterCard for costs or expenses incurred by MasterCard in defending against any claims arising from MasterCard's own alleged wrongful conduct. Nor does Rule 1.1 require member banks to indemnify MasterCard for costs or expenses incurred by MasterCard in defending against claims arising from MasterCard's own policies, rules, or programs.

10. Applicable federal law precludes MasterCard from being indemnified for costs or expenses incurred in defending against claims arising from MasterCard's alleged violations of the antitrust laws.

### B. The Nature of PSW's Lawsuit against MasterCard

11. On or about August 16, 2004, PSW filed the above-captioned lawsuit against FFB, FDMS, Visa and MasterCard. After all defendants moved to dismiss the original complaint, PSW filed the First Amended Complaint on or about April 6, 2005.

12. PSW's lawsuit challenged a number of MasterCard rules and programs under federal and state antitrust laws, including Sections 1 and 2 of the Sherman Act, as well as the Rhode Island Antitrust Act. PSW's antitrust allegations formed the heart of its lawsuit against MasterCard.

### C. MasterCard's Demands for Indemnification

13. On or about October 13, 2004, MasterCard demanded that FFB indemnify MasterCard, purportedly pursuant to Rule 1.1 of the MasterCard Rules, for all of its legal fees and expenses, including attorney's fees, incurred in connection with PSW's complaint. Although MasterCard has acknowledged in filings with this Court that PSW "blames its demise on various rules and programs of MasterCard," MasterCard's demand letter incorrectly claimed that PSW's lawsuit arose solely from FFB's "acquiring activities." MasterCard did not provide a specific amount to be indemnified in its October 13, 2004 letter.

14. On or about March 9, 2005, MasterCard advised FFB that it had incurred legal fees and expenses in the amount of $188,372.31 for the period of September through December 2004 and that it would directly debit FFB's settlement account with MasterCard on March 20, 2005 unless FFB provided an alternative payment mechanism.

15. FFB objected to MasterCard's demand for indemnification by letter dated March 18, 2005. Specifically, FFB advised MasterCard that Rule 1.1 did not provide indemnification rights to MasterCard for fees or expenses incurred in defending against claims based on MasterCard's alleged antitrust violations or any other challenges to the legality of MasterCard's own rules and programs. Nonetheless, and despite FFB's objection, MasterCard debited FFB's settlement account in the amount of $188,372.31 on or about March 22, 2005.

16. On or about June 25, 2005, MasterCard debited another $ 150,227.02 from FFB's settlement account as purported indemnification for the legal fees and expenses MasterCard incurred for the period of January through April 2005.

17. On or about December 1, 2005, MasterCard submitted a demand for indemnification to FFB, this time in the amount of $129,204.77, for legal fees and expenses incurred by MasterCard for the period of May through October 2005. Although FFB reiterated its objection to MasterCard's claim for indemnification, MasterCard once again debited that amount directly from FFB's settlement account.

18. In total, MasterCard has debited $467,804.10 from FFB's settlement account purportedly pursuant to Rule 1.1 of the MasterCard Rules. MasterCard also has made clear that it will continue to debit FFB's settlement account as it incurs additional fees and expenses in connection with PSW's lawsuit.

**COUNT 1**

**(Declaratory Judgment)**

19. FFB incorporates and re-alleges each and every allegation in paragraphs 1 through 18 of these cross-claims, as though fully set forth herein.

20. Based upon the foregoing facts, there presently exists an actual and justiciable controversy between the parties concerning FFB's obligation to indemnify MasterCard under Rule 1.1 of the MasterCard Rules for legal fees and expenses incurred in connection with the above-captioned lawsuit.

WHEREFORE, pursuant to 28 U.S.C. § 2201, FFB prays that the Court enter a judgment declaring that:

(a) Rule 1.1 of the MasterCard Rules does not impose upon FFB an obligation to indemnify MasterCard for its attorney's fees, costs, expenses, liabilities, or other obligations arising in connection with PSW's claims against MasterCard in this case;

(b) To the extent that Rule 1.1 of the MasterCard Rules does purport to impose upon FFB any obligation to indemnify MasterCard for its attorney's fees, costs, expenses, liabilities, or other obligations arising in connection with PSW's claims against MasterCard, such an obligation would be void as contrary to law and/or public policy; and

(c) Neither Rule 1.5 nor any other provision of the MasterCard Rules provides MasterCard with any basis for debiting FFB's settlement account to recoup legal fees and expenses incurred by MasterCard in connection with this lawsuit.

**COUNT 2**

**(<u>Breach of Contract</u>)**

21. FFB incorporates and re-alleges each and every allegation in paragraphs 1 through 18 of these cross-claims, as though fully set forth herein.

22. The relationship between FFB and MasterCard is governed by the MasterCard Rules.

23. FFB has complied with all applicable MasterCard Rules.

24. MasterCard violated Rules 1.1 and 1.5 of the MasterCard By-laws and Rules by debiting $467,804.10 from FFB's settlement account, purportedly as indemnification for legal fees and expenses incurred by MasterCard in connection with the above-captioned lawsuit.

25. As a result of MasterCard's conduct, FFB has incurred damages in the amount of $467,804.10 plus interest accruing from the dates that MasterCard debited FFB's settlement account.

WHEREFORE, FFB prays that:

(a) The Court enter judgment on this claim in favor of FFB; and

(b) FFB recover from MasterCard the amount of $467,804.10 or such other amount as may be proven at the time of trial;

(c) FFB recover interest (including prejudgment interest) and all costs of suit; and

(d) FFB be granted such other and further relief as this Court may deem appropriate.

**COUNT 3**

**(Monies Due and Owing)**

26. FFB incorporates and re-alleges each and every allegation in paragraphs 1 through 18 of these cross-claims, as though fully set forth herein.

27. MasterCard currently owes FFB in excess of $467,804.10 for monies improperly taken by MasterCard out of FFB's settlement account.

28. FFB objected to MasterCard's withdrawal of funds from FFB's settlement account purportedly as indemnification under Rule 1.1 of the MasterCard rules.

29. As a result of MasterCard's improper withdrawal of fund from FFB's settlement account, FFB has been damaged in the amount of at least $467,804.10 plus interest and others costs.

WHEREFORE, FFB prays that:

(a) The Court enter judgment on this claim in favor of FFB; and

(b) FFB recover from MasterCard the amount of $467,804.10 or such other amount as may be proven as damages;

(c) FFB recover interest (including prejudgment interest) and all costs of suit; and

(d) FFB be granted such other and further relief as this Court may deem appropriate.

**JURY DEMAND**

FFB demands trial by jury of any and all issues properly triable by jury in this action.

Dated: March 22, 2006

Respectfully submitted,

JOHN A. TARANTINO (Bar. No. 2586)
PATRICIA K. ROCHA (Bar No. 2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza – 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

PETER E. MOLL (*admitted pro hac vice*)
BRIAN WALLACH (*admitted pro hac vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

**Counsel for Defendants First Financial Bank and First Data Merchant Services**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of March, 2006, I caused to be served a true copy of the within document via first class mail, postage prepaid, on the following counsel of record:

*Counsel for Plaintiff:*
Richard A. Sinapi, Esq.
Sinapi, Formisano & Company, Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920

David Paul Steiner, Esq.
1925 Century Park East, Suite 2350
Los Angeles, CA 90067

*Receiver for PSW, Inc.:*
Allan M. Shine, Esq.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

*Counsel for MasterCard International:*
Joseph V. Cavanagh, Esq.
Blish & Cavanagh LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903

Jay N. Fastow, Esq.
Bruce A. Colbath, Esq.
Denise L. Plunkett, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Avenue
New York, NY 10153

*Counsel for VISA, U.S.A., Inc.:*
Patricia A. Sullivan, Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Daniel Bookin, Esq.
Randall W. Edwards, Esq.
O'Melveny & Myers
275 Battery Street
San Francisco, CA 94111

Debra Hunn

*375977_1.doc*